**SCHNADER HARRISON SEGAL & LEWIS LLP**
**A Pennsylvania Limited Liability Partnership**
**RALPH G. WELLINGTON (admitted *pro hac vice*)**
**ALISON C. FINNEGAN (AF0108)**
**1600 Market Street, Suite 3600**
**Philadelphia, Pennsylvania 19103**
**Tel: 215-751-2488; 2117**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| IN RE PAULSBORO DERAILMENT CASES | Master Dkt. No. 13-cv-784-RBK-KMW |
| | REPLY IN SUPPORT OF MOTION TO DISMISS |
| | Motion Day:  July 15, 2013 |
| DONALD WILSON, *et al.*, | CIVIL ACTION |
| Plaintiffs, | |
| v. | Civil Action No. 12-cv-7586-RBK-KMW |
| CONSOLIDATED RAIL CORPORATION, *et al.*, | |
| Defendants. | |

OWEN HAYNES, On Behalf of Himself and
All Others Similarly Situated,

        Plaintiff,

        v.

CSX TRANSPORTATION, INC., *et al*.,

        Defendants.

CIVIL ACTION

Civil Action No. 13-cv-410-RBK-KMW

---

JOHN STEPHENSON and TRACY LEE, in
their own right and on behalf of all others
similarly situated,

        Plaintiffs,

        v.

CONSOLIDATED RAIL CORPORATION,
*et al*.,

        Defendants.

CIVIL ACTION

Civil Action No. 13-cv-721-RBK-KMW

---

DONALD WILSON, d/b/a/ DON'S
BARBERSHOP

        Plaintiff,

        v.

CONSOLIDATED RAIL CORPORATION,
*et al*.,

        Defendants.

CIVIL ACTION

Civil Action No. 13-cv-761-RBK-KMW

# TABLE OF CONTENTS

**Page**

I.   Plaintiffs' Negligence Claim Fails Because Plaintiffs Have Not Pleaded Facts Plausibly Suggesting That Railroad Defendants Owed Them A Duty Of Care. .............................. 1

II.   Plaintiffs Have Not Pleaded A Viable Trespass Claim. ................................... 4

    A.   This Court Should Decline Plaintiffs' Invitation To Expand New Jersey Law By Recognizing A Cause Of Action For Negligent Trespass. .................................... 4

    B.   Even If A Negligent Trespass Claim Existed Under New Jersey Law, Plaintiffs' Claim Would Fail Because They Have Not Alleged A Tangible Impact To Their Property. ................................................................................................ 6

III.   The Common-Carrier Exception Precludes Plaintiffs' Strict Liability Claim. ................... 8

    A.   Ownership Of The Components Of The Rail System, Including Tracks And Bridges, Does Not Bar The Application Of The Common- Carrier Exception. ...... 8

    B.   Strict Liability Does Not Automatically Attach To Hazardous Chemicals. ........... 9

    CONCLUSION ................................................................................................ 12

i

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Acuna v. Turkish*,
   192 N.J. 399, 930 A.2d 416 (2007)..........................................................................2

*Analytical Measurements, Inc. v. Keuffel & Esser Co.*,
   843 F. Supp. 920 (D.N.J. 1993) ............................................................................11

*Ayers v. Jackson Twp.*,
   106 N.J. 557, 525 A.2d 287 (1987).........................................................................6

*Bacak v. Hogya*,
   4 N.J. 417, 73 A.2d 167 (1950)...............................................................................2

*Bonnieview Homeowners Ass'n, L.L.C. v. Woodmont Builders, L.L.C.*,
   655 F. Supp. 2d 473 (D.N.J. 2009) .......................................................................10

*Boylan v. Nash*,
   122 N.J. Super. 110, 299 A.2d 101 (Law Div. 1973) .............................................8

*Burke v. Briggs*,
   239 N.J. Super. 269, 571 A.2d 296 (App. Div. 1990) ............................................4

*Chavez v. S. Pac. Transp. Co.*,
   413 F. Supp. 1203 (E.D. Cal. 1976).......................................................................11

*Clohesy v. Food Circus Supermarkets, Inc.*,
   149 N.J. 496, 694 A.2d 1017 (1997).......................................................................2

*Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988)....................................................................................7

*Hirsch v. CSX Transp., Inc.*,
   No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008).....11

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
   653 F.3d 225 (3d Cir. 2011)....................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..................................................................................7

*Jersey City Redevelopment Auth. v. PPG Indus., Inc.*,
   655 F. Supp. 1257 (D.N.J. 1987) ............................................................................4

*Kenney v. Scientific, Inc.*
    204 N.J. Super. 228, 497 A.2d 1310 (Law Div. 1985) ..........................................6

*Leese v. Lockheed Martin*,
    Civil No. 11-5091 (NLH) (AMD), 2012 U.S. Dist. LEXIS 50963 (D.N.J. Apr. 11,
    2012) ..................................................................................................................6

*Lexington Ins. Co. v. Rugg & Knopp, Inc.*,
    165 F.3d 1087 (7th Cir. 1999) ............................................................................5

*Maddy v. Vulcan Materials Co.*,
    737 F. Supp. 1528 (D. Kan. 1990) ................................................................... 7-8

*Mayor & Council of Rockaway v. Klockner & Klockner*,
    811 F. Supp. 1039 (D.N.J. 1993) ....................................................................4, 6

*Milner v. Mikhelia*,
    No. A-5439-07T2, 2009 N.J. Super. Unpub. LEXIS 569 (N.J. Super. App. Div. Mar.
    20, 2009) .............................................................................................................4

*N.J. Turnpike Auth. v. PPG Indus., Inc.*,
    16 F. Supp. 2d 460 (D.N.J. 1998) .......................................................................6

*Nat'l Steel Serv. Ctr. v. Gibbons*,
    319 N.W.2d 269 (Iowa 1982) ............................................................................11

*Olivo v. Owens-Illinois, Inc.*,
    186 N.J. 394, 895 A.2d 1143 (2006)...................................................................2

*People Express Airlines, Inc. v. Consol. Rail Corp.*,
    100 N.J. 246, 495 A.2d 107 (1985)............................................................... 1-2, 3

*Phoenix Pinelands Corp. v. United States*,
    No. 09-cv-2237, 2010 U.S. Dist. LEXIS 40638 (D.N.J. Apr. 26, 2010)............................5, 6

*Rickards v. Sun Oil Co.*,
    23 N.J. Misc. 89, 41 A.2d 267 (N.J. 1945) .........................................................3

*San Diego Gas & Elec. Co. v. Superior Court*,
    13 Cal. 4th 893, 920 P.2d 669, 55 Cal. Rptr. 2d 724 (1996) ..............................7

*Siddons v. Cook*,
    382 N.J. Super. 1, 887 A.2d 689 (App. Div. 2005) .............................................4

*Siegler v. Kuhlman*,
    81 Wn.2d 448, 502 P.2d 1181 (Wash. 1972).....................................................10

*Smith v. Honeywell Int'l Inc.*,
  Civil Action No. 2:10-cv-03345 (SDW), 2011 U.S. Dist. LEXIS 20331 (D.N.J. Feb.
  28, 2011) .................................................................................................................6

*T & E Indus. v. Safety Light Corp.*,
  123 N.J. 371, 587 A.2d 1249 (1991)...................................................................10

*Town of East Troy v. Soo Line R.R. Co.*,
  409 F. Supp. 326 (D. Wis. 1976) ...........................................................................9

*Travelers Indem. Co. v. Dammann & Co.*,
  594 F.3d 238 (3d Cir. 2010).....................................................................................5

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002)......................................................................................5

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) .................................................................1

Restatement (Second) of Torts § 166.........................................................................4

Restatement (Second) of Torts § 519 cmt. e..............................................................11

Restatement (Second) of Torts § 520.............................................................9, 10, 11

**SCHNADER HARRISON SEGAL & LEWIS LLP**
**A Pennsylvania Limited Liability Partnership**
**RALPH G. WELLINGTON (admitted *pro hac vice*)**
**ALISON C. FINNEGAN (AF0108)**
**1600 Market Street, Suite 3600**
**Philadelphia, Pennsylvania 19103**
**Tel: 215-751-2488; 2117**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| IN RE PAULSBORO DERAILMENT CASES | Master Dkt. No. 13-cv-784-RBK-KMW |
| | REPLY IN SUPPORT OF MOTION TO DISMISS |
| | Motion Day:  July 15, 2013 |
| DONALD WILSON, *et al.*, | CIVIL ACTION |
|     Plaintiffs, | |
|     v. | Civil Action No. 12-cv-7586-RBK-KMW |
| CONSOLIDATED RAIL CORPORATION, *et al.*, | |
|     Defendants. | |

| | |
|---|---|
| OWEN HAYNES, On Behalf of Himself and All Others Similarly Situated, | CIVIL ACTION |
| Plaintiff, | Civil Action No. 13-cv-410-RBK-KMW |
| v. | |
| CSX TRANSPORTATION, INC., *et al*., | |
| Defendants. | |

| | |
|---|---|
| JOHN STEPHENSON and TRACY LEE, in their own right and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | Civil Action No. 13-cv-721-RBK-KMW |
| v. | |
| CONSOLIDATED RAIL CORPORATION, *et al*., | |
| Defendants. | |

| | |
|---|---|
| DONALD WILSON, d/b/a DON'S BARBERSHOP | CIVIL ACTION |
| Plaintiff, | Civil Action No. 13-cv-761-RBK-KMW |
| v. | |
| CONSOLIDATED RAIL CORPORATION, *et al*., | |
| Defendants. | |

Plaintiffs' Opposition only underscores the pleading deficiencies in Plaintiffs' negligence, trespass, and strict liability claims. In attempting to salvage these counts, Plaintiffs ignore controlling New Jersey law, federal pleading requirements, and the contents of their own complaint. For the reasons set forth below, and in Railroad Defendants' opening brief, Counts I, II, III, and VI of the Second Consolidated Class Action Amended Complaint (the "Complaint") must be dismissed under Federal Rule of Civil Procedure 12(b)(6). [1]

## I.    Plaintiffs' Negligence Claim Fails Because Plaintiffs Have Not Pleaded Facts Plausibly Suggesting That Railroad Defendants Owed Them A Duty Of Care.

Plaintiffs do not and cannot deny that the Complaint nowhere alleges that Railroad Defendants owed them (or the two putative sub-classes) a duty of care. They argue, however, that their pleading failure may be excused because Railroad Defendants' duty to them can be inferred from the Complaint's allegations of negligent conduct. *See* Pls. Opp'n Br. at 3-6. According to Plaintiffs, as long as the general consequences of that claimed negligence—the derailment of the train, the discharge of vinyl chloride "into a residential/business area," and the subsequent evacuation and shelter in place orders—were "foreseeable," Railroad Defendants should be deemed to owe a duty of care to all persons in Gloucester County who incurred economic losses in connection with the incident. *See id.* at 3-8.

That is not the law in New Jersey. As set forth in Railroad Defendants' opening memorandum, New Jersey imposes a more stringent duty analysis when, as here, the plaintiff seeks damages for purely economic losses. *See People Express Airlines, Inc. v. Consol. Rail*

---

[1]    Plaintiffs have voluntarily agreed to withdraw their *res ipsa loquitor* claim (Count II) as a separate cause of action. *See* Pls. Opp'n Br. at 8.

*Corp.*, 100 N.J. 246, 263-64, 495 A.2d 107, 116 (1985).  In such a case, the plaintiff must show

not only that the accident and its consequences were generally foreseeable, but also that *the*

*plaintiff's losses* were "*particularly foreseeable.*"  *See id.* at 263-64, 495 A.2d at 116 (emphasis

added); *see generally* Defs. Mot. To Dismiss Br. at 6-8.  Revealingly, *none* of the standard duty

cases cited by Plaintiffs in support of their "foreseeability" argument, *see* Pls. Opp'n Br. at 4,

involve claims for purely economic losses.  *See Olivo v. Owens-Illinois, Inc.*, 186 N.J. 394, 895

A.2d 1143 (2006) (wrongful death and survival causes of action where decedent allegedly was

exposed to asbestos); *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 694 A.2d 1017

(1997) (wrongful death and survival causes of action where decedent was murdered); *Acuna v.*

*Turkish*, 192 N.J. 399, 930 A.2d 416 (2007) (claims for negligent infliction of emotional distress,

negligence, and lack-of-informed consent in malpractice action); *Bacak v. Hogya*, 4 N.J. 417, 73

A.2d 167 (1950) (claim "grounded in negligence" in personal injury action).  Although Plaintiffs

invoke these inapposite cases, they do not deny that *People Express* establishes the scope of a

defendant's duty of care to plaintiffs alleging economic loss claims.  *See* Pls. Opp'n Br. at 7-8.

　　　　Plaintiffs insist that the factual allegations underlying their claim that Railroad

Defendants were negligent should be enough to establish the existence of a duty of care.  *See* Pls.

Opp'n Br. at 5-6.  But these allegations fall short because they do not plausibly suggest that it

was "particularly foreseeable" that the named Plaintiffs—much less all members of the two

putative subclasses—would suffer the claimed medical expenses and income losses.  This

deficiency is heightened by the broad scope of the second proposed putative class, which

includes all residents and businesses in Gloucester County.[2]  *See id*. at 7-8.  The mere fact that the train carried vinyl chloride does not, in and of itself, suggest that it was particularly foreseeable that an accident at the Paulsboro bridge would cause the authorities to issue evacuation and shelter-in-place orders, and that these orders would cause Plaintiffs (and the broad and diverse sub-classes they purport to represent) to suffer the economic damages claimed.  *See id*. at 7.  The facts pleaded in Plaintiffs' complaint simply do not establish a sufficiently close connection between the derailment, the Plaintiffs, and the Plaintiffs' claimed economic losses to establish the existence of a duty under New Jersey law.  *See Rickards v. Sun Oil Co.*, 23 N.J. Misc. 89, 94, 41 A.2d 267, 270 (N.J. 1945) (dismissing negligence claim where the connection between a bridge accident and the class of persons claiming economic losses caused by that accident was too remote).

Given the clear deficiencies in Plaintiffs' pleading, it is not surprising that Plaintiffs resort to arguing that the "particular foreseeability" standard set forth in *People Express* does not apply at the pleading stage.  Pls. Opp'n Br. at 5-7.  Plaintiffs cite no authority for this contention.  Indeed, *People Express* specifically relies on *Rickards*, which decided the issue of duty on a motion to dismiss.  Although Plaintiffs (unsuccessfully) attempt to distinguish *Rickards* on its facts, *Rickards* holds that a defendant's liability for economic damages is limited to the "direct" and "probable" consequences of an accident.  *See* 23 N.J. Misc. at 93, 41 A.2d at 269.  Here, as in *Rickards*, Plaintiffs are third parties not directly involved in the bridge accident,

---

[2]     Gloucester County is 329 square miles and has 288,288 residents.  Gloucester County, New Jersey, About Our County, Demographics & Fast Facts, http://www.co.gloucester.nj.us/about/demff.asp (last visited July 5, 2013).

and the facts alleged do not plausibly suggest that their claimed economic losses were a "probable" consequence of the accident.  Accordingly, Plaintiffs' negligence claim should be dismissed.

II.  **Plaintiffs Have Not Pleaded A Viable Trespass Claim.**

    A.  **This Court Should Decline Plaintiffs' Invitation To Expand New Jersey Law By Recognizing A Cause Of Action For Negligent Trespass.**

        Although Plaintiffs concede, as they must, that the New Jersey Supreme Court has not recognized a cause of action for negligent trespass, they contend that *dicta* in several New Jersey lower court decisions indicate that the New Jersey Supreme Court would do so.  *See* Pls. Opp'n Br. at 9.  None of these decisions offers any meaningful guidance for this Court.[3]  Indeed, the only published District Court of New Jersey opinion addressing negligent trespass predicted that the New Jersey Supreme Court would decline to adopt a negligent trespass theory.  *See Jersey City Redevelopment Auth. v. PPG Indus., Inc.*, 655 F. Supp. 1257, 1264 (D.N.J. 1987), *superseded by statute on other grounds as stated in Mayor & Council of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1051 (D.N.J. 1993).  Importantly, when state law is unsettled, as it is here, the law of this Circuit dictates that federal courts must "opt for the interpretation that

---

[3]    *See Burke v. Briggs*, 239 N.J. Super. 269, 273, 571 A.2d 296, 297 (App. Div. 1990) (noting in passing that the Restatement (Second) of Torts "still maintains the distinction between intentional, ultra-hazardous and accidental intrusions" in a discussion of strict liability under Section 166); *Siddons v. Cook*, 382 N.J. Super. 1, 12-13, 887 A.2d 689, 694 (App. Div. 2005) (citing Section 166 in analyzing when strict liability applies to landowner liability cases); *Milner v. Mikhelia*, No. A-5439-07T2, 2009 N.J. Super. Unpub. LEXIS 569, at *4-5 (N.J. Super. App. Div. Mar. 20, 2009) (citing Section 166 in analyzing when strict liability is imposed for private nuisance).

restricts liability, rather than expands it, until the Supreme Court of [New Jersey] decides differently." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 (3d Cir. 2010).

          Plaintiffs nonetheless urge this Court to follow *Phoenix Pinelands Corp. v. United States*, No. 09-cv-2237, 2010 U.S. Dist. LEXIS 40638 (D.N.J. Apr. 26, 2010), which allowed a negligent trespass claim to proceed despite substantial uncertainty "as to whether New Jersey law recognizes (or will recognize) the tort of negligent trespass." *Id.* at *15. The *Phoenix Pinelands* decision, however, squarely goes against the Third Circuit's mandate for restraint. *See Travelers*, 594 F.3d at 253; *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092-93 (7th Cir. 1999) (cautioning that "when a federal court must make predictions about how the highest state court would decide a case in the absence of caselaw directly on point, *conservatism is in order in relying on the practice of other jurisdictions*") (emphasis added). As a result, Plaintiffs' reliance on *Phoenix Pinelands* is misplaced.

          Plaintiffs also argue that other states have recognized claims for negligent trespass. Pls. Opp'n Br. at 10-11. The fact that other states have adopted a negligent trespass theory is not a sufficient basis, standing alone, for this Court to expand New Jersey law.[4]

---

[4]    Neither of the two cases cited by Plaintiffs suggests that the law of other jurisdictions is a sufficient basis upon which to expand state law by recognizing a new theory of liability. *Cf. Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (listing four different sources of guidance that a federal court must take into consideration when predicting how the state's highest court would resolve an issue); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675 (3d Cir. 2002) (listing the same four sources to use when the state of the law is "unsettled").

B.    **Even If A Negligent Trespass Claim Existed Under New Jersey Law, Plaintiffs' Claim Would Fail Because They Have Not Alleged A Tangible Impact To Their Property.**

Plaintiffs do not dispute that, in order to state a negligent trespass claim (assuming that such a claim exists under New Jersey law), they must allege that the release of vinyl chloride into the air caused substantial damage to their property.[5]  *See* Pls. Opp'n Br. at 13 (recognizing that they must allege that an airborne intrusion caused "substantial damage" to their property to state a viable negligent trespass claim).  Plaintiffs contend that the issuance of evacuation and shelter-in-place orders is sufficient to plausibly suggest that "there was a tangible impact to plaintiffs' property," *id*. at 12, but they are mistaken.

In fact, the paragraphs of the Complaint cited by Plaintiffs do not allege any facts plausibly suggesting a substantial impact to Plaintiffs' real property.  *See id*. at 13 (citing only to Compl. ¶¶ 1, 3, 31, 39-42).[6]  Plaintiffs also assert (without citing to the Complaint at all, because

---

[5]    Indeed, all the New Jersey trespass cases cited in Plaintiffs' Opposition, *see id*. at 11-13, involve either the physical contamination of soil and groundwater, or the physical entry of objects onto the land.  *See Leese v. Lockheed Martin*, Civil No. 11-5091 (NLH) (AMD), 2012 U.S. Dist. LEXIS 50963, at *13 n.7 (D.N.J. Apr. 11, 2012) (groundwater contamination); *Mayor & Council of Rockaway v. Klockner & Klockner*, 811 F. Supp. at 1053 (D.N.J. 1993) (well and groundwater pollution); *Ayers v. Jackson Twp.*, 106 N.J. 557, 584, 525 A.2d 287, 300-01 (1987) (well contamination case where trespass was not a cause of action); *N.J. Turnpike Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 478 (D.N.J. 1998) (soil contamination); *Smith v. Honeywell Int'l Inc.*, Civil Action No. 2:10-cv-03345 (SDW), 2011 U.S. Dist. LEXIS 20331 (D.N.J. Feb. 28, 2011) (soil contamination); *Phoenix Pinelands*, 2010 U.S. Dist. LEXIS 40638, at *2 (flares caused a fire on plaintiff's property).  Moreover, the court in *Kenney v. Scientific, Inc.* granted summary judgment for the defendants on the trespass cause of action, stating that "old remedies" should not be "tortured" to fit the field of hazardous waste.  204 N.J. Super. 228, 256, 497 A.2d 1310, 1325 (Law Div. 1985).

[6]    These paragraphs do not allege any facts plausibly suggesting a substantial impact to Plaintiffs' real property.  *See* Compl. ¶ 1 (allegations that the derailment resulted in
                                                                                    *...Continued*

it contains no such allegations) that "[t]he deposits left by the vinyl chloride cloud required a significant clean-up before plaintiffs were allowed back into their homes and businesses" and that "[t]his is exactly the type of 'substantial damage' that . . . other jurisdictions recognize as sufficient to be a 'tangible object' in a trespass claim." *Id.* at 13. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)) (internal quotations omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). Plaintiffs' attempt to introduce these new allegations via their Opposition is improper and should be disregarded.

But even if this new allegation had been included in the Complaint, Plaintiffs' trespass claim would still fail. Plaintiffs notably do not assert (nor could they) that there has been any clean-up of vinyl chloride deposits on *Plaintiffs' properties. See, e.g., San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 936, 920 P.2d 669, 695, 55 Cal. Rptr. 2d 724, 750 (1996) (holding that to sustain a trespass claim based on an intangible intrusion, there must be a "deposit of particulate matter upon the *plaintiffs' property* or [] actual physical damage *thereto*") (emphasis added); *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1539-41 (D.

---

*Continued from previous page*

exposure of Paulsboro residents to toxic chemicals, a mandatory evacuation, and an order to shelter in place); ¶ 3 (allegations that Plaintiff Donald Wilson "was forced to evacuate his home" and that his business "was forced to close and was otherwise adversely affected"); ¶ 31 (allegation that the "entire neighborhood became engulfed in a toxic cloud of vinyl chloride fumes"); ¶¶ 39-42 (allegations concerning the scope of the evacuation and shelter-in-place orders).

Kan. 1990) (holding that a defendant's act "must cause an invasion of the *plaintiff's property* by some tangible matter" or, if the invasion was intangible, cause "substantial damages to the *plaintiff's land*") (emphasis added).   An allegation that the clean-up of vinyl chloride occurred *somewhere* is insufficient by any measure to support Plaintiffs' trespass claim.

### III.   The Common-Carrier Exception Precludes Plaintiffs' Strict Liability Claim.

#### A.   Ownership Of The Components Of The Rail System, Including Tracks And Bridges, Does Not Bar The Application Of The Common-Carrier Exception.

Plaintiffs do not dispute that the common-carrier exception bars a strict liability claim against a railroad arising out of the transportation of hazardous materials.  *See* Pls. Opp'n Br. at  15.  Instead, they contend that Railroad Defendants may be strictly liable as "landowners" based on ownership and operation of the bridge.  *Id*. at 15-16.

Plaintiffs' attempt to circumvent the common-carrier exception would nullify the exception altogether.  A railroad cannot transport freight of any kind without passing over the track, bridges, and other components of the rail system.  "The operation of trains by a railroad requires much more than the mere physical movement of railroad cars and engines. It requires everything necessary to permit the railroad cars and engines to move, such as the ownership, operation and maintenance of tracks, bridges, passenger and freight terminals and railroad yards."  *Boylan v. Nash*, 122 N.J. Super. 110, 114, 299 A.2d 101, 103 (Law Div. 1973).  As a matter of public policy, railroads are not subject to strict liability based on the transport of hazardous materials, *see* Defs. Mot. To Dismiss Br. at 14-15, and the cause of the accident has never been held to make any difference.  To hold that the common-carrier exception is inapplicable when the cause of an accident can be traced to a problem with the tracks, bridges, or

other pathways on which a train travels, as opposed to the train itself, would effectively gut the common-carrier exception.   Plaintiffs cite no authority whatsoever in support of this argument.

Instead, Plaintiffs simply assert that their proposed narrowing of the common-carrier exception is justified as a matter of public policy because, "[b]etween railroad defendants and plaintiffs, railroad defendants were in a better position to control the safety risk."  *See* Pls. Opp'n Br. at 15.  That same observation could be made regarding any railroad accident involving the transportation of hazardous chemicals, yet the common-carrier exception nevertheless insulates railroads from strict liability as a result of that activity.   Plaintiffs identify no reason to deem the doctrine inapplicable under the circumstances here.  Moreover, to the extent that Plaintiffs contend that Railroad Defendants failed to take reasonable steps to "control the safety risk," that allegation sounds in negligence, not strict liability.  *See, e.g.*, *Town of East Troy v. Soo Line R.R. Co.*, 409 F. Supp. 326, 330 (D. Wis. 1976) (striking mixed strict liability and negligence claim for "transportation of carbolic acid by train over tracks which Railroad knew or should have known were unsafe" because the carrier was not subject to strict liability under the common-carrier exception, and the portions of the claim that went to negligence were redundant of the plaintiffs' separate negligence count).  Plaintiffs' suggestion that Railroad Defendants maintained a "defective" bridge, *see* Pls. Opp'n Br. at 15, thus does not alter the conclusion that the common-carrier exception to strict liability applies squarely here.

> ### B.    Strict Liability Does Not Automatically Attach To Hazardous Chemicals.

Plaintiffs do not deny that, to state a strict liability claim, they must allege facts establishing that the transportation of vinyl chloride qualifies as an abnormally dangerous activity under the six-part test set forth in Section 520 of the Restatement (Second) of Torts.

9

*T & E Indus. v. Safety Light Corp.*, 123 N.J. 371, 390-91, 587 A.2d 1249, 1259 (1991).

Specifically, Plaintiffs must plead facts plausibly suggesting each of the following elements:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id*. at 390-91, 587 A.2d at 1259; s*ee also Bonnieview Homeowners Ass'n, L.L.C. v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 519 (D.N.J. 2009) ("All of the factors are to be considered, and no single factor in § 520 alone is necessarily sufficient for the conclusion that an activity is abnormally dangerous.").

Ignoring this established precedent, Plaintiffs contend that the allegation that vinyl chloride is a hazardous chemical is sufficient, standing alone, to provide the factual predicate for their strict liability claim.  See Pls. Opp'n Br. at 14 (asserting that the transportation of vinyl chloride is "precisely the type of transportation that is deemed to be abnormally dangerous" simply because vinyl chloride "can cause cancer, loss of consciousness and other ailments").  None of the authority cited by Plaintiffs supports their apparent contention that all activities involving any hazardous chemical qualify as "abnormally dangerous activities" as a matter of law.  *See Siegler v. Kuhlman*, 81 Wn.2d 448, 456-60, 502 P.2d 1181, 1186-87 (Wash. 1972) (holding that the trial court erred in refusing to give a *res ipsa loquitur* instruction on the plaintiff's negligence claim, and then opining that hauling "a highly flammable, volatile and explosive substance" on public highways could qualify as an abnormally dangerous activity

under Section 520 even though plaintiff had not asserted a strict liability claim); *Chavez v. S. Pac. Transp. Co.*, 413 F. Supp. 1203, 1206 (E.D. Cal. 1976) (declining to rule on whether the transportation of bombs by railway qualified as an abnormally dangerous activity in analyzing the applicability of the common-carrier exception); *Nat'l Steel Serv. Ctr. v. Gibbons*, 319 N.W.2d 269, 270 (Iowa 1982) (declining to rule on whether the transportation of liquid propane by railway qualified as an abnormally dangerous activity in analyzing the applicability of the common-carrier exception); Restatement (Second) of Torts § 519 cmt. e (1977) (discussing the scope of liability for carrying on an abnormally dangerous activity but not what activities qualify as abnormally dangerous).

Under federal pleading standards and New Jersey law, Plaintiffs must plead facts sufficient to plausibly suggest that the transportation of vinyl chloride qualifies as an abnormally dangerous activity based on the six factors set forth in Section 520. *See Hirsch v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at *2-3, *14-16 (N.D. Ohio Oct. 22, 2008) (granting motion to dismiss strict liability claim despite plaintiffs' allegation that derailed train cars exposed putative class members to toxic substances because such allegations, even construed liberally, satisfied only the first two of the six Restatement (Second) of Torts § 520 factors); *see also Analytical Measurements, Inc. v. Keuffel & Esser Co.*, 843 F. Supp. 920, 928 (D.N.J. 1993) (denying plaintiff's motion for summary judgment on its strict liability claim and holding that proof that the defendant used hazardous chemicals in its manufacturing process was insufficient, as a matter of law, to establish that its manufacturing operation qualified as an "abnormally dangerous activity" under Section 520). Here, as in *Hirsch*, Plaintiffs' allegation that vinyl chloride is "a deadly and dangerous chemical" establishes, at most, only two of the six elements. Accordingly, Plaintiffs' strict liability claim fails as a matter of law.

11

## CONCLUSION

For all the foregoing reasons, as well as those laid out in Railroad Defendants'

Motion to Dismiss, this Court should dismiss Counts I, II, III, and VI of Plaintiffs' Complaint

with prejudice.

Respectfully submitted,

Dated:  July 10, 2013                    SCHNADER HARRISON SEGAL & LEWIS LLP

 /s/ Alison C. Finnegan
Ralph G. Wellington (admitted *pro hac vice*)
Alison C. Finnegan (AF0108)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 751-2488; 2117
Fax: (215) 751-2205
Email: rwellington@schnader.com
    afinnegan@schnader.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2013, I caused to be served a true and correct copy of the foregoing Reply in Support of Motion to Dismiss on all counsel of record via the Court's electronic filing system.

_____/s/ Alison C. Finnegan_____
*Attorney for Defendants*