<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| IN RE PAULSBORO DERAILMENT CASES | : : : : : : : : : : : | Master Docket No. 13-784 (RBK/KMW) (Doc. No. 101) |
| STACY HAMILTON, et al., | : : : | |
| Plaintiffs | : : | Civil No. 13-3724 (RBK/KMW) (Doc. No. 11) |
| v. | : : | |
| CONSOLIDATED RAIL CORPORATION, et al. | : : : : | **OPINION** |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Consolidated Rail Corporation,

Norfolk Southern Railway Company, and CSX Transportation ("Defendants") to dismiss in part[1]

the complaint of Stacy Hamilton, Jennifer Harris, David E. Wheeler, David Dandra Wheeler,

Sylvester Randall, Dazhane Davis, and Deasia Randall ("Plaintiffs") pursuant to Rule 12(b)(6) of

---

[1] Although Defendants' Motion asks this Court to dismiss Plaintiffs' complaint with prejudice, their brief only argues for the dismissal of Count I and Count V of the complaint, as well as Plaintiffs' prayer for medical monitoring and attorney's fees.  Because Defendants have provided no arguments in support of the dismissal of Counts II-IV, the Court will treat this motion as one for only partial dismissal.

the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons stated herein, Defendants' motion is **GRANTED**.

## I.      Background

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, New Jersey when the East Jefferson Street Bridge,[2] a railroad bridge spanning the creek, buckled and collapsed.  Id. at ¶¶ 20-21.  Six cars derailed and four became partially submerged in the creek.  Id. at ¶ 21.  One of the derailed railcars released its cargo of vinyl chloride into the air and water.  Id.  As a result, the Borough of Paulsboro declared a state of emergency and shortly thereafter, residents within a half-mile of the accident site were directed to shelter in place.  Id.  Approximately forty-five residents were evacuated later on November 30, and several hundred more were ultimately evacuated from the area several days later due to safety concerns related to the vinyl chloride spill.  Id. at ¶¶ 21-22.

Plaintiffs filed suit, alleging that Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge.  Id. at ¶ 24.  They allege that the train proceeded across the bridge against a red signal and that shortly before the derailment, Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems.  Id. at ¶¶ 20, 25.  Plaintiffs further allege that after the spill, Defendants failed to warn the Plaintiffs about the danger of the spilled chemicals and misled the public by minimizing the danger to the public that resulted from the spill. Id. at ¶ 40.  They allege that they were injured by the release of the vinyl chloride and have endured, and will continue to endure, physical and mental suffering as a result.  Id. at ¶ 41.

## II.      Legal Standard

---

[2] Another complaint in one of the actions consolidated into the Master Docket refers to the bridge as the "Paulsboro Bridge," and states it was built in 1873.  Compl. at ¶ 11, Wilson v. Consol. Rail Corp., Civ. No. 13-761.

### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law.  Chaimberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).  The choice-of-law rules of the forum state control in this case. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  Under New Jersey choice-of-law principles, there is a presumption that the law of the place of injury governs, unless another state has a more significant relationship to the parties and the issues.  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).  Here, the parties point to no state other than New Jersey whose law would potentially apply to this matter; accordingly, we assume, as the parties have, that New Jersey bears the most significant relationship to the issues now before the Court.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### III.   Discussion

#### A.   Strict Liability Claims

Plaintiffs seek to hold Defendants liable on a strict liability theory, in addition to other theories of liability. Defendants move to dismiss this strict liability count on two grounds. First, Defendants argue that Plaintiffs have not pled sufficient facts to establish that Defendants' conduct constituted an "abnormally dangerous activity," which is a necessary predicate for strict liability. Second, Defendants content that the strict liability count should be dismissed on the grounds that an exception to the strict liability doctrine applies to common carriers of goods in transport.

#### 1.   Abnormally Dangerous Activity

Under New Jersey law, strict liability applies when a plaintiff is harmed as a result of a defendant's "abnormally dangerous activity." T & E Indus. v. Safety Light Corp., 123 N.J. 371, 390 (1991). Strict liability means that the one who carries on the activity "is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Id. (quoting Restatement (Second) of Torts, § 519).

New Jersey courts have cited with approval the six-factor test set forth in the Second

Restatement of Torts ("Restatement") that courts should consider in order to determine whether

an activity is "abnormally dangerous."  The six factors are: (a) existence of a high degree of risk

of some harm to the person, land or chattels of others; (b) likelihood that the harm that results

from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d)

extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity

to the place where it is carried on; and (f) extent to which its value to the community is

outweighed by its dangerous attributes.  Id. (citing Restatement (Second) of Torts, § 520).

Defendants argue that the strict liability count should be dismissed because Plaintiffs'

allegations regarding the transport of vinyl chloride are insufficient to state a strict liability

claim.  They point out that Plaintiffs' complaint does not assert facts suggesting that transport of

vinyl chloride is "not a matter of common usage" or that "its value to the community is

outweighed by its dangerous attributes."  Def Mot. Dismiss at 8.  However, New Jersey courts

have not held out the six factors as independent pleading requirements for a claim.  See, e.g., T

& E Indus., 123 N.J. at 394.  All six need not be pled in order to state a claim for strict liability.

In T & E Industries, the New Jersey Supreme Court determined that the processing of radium

was abnormally dangerous by balancing the factors as a whole, and not by engaging in a factor-

by-factor analysis of the six Restatement factors to ensure that each was satisfied.  Id. at 394.

Plaintiffs pled that vinyl chloride causes various forms of cancer and can be deadly in

high levels.  Compl. at ¶ 30-31.  While the Court notes that the material in the pleadings relevant

to whether the Defendant was carrying on an abnormally dangerous activity is somewhat sparse,

Plaintiffs set forth a sufficient factual basis to survive a motion to dismiss.  Because "the

determination of whether or not an activity is abnormally dangerous is fact-intensive, courts

often wait until discovery is complete before making this determination." Berish v. Southwestern Energy Prod. Co., 763 F. Supp. 2d 702, 705 (M.D. Pa. 2011).  Therefore, Plaintiffs' strict liability count will not be dismissed on insufficient pleading grounds.

### 2. Common Carrier Exception

Defendants also move to dismiss the strict liability count on the ground that common carriers are exempted from strict liability.  The Restatement, in § 521, exempts defendants from strict liability for an activity that "is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier."  Plaintiffs first argue that New Jersey law does not incorporate § 521 of the Restatement, and therefore this Court should not apply the exception it provides for common carriers.

Plaintiffs observe that New Jersey courts have not adopted the common carrier exception and argue that this Court should not predict what New Jersey courts would do if presented with the question.  However, it is not possible for this Court to avoid such a prediction.  In the absence of controlling precedent, "a federal court sitting in diversity [is] charged with predicting how another court" would rule.  Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 253 (3d Cir. 2010).  While acknowledging that such a predictive exercise can be difficult, the Third Circuit indicated that "where 'two competing yet sensible interpretations' of state law exist," a federal court should "opt for the interpretation that restricts liability. . . ."  Id. (citing Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002)).

In this case, the more sensible interpretation is that New Jersey would adopt § 521 of the Restatement.  A recent Court of Appeals panel noted that "of the states that have adopted §§ 519-20 [of the Restatement], the vast majority has also adopted the subsequent exceptions."  In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1006 (9th Cir. 2008).  The New Jersey

Supreme Court has observed that "New Jersey typically gives substantial weight to the Restatement view, particularly in respect of issues it has not yet addressed." <u>In re Lead Paint Litig.,</u> 191 N.J. 405, 424 n.6 (2007) (internal quotations omitted).

Further, New Jersey Courts have adopted § 519 of the Restatement, which incorporates by reference the exception found in § 521 for common carriers. <u>Bahrle v. Exxon Corp.</u>, 145 N.J. 144, 157 (1996). The comments to § 519 state that "[t]he general rule stated in this section . . . should therefore be read together with §§ 520 to 524A, by which it is limited." Restatement (Second) of Torts §519, cmt. A. Because New Jersey courts have explicitly adopted § 519 of the Restatement, and § 519 indicates that it is meant to be read together with § 521, this Court is convinced that New Jersey courts would adopt § 521 given the opportunity. However, even if the Court were not so convinced, the "interpretation that restricts liability" would mean following the common-carrier exception to strict liability principles. <u>Werwinski</u>, 286 F.3d at 680.

Plaintiffs set forth a second argument that even if the common carrier exception applies, the "defendants should not benefit from the common carrier exception" to strict liability because they not only operated as a common carrier, but "also owned operated, and were responsible for maintaining the bridge" where the derailment took place. Pl. Opp'n at 8.[3] They in essence argue that they are not seeking to hold Defendant strictly liable only in its capacity as a carrier of freight, but also in its capacity as a land owner. Plaintiffs cite no authority in support of the theory that a railroad may still be held strictly liable on account of its ownership of the land, tracks, or bridges the railroad cars traverse over. The Court finds that to hold Defendants strictly

---

[3] Because Plaintiffs did not include page numbers on their brief in support of their motion to dismiss, for the purposes of citation in this opinion, the Court has designated the cover page of the brief as page 1, with all following pages numbered in sequential order.

liable for allowing a dangerous material to pass over a bridge that it owns would eviscerate the common carrier doctrine.

The Court notes that in their argument, Plaintiffs link their efforts to hold Defendant liable as a land owner to its responsibility to maintain the bridge.  While maintenance of a bridge may be dangerous if not undertaken correctly, Plaintiffs have not produced any authority indicating that it meets the "abnormally dangerous activity" standard discussed supra in part III.A.1.  Although Plaintiffs' arguments that Defendants knew of safety issues related to the bridge, and yet failed to maintain it are proper for its negligence count, those arguments have no place in the context of strict liability, which requires no negligence whatsoever.

Finally, Plaintiffs argue that even if § 521 of the Restatement applies, comment A to § 521 requires holding Defendants strictly liable.  This argument conflates negligence and strict liability principles.  Plaintiffs argue that the strict liability count should not be dismissed because comment A indicates that a common carrier will still be liable if it "failed to take that care in their carriage which their dangerous charter [sic] requires."  Pl. Opp'n at 7.  Plaintiffs maintain that their strict liability count should not be dismissed because "a jury could find that . . . the defendants failed to take the care in their carriage of the abnormally dangerous vinyl chloride." Id.

Comment A to § 521 indicates that a defendant who is exempt from strict liability as a common carrier may still be held liable under traditional negligence principles.  See Restatement (Second) of Torts § 521, cmt. A ("he is not liable unless he is negligent in the manufacture or custody . . . .") (emphasis added).  As strict liability is an alternative form of liability from negligence, Plaintiffs cannot defeat a motion to dismiss on their strict liability claims by arguing that Defendants might still be found negligent by a jury.  See Becker v. Baron Bros., 138 N.J.

145, 153 (1994) (in a strict liability analysis, the emphasis is not on "the reasonableness of a

defendant's conduct."); Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 204 (1982) ("in

strict liability cases, culpability is irrelevant.")

Railroads have frequently been held exempt from strict liability under the common

carrier exception in jurisdictions around the country.   See, e.g. Town of E. Troy v. Soo Line

R.R. Co., 409 F. Supp. 326, 330 (E.D. Wis. 1976); Pope v. Edward M. Rude Carrier Corp., 75

S.E.2d 584, 597 (W. Va. 1953); Christ Church Parish v. Cadet Chem. Corp., 199 A.2d 707, 709

(Conn. Super. Ct. 1964).  Plaintiffs do not appear to dispute that as a railroad, Defendant

qualifies as a common carrier if the court accepts the Restatement view.  Because Defendants are

a common carrier, they cannot be held strictly liable for lawfully transporting hazardous

chemicals.  Accordingly, Count I of Plaintiffs' complaint, alleging strict liability against

Defendants, will be dismissed with prejudice.

### B.      Negligent Infliction of Emotional Distress Claims

Defendants move for dismissal of Plaintiff's claim for Negligent Infliction of Emotional

Distress ("NIED"), arguing that the Complaint does not allege any facts that could give rise to

such a claim under controlling New Jersey law.

When a physically injured tort victim suffers emotional distress in addition to the

physical injuries, the victim need not bring a separate claim for NIED.  There is no question that

"a plaintiff who has sustained physical injury because of exposure to toxic chemicals [can]

recover damages for emotional distress based on a reasonable concern that she has an enhanced

risk of further disease."  Mauro v. Raymark Indus., Inc., 116 N.J. 126, 137 (1989).  An injured

party may recover for such injuries along with her physical injuries under a standard negligence

count.  An independent cause of action for NIED, however, is recognized only in certain special

circumstances where public policy favors recovery by a plaintiff who has not suffered an identifiable physical injury as a direct result of the tort.  There are only two forms of NIED that are recognized under New Jersey law.  Jablonowska v. Suther, 195 N.J. 91, 104 (2008).

The "zone of danger" form of NIED occurs when "the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness."  Id.  This first form of NIED requires "presence within [a] zone of physical danger" and usually involves a plaintiff who narrowly escaped "a reasonably apprehended physical impact" as a result of a defendant's negligent conduct.  Id. at 103; see also Caputzal v. Lindsay Co., 48 N.J. 69 (1966).

The second form of NIED recognized in New Jersey, sometimes referred to as a "Portee" claim,[4] is a claim for emotional damages caused by a plaintiff witnessing the death or serious bodily injury of a spouse or close family member.  Jablonowska, 195 N.J. at 103.  The plaintiff must have a "sensory and contemporaneous observation of the death or injury" at the scene where it took place and must suffer severe emotional distress as a result.  Id.

The Plaintiffs have not pled any facts or cited any law that would support either of the recognized forms of a NIED claim under New Jersey law.  In their brief, Plaintiffs merely quote paragraph 41 of their Complaint, where they pled that they suffered mental distress.  Pl. Opp'n at 8.  Suffering mental distress as a result of a defendant's negligence is plainly insufficient to sustain either type of independent cause of action for NIED.

C.     **Attorney's Fees**

Plaintiffs' complaint requests an award of attorney's fees.  Defendants move to dismiss, observing that in New Jersey, a prevailing party can recover attorney's fees only "if they are

---

[4] This theory of liability was announced by the New Jersey Supreme Court in Portee v. Jaffee, 84 N.J. 88 (1980).

expressly provided for by statute, court rule, or contract." <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 385 (2009).  Defendants argue that Plaintiffs have not identified any statute, court rule or contract whereby they might recover attorney's fees in this case.  Plaintiffs have not responded in their opposition brief to this issue.  Plaintiffs' complaint does not incorporate any cause of action for which a statutory basis for attorney's fees exists, nor have they identified any court rule that would permit recovery of such fees.  In their memorandum in opposition to the motion to dismiss, Plaintiffs cite no authority that would support a claim for attorney's fees.  Therefore, the Court grants Defendants' Motion to Dismiss Plaintiffs' request for attorney's fees.

### D. Medical Monitoring

Defendants move to dismiss Plaintiffs' claims for Medical Monitoring on the grounds that Plaintiffs have not sufficiently pleaded the elements of this type of claim.  Plaintiffs make no response in their opposition brief.

New Jersey recognizes Medical Monitoring as a cause of action, although in many other jurisdictions it is simply a remedy.  <u>Guinan v. A.I. duPont Hosp. for Children</u>, 597 F. Supp. 2d 517, 527 (E.D. Pa. 2009) (citing <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 787 (3d Cir. 1994)).  In order to set forth a claim for Medical Monitoring, a plaintiff must "demonstrate, through reliable expert testimony, predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease . . . and the value of early diagnosis." <u>Theer v. Philip Carey Co.</u>, 133 N.J. 610, 626 (1993) (quoting <u>Ayers v. Jackson Twp.</u>, 106 N.J. 557, 606 (1987).  In addition, a plaintiff must be "<u>directly</u> exposed to hazardous substances." <u>Id.</u> at 627.  Plaintiffs have not pled the necessary elements of a claim for medical monitoring.  Therefore, these claims will be dismissed without prejudice.

## IV.    Conclusion

For the reasons set forth above, the strict liability claims and claims for attorney's fees are dismissed with prejudice. Because it is possible that Plaintiffs may be able to supplement their complaint with facts sufficient to overcome the other deficiencies noted herein, the other claims at issue in the instant motion will be dismissed without prejudice. An appropriate order shall issue.  Plaintiffs may request, within the requisite time period stated in the Order, leave to amend their complaint.

Dated: 10/4/2013                                         /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge