NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| IN RE PAULSBORO DERAILMENT CASES | : | Master Docket No. 13-784 (RBK/KMW) |
| TONYA KIDD, et al.<br><br>             Plaintiffs<br><br>v.<br><br>CONSOLIDATED RAIL CORPORATION, et al.<br><br>             Defendants. | : | Civil No. 13-208 (RBK/KMW)<br>(Doc. No. 31)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation ("Defendants") to dismiss Counts III, V, VI and VIII of the First Amended Complaint of Tonya Kidd, et al. ("Plaintiffs").[1] Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to the counts for Strict

---

[1] Because there are 100 individual plaintiffs in this matter, the Court will not list each of them by name in this opinion. See First Amended Complaint, Docket No. 31.

1

Liability, Trespass, Assault and Battery, and Public Nuisance. Defendants also move to dismiss Plaintiffs' requests for attorney's fees and medical monitoring costs.

For the reasons stated herein, Defendants' motion to dismiss in part is **GRANTED** in part, **DENIED** in part.

I. BACKGROUND

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, New Jersey when the Paulsboro Bridge,[2] a railroad bridge spanning the creek, buckled and collapsed. Six cars derailed and four became partially submerged in the creek. Compl. at ¶¶ 109, 120. One of the derailed railcars released its cargo of vinyl chloride into the air and water. Id. at ¶ 121. As a result, the Borough of Paulsboro declared a state of emergency and shortly thereafter, residents of area, including some plaintiffs in this matter, were directed to evacuate or shelter in place. Id. at ¶ 132.

Plaintiffs filed suit in the Superior Court of New Jersey, Gloucester County. Defendants subsequently removed the complaint to this district. Plaintiffs later filed their First Amended Complaint, adding a number of additional plaintiffs to the suit. Def. Mot. at 1-2. They allege that Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge. They further allege that the train proceeded across the bridge against a red signal, which indicated that the bridge, which could swing open to allow water traffic, was not ready to safely accommodate rail traffic. Compl. at ¶¶ 111-12. Plaintiffs also assert that shortly before the derailment, Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems. Id. at ¶ 117. Many Plaintiffs suffered

---

[2] This case is consolidated onto a master docket for discovery purposes with a number of other actions related to the derailment described herein. The complaint in one of the other actions consolidated onto the Master Docket refers to the bridge as the "East Jefferson Street Bridge." Compl. at ¶ 20, Hamilton v. Consol. Rail Corp., Civ. No. 13-3724.

from coughing fits and other physical symptoms as a result of exposure to the chemicals that had spilled from the railcar.  Id. at ¶¶ 129-30, 134.  They also allege that they are at a greater risk of future illnesses, including cancer, and have sustained a diminution in the value of their properties and other economic losses as a result of Defendants' conduct.  Id. at ¶¶ 135-38.

## II.   LEGAL STANDARD

### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law.  Chaimberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).  The choice-of-law rules of the forum state control in this case. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  Under New Jersey choice-of-law principles, there is a presumption that the law of the place of injury governs, unless another state has a more significant relationship to the parties and the issues.  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).  Here, the parties point to no state other than New Jersey whose law would potentially apply to this matter; accordingly, we assume, as the parties have, that New Jersey bears the most significant relationship to the issues now before the Court.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### III. DISCUSSION

#### A. Strict Liability Claims.

Plaintiffs seek to hold Defendants responsible for their damages on strict liability grounds. Defendants have moved to dismiss this strict liability count because they argue that an exception to the strict liability doctrine applies to common carriers of goods in transport. The strict liability count will be dismissed with prejudice the reasons stated in the opinion of this date filed in Hamilton v. Consol. Rail Corp., Civ. No. 13-3724.

#### B. Trespass

Plaintiffs seek to hold Defendants liable under a theory of trespass, alleging that the chemicals released from Defendants' railcar trespassed upon real property owned by Plaintiffs.

For the reasons stated in the opinion of this date filed in Wilson v. Consol Rail. Corp., Civ. No. 12-7586, the trespass count will be dismissed with prejudice.

### C. Assault and Battery

Defendants move to dismiss the assault and battery count included in the compliant because the complaint's assertion that the defendants "knowingly and intentionally released hazardous substances," Compl. at ¶ 167, is a bare legal conclusion that is not sufficient to state a claim under the rule set forth in Iqbal and Twombly. The Court agrees and finds that the count for assault and battery must be dismissed.

Under New Jersey law, "[b]oth assault and battery are intentional torts." Corradetti v. Sanitary Landfill, Inc., 912 F. Supp. 2d 156, 161 (D.N.J. 2012) (citing Caldwell v. KFC Corp., 958 F. Supp. 962, 970 (D.N.J. 1997); see also Kelly v. Cnty. of Monmouth, 559 A.2d 411, 415 (N.J. App. Div. 2005)). For battery, the intent element is met where "the defendant intends a harmful contact, or an offensive contact upon the plaintiff." Kelly, 559 A.2d at 415 (internal citation omitted). In the case of assault, the intent element is met where "the defendant intends only to cause apprehension that such a contact is imminent." Id. (internal citation omitted). Plaintiffs argue that "the level of 'intent' required in a case such as this may be satisfied by the discharging of contaminants into the environment." Pl. Opp'n at 16 (citing Smith v. Honeywell Int'l Inc., No. 10-cv-03345, 2011 U.S. Dist. LEXIS 20331, at *10-11 (D.N.J. Feb. 28, 2011)).

This case involves a train derailment that released toxic chemicals into a residential community. Compl. at ¶¶ 115-120. The complaint alleges that the train derailment was an "accident." Id. at ¶ 118. As such, Plaintiffs have failed to plead that Defendants intentionally released hazardous substances that touched Plaintiffs, or that Defendants intentionally caused apprehension that such contact was imminent. See id. Instead, the complaint asserts the mere

5

legal conclusion that "Defendants knowingly and intentionally released hazardous substances . . . which touched the person of each Plaintiff." Compl. at ¶ 167. The complaint's factual and legal assertions are insufficient to "nudge his claim . . . across the line from conceivable to plausible." Iqbal, 556 U.S. at 684. Therefore, Plaintiffs' assault and battery claims must be dismissed.

Plaintiffs' reliance on Smith v. Honeywell International Inc. is misplaced. In Smith, the court held that the plaintiffs pled the requisite intent for battery to survive a motion to dismiss. Smith, 2011 U.S. Dist. LEXIS 20331, at *10-11. The defendants in Smith operated chromate production facilities, which produced toxic by-products that landed on the plaintiffs' properties. Id. at *2. In Smith, the intent element for battery was met because the release of the airborne waste was an intended consequence of the operation of the defendant's facility. Id. Unlike in Smith, Plaintiffs here fail to plead the requisite intent for assault or battery. Unlike the intentional release of airborne and waterborne chemicals in Smith, this case involves an accidental release of toxic chemicals into a residential community. Compl. at ¶¶ 115-120. The conduct of Defendants alleged in the complaint that resulted in the derailment and chemical discharge does not rise to the level of "intentional" under any plausible definition of the term. Therefore, the count for assault and battery will be dismissed with prejudice.

### D. Public Nuisance

Defendants argue that Count VIII, alleging public nuisance, should be dismissed.[3] Plaintiffs allege that the discharge of hazardous substances have affected the public's right to clean air and water. Defendants argue that no public right has been interfered with, and therefore

---

[3] The Court notes that the Complaint in this matter also contains a count alleging Private Nuisance, as do the complaints of a number of plaintiffs in the cases consolidated on the master docket with this one. The defendants in these matters have not moved to dismiss any of the Private Nuisance counts.

Plaintiffs cannot state a claim for public nuisance. Defendants also argue that Plaintiffs do not have proper standing to assert a public nuisance claim.

In New Jersey, to state a claim for public nuisance, a plaintiff must show that the defendant interfered with "a public right, in the sense of a right 'common to all members of the general public,' rather than a right merely enjoyed by a number, even a large number of people." In re Lead Paint Litig., 191 N.J. 405, 425 (2007) (quoting Restatement (Second) of Torts, § 821B cmt. g). For example, a polluter who prevents the use of a public beach for bathing or kills fish and deprives the public of the right to fish has caused a public nuisance. Id. at 426. Similarly, contamination of the public water supply would constitute a public nuisance. Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451. 463 (D.N.J. 2009). Defendants argue that the allegation that the discharge "produced a permanent or long-lasting adverse effect upon the public's right to clean air and water" is insufficient to state a public nuisance claim.

While the right to clean air and water are public rights, the bare allegation that there is a long-lasting effect on the air and water does not contain "sufficient factual matter" to rise to the level of "more than a conclusion" in stating the elements of a public nuisance. Iqbal, 556 U.S at 678, 680. In order to survive dismissal, Plaintiffs must show that a right enjoyed by all members of the general public has been infringed upon by Defendants. The complaint does not state with any specificity any harm that has been done to the public water supply or to the air available for the public to breathe. It does not state any toxins that the air and water contain, if any, nor does it state why the air and water are no longer suitable for their normal use by the general public. The factual allegations that Plaintiffs claim satisfies the minimum pleading requirements follow nearly verbatim the Restatement (Second) of Torts §821B. See Compl. at ¶¶177-178 (the discharge "is an unreasonable interference with a right common to the general public" and is "a

significant interference with the public health, the public safety, the public comfort and/or the public convenience."); In re Lead Paint Litig., 191 N.J. at 425 (quoting Restatement (Second) of Torts §821B, which contains the same language). Plaintiffs cannot satisfy their requirement to plead public nuisance with particularity by merely quoting the legal standard and claiming that Defendants have run afoul of that standard. Because of the foregoing findings, the Court need not address the standing question. Count VIII, alleging public nuisance will be dismissed without prejudice.

### E.  Attorney's Fees

Plaintiffs' complaint requests an award of attorney's fees. Defendants move to dismiss, observing that in New Jersey, a prevailing party can recover attorney's fees only "if they are expressly provided for by statute, court rule, or contract." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009). Defendants argue that Plaintiffs have not identified any statute, court rule or contract whereby they might recover attorney's fees in this case.

Plaintiffs have responded that the demand should not be dismissed because the Court may fashion equitable relief, including the awarding of attorney's fees. They also argue that attorney's fees may be recoverable under the "fund in court" doctrine. Henderson v. Camden County Mun. Auth., 176 N.J. 554, 564 (2003). The "fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation." Id. This matter is not postured to produce such a benefit. Further, this Court retains its power to grant equitable relief, including attorney's fees if appropriate, whether or not the complaint states a cause of action for such fess. Plaintiffs' complaint does not incorporate any cause of action for which a statutory basis for attorney's fees

exists, nor have they identified any court rule that would permit recovery of such fees. Therefore, the Court must grant Defendants' Motion to Dismiss Plaintiffs' request for attorney's fees.

      F.      **Medical Monitoring**

Defendants move to dismiss Plaintiffs' claims for Medical Monitoring on the grounds that Plaintiffs have not sufficiently pleaded the elements of this type of claim.

New Jersey recognizes Medical Monitoring as a cause of action, although in many other jurisdictions it is simply a remedy. Guinan v. A.I. duPont Hosp. for Children, 597 F. Supp. 2d 517, 527 (E.D. Pa. 2009) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 787 (3d Cir. 1994)). To set forth a claim for Medical Monitoring, a plaintiff must "demonstrate, through reliable expert testimony, predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease . . . and the value of early diagnosis." Theer v. Philip Carey Co., 133 N.J. 610, 626 (1993) (quoting Ayers v. Jackson Twp., 106 N.J. 557, 606 (1987). In addition, a plaintiff must be "_directly_ exposed to hazardous substances." Id. at 627.

Plaintiffs argue that the medical monitoring cause of action is proper, and that the question should properly come before the court after the parties have had an opportunity for discovery, including expert testimony.

In support of their motion to dismiss, Defendants cite an unpublished decision from another district that dismissed medical monitoring claims because the plaintiff failed to state what monitoring he required and which physician prescribed it. Bourgeois v. Exxon Mobile Corp., 2012 U.S. Dist. LEXIS20671, at *5 (E.D. La. Feb. 16, 2012). However, New Jersey requires a demonstration of the elements of a medical monitoring claim through "expert testimony." Theer, 133 N.J. at 621. Although medical monitoring damages are "not easily

invoked," id., the Court can only analyze the adequacy of the complaint at this early stage. Because testimony of witnesses cannot be considered at this stage, Plaintiffs have not yet had a fair opportunity to develop the discovery they would require to set forth medical monitoring claims. Plaintiffs have pleaded direct exposure to harmful chemicals, risk of diseases, including cancer, connected to the exposure, and an increase in the chance of the onset of those diseases. Compl. at ¶¶121-137. The Court finds that Plaintiffs have sufficiently pled a claim for medical monitoring to survive at this stage of the litigation.

## IV. CONCLUSION

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Plaintiff leave to amend the complaint unless it finds bad faith, undue delay, prejudice, or futility. Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). In this case, it is apparent that adding additional allegations in an amended pleading in an attempt to revive the claims for strict liability, trespass, assault and battery, or attorney's fees would be futile. Thus, these claims will be dismissed with prejudice. Because it is possible that Plaintiffs may be able to supplement their complaint with facts sufficient to overcome the deficiencies noted herein, the public nuisance claims will be dismissed without prejudice. The motion to dismiss will be denied as to Plaintiff's medical monitoring claims. An appropriate order shall issue. Plaintiffs may request, within the requisite time period stated in the Order, leave to amend their complaint.

Dated: 10/4/2013                                                                                  /s/ Robert B. Kugler
                                                                                                         ROBERT B. KUGLER
                                                                                                         United States District Judge