NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| IN RE PAULSBORO DERAILMENT CASES | : | Master Docket No. 13-784 (RBK/KMW) |
| DAVID BELBIN, et al. | : | |
| Plaintiffs | : | Civil No. 13-5583 (RBK/KMW) |
| | : | (Doc. No. 16) |
| v. | : | |
| | : | **OPINION** |
| CONSOLIDATED RAIL CORPORATION, et al. | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of David Belbin, et al. ("Plaintiffs") to remand this case to the Superior Court of New Jersey, Gloucester County. Consolidated Rail Corporation ("Conrail"), Norfolk Southern Railway Company ("Norfolk Southern"), and CSX Transportation ("CSX") (collectively "Railroad Defendants") argue that the case was properly removed pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. Because the Court finds that it does not have jurisdiction, Plaintiffs' motion to remand will be **GRANTED** and the case will be remanded to the Superior Court.

## I. BACKGROUND AND PROCEDURAL HISTORY

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, New Jersey, when a railroad bridge spanning the creek buckled and collapsed. Several cars became partially submerged in the creek. Compl. ¶¶ 24-25. At least one of the derailed railcars released its cargo of vinyl chloride into the air and water. Id. ¶ 45. The release of chemicals allegedly caused the surrounding neighborhood to become engulfed in a cloud of vinyl chloride fumes. Id. ¶ 46. As a result, a number of residents of the surrounding area were evacuated. Id. ¶ 51.

Plaintiffs allege that the Railroad Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge. They further allege that the train proceeded across the bridge against a red signal, which indicated that the bridge, which could swing open to allow water traffic, was not ready to safely accommodate rail traffic. Id. ¶¶ 40. Plaintiffs also assert that shortly before the derailment, the Railroad Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems. Id. ¶¶ 30-31, 34-35. Plaintiffs were involved in the emergency response to the derailment or are family members of those involved in the emergency response. Id. ¶ 80. They also allege that the Railroad Defendants failed to warn those responding to the scene of the dangers of the chemicals, and made misleading and false statements about the risk of exposure. Id. ¶¶ 72-74. The plaintiffs allege various physical symptoms and illnesses resulting from exposure to the toxic chemicals. Id. ¶¶ 81-101.

In May, 2013, a similar group of plaintiffs to the group in this case filed suit against the Railroad Defendants in the Philadelphia County Court of Common Pleas. See Certification of Mark Cuker, Ex. 1. After two other cases in filed Philadelphia County related to the Paulsboro

derailment were dismissed on the ground of forum non conveniens, the plaintiffs voluntarily dismissed their case. See Am. Notice of Removal, Ex. B. Shortly thereafter, Plaintiffs in this matter filed suit in the Superior Court of New Jersey, Law Division, Gloucester County. Two plaintiffs who were included in the Philadelphia suit were not included in the New Jersey suit, and four new plaintiffs were added when suit was filed in New Jersey Superior Court. Am. Notice of Removal ¶ 25. One of the new plaintiffs was James Bogusky, who is a citizen of Pennsylvania. Id. ¶ 18. All other plaintiffs in both the Philadelphia suit and this suit are residents of, and presumably citizens of, New Jersey. The defendants named in the Superior Court complaint were Conrail, a citizen of Pennsylvania, Norfolk Southern, a citizen of Virginia, and CSX, which is a citizen of Virginia and Florida. Id. ¶¶ 9-12.

On September 19, 2013, CSX removed the complaint to this Court pursuant to 28 U.S.C. § 1441, asserting that diversity jurisdiction existed under 28 U.S.C. § 1332(a). On September 20, 2013, CSX filed an amended notice of removal, and Conrail and Norfolk Southern filed consent notices thereafter. See ECF Doc. Nos. 1, 5-7.

## II. DISCUSSION

### A. Standard for Removal

Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. See Abels, 770 F.2d at 29 ("Because lack of

jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."); Glenmede Trust Co. v. Dow Chem. Co., 384 F. Supp. 423, 433-34 (E.D. Pa. 1974) ("It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case.") (citations omitted).

### B. Subject Matter Jurisdiction

Federal Courts are courts of limited jurisdiction and may only decide cases as authorized by Congress or the Constitution. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). Congress has authorized federal subject matter jurisdiction in civil suits where the amount "in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a). The statutory requirement that parties be citizens of different states means that complete diversity must exist; if any two adverse parties are co-citizens, there is no jurisdiction. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967). When a corporation is a party, it "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

In the amended notice of removal, CSX acknowledged that Bogusky's Pennsylvania citizenship precludes complete diversity of citizenship, because Defendant Conrail is also a citizen of Pennsylvania. Am. Notice of Removal ¶ 19. CSX nevertheless indicated that removal was proper because the Court could "drop Plaintiff Bogusky from the lawsuit, pursuant to Fed.

4

R. Civ. P. 21." Id. ¶ 20. CSX indicated that Bogusky was added for the purpose of preventing removal to federal court, is not an indispensable party, and should thus be dismissed to allow for diversity jurisdiction. Id. ¶¶ 20-21. They argue that Bogusky's participation in this suit "does not advance efficiency, but instead would prevent this Court from exercising jurisdiction over the claims of the other 23 plaintiffs." Id. ¶ 28. They also argue that Bogusky should be severed from this case under the doctrine of fraudulent misjoinder, also called procedural misjoinder. Both arguments for jurisdiction fail, and are discussed in turn, beginning with fraudulent misjoinder.

  1. Fraudulent Misjoinder

The Railroad Defendants assert that Bogusky is misjoined under Fed. R. Civ. P. 20, and as a result the court should sever his claims and remand them to state court, retaining jurisdiction of the remaining claims over which diversity jurisdiction would then exist. Def. Opp'n at 8.

The doctrine of fraudulent misjoinder, sometimes called procedural misjoinder,[1] has been recently described as a "somewhat novel doctrine." In re Propecia (Finasteride) Prod. Liab. Litig., Civ. No. 12-2049, 2013 WL 3729570, at *3 (E.D.N.Y. May 17, 2013).[2] The doctrine of fraudulent misjoinder addresses the charge "that the joined claims are unrelated and have been improperly joined in one action to destroy diversity." Kaufman v. Allstate Ins. Co., Civ. No. 07-6160, 2010 WL 2674130, at *7 (D.N.J. June 30, 2010) (quoting Geffen v. Gen. Elec. Co., 575 F.

---

[1] This Opinion primarily uses the term "fraudulent misjoinder," although the Court observes that Defendants use the term "procedural misjoinder." The two terms refer to the same doctrine, and the prior cases within this district that have discussed it have generally used the term "fraudulent misjoinder." See Lafalier v. State Farm Fire and Cas. Co., 391 F. App'x 732, 734 (10th Cir. 2010).

[2] Fraudulent misjoinder (also called procedural misjoinder) should not be confused with the widely accepted doctrine of fraudulent joinder. See In re Propecia, 2013 WL 3729570, at *3. Fraudulent joinder typically occurs when a plaintiff inserts a party with "no real connection with the controversy" into the complaint "solely to defeat federal jurisdiction." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). Fraudulent misjoinder, on the other hand, involves claims which may be valid, but are not properly joined under the permissive joinder rules. See In re Propecia, 2013 WL 3729570, at *4. Defendants in this case do not argue that Bogusky was fraudulently joined.

5

Supp. 2d 865, 869 (N.D. Ohio 2008)). The doctrine has often been used in the pharmaceutical context. The question in that context is generally whether "a group of plaintiffs who allege that they took the same drug and suffered similar injuries, but took the drug at different times, received it from different sources, and live in different states can be joined under Rule 20." In re Propecia, 2013 WL 3729570, at *6. Not all courts have acknowledged this doctrine, and of the federal courts of appeal, only the Eleventh Circuit has explicitly adopted it. See id. at *4 (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359-60 (11th Cir. 1996)). The Third Circuit has not spoken on the viability of the fraudulent misjoinder doctrine. See In re Fosamax Prods. Liab. Litig., Civ. No. 11-3045, 2012 WL 1118780, at *3 n.4 (D.N.J. Apr. 3, 2012).

Although the Third Circuit has not adopted the fraudulent misjoinder doctrine, at least one court in this district has severed nondiverse plaintiffs upon a finding of fraudulent misjoinder. In re Fosamax, 2012 WL 1118780, at *6. That Court acknowledged that "fraudulent misjoinder has not been universally accepted," and observed that the Third Circuit has not addressed the doctrine. Id. at *3. However, it held that "the doctrine is particularly relevant to large pharmaceutical product liability actions." Id. In describing the requirements of fraudulent misjoinder, it indicated that "the court must determine whether the joinder was egregious," observing that courts have made such a finding where the joinder was "grossly improper" or was "collusive and would fail to serve any legitimate purpose of fairness or judicial economy." Id. (citations omitted). The Fosamax court then found that fraudulent misjoinder existed where ninety-one plaintiffs alleged various injuries so that it was "impossible to determine how the Plaintiffs share any connection." Id. at *4. The joinder was "egregious" because only three of the ninety-one plaintiffs were from Missouri, where the complaint was filed, and none of the other plaintiffs, from twenty-seven different states, shared any connection with Missouri. Id. at

6

*5. The Court concluded that the claims were such that "no reasonable person would normally expect [them] to be tried together." Id. (citing Rudder v. K Mart Corp., Civ. No. 97-272, 1997 WL 907916 at *5 (S.D. Ala. Oct. 15, 1997)).

Other courts in this district have refused to apply the fraudulent misjoinder doctrine. See Prudential Ins. Co. of Am. v. Barclay's Bank PLC, Civ. No. 12-5854, 2013 WL 221995, at *10 n.13 (D.N.J. Jan. 22, 2013) ("The Third Circuit has never approved extending the doctrine to attack the joinder of Plaintiffs, and some courts refuse to do so."); Belmont Condo. Assoc. v. Arrowpoint Capital Corp., Civ. No. 11-2900, 2011 WL 6721775, at *7 (D.N.J. Dec. 20, 2011) ("In the Third Circuit, only the Eastern District of Pennsylvania has tentatively adopted the procedural misjoinder doctrine . . . . This Court declines to include procedural misjoinder as an alternative ground for fraudulent joinder."); Kaufman v. Allstate Ins. Co., Civ. No. 07-6160, 2010 WL 2674130, at *7-8 (D.N.J. June 30, 2010) ("Some courts have found this doctrine to be an unconstitutional creation of common law . . . . The Court, without guidance from the Third Circuit, and noting other district courts' reluctance to embrace the Tapscott doctrine finds that this issue would be better decided in state court, the court in which the parties were originally joined.").

This Court finds that here, it is not appropriate to sever Bogusky's suit based upon the doctrine of fraudulent misjoinder. The Third Circuit has not adopted the doctrine, and the only court in this district to apply it did so because of its particular relevance in the pharmaceutical context. The Third Circuit has cautioned that fraudulent joinder should be interpreted narrowly and "all doubts should be resolved in favor of remand." Batoff v. State Farm Ins., 977 F.2d 848, 851 (3d Cir. 1992) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). This Court finds that if fraudulent misjoinder is a viable theory, it too

7

should be interpreted narrowly, and thus there is no reason to break new ground here and apply fraudulent misjoinder in a new context. Even if this doctrine could be applied in the context of a chemical spill, however, it would not apply in this case.

Many courts that have applied the fraudulent misjoinder theory—including the court in this district that has done so—have required "egregious" conduct on the part of the plaintiffs. See Tapscott, 77 F.3d at 1360; In re Prempro Prods. Liab. Litig., 591 F.3d 613, 622 (8th Cir. 2010) ("even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder."); In re Fosamax, 2012 WL 1118780, at *3 ("if claims have been improperly joined, the court must determine whether the joinder was egregious."). In determining whether misjoinder is egregious, courts have looked for an attempt to join parties in a manner that is grossly improper or collusive, or joinder of claims that "no reasonable person would normally expect to be tried together." In re Fosamax, 2012 WL 1118780, at *3, *5 (citations omitted). This egregiousness requirement would not be met here, where the claims are clearly of the type that a reasonable person would expect to be tried together. The only argument that Defendants advance toward egregiousness is the addition of Bogusky to the lawsuit when it was re-filed in New Jersey, ostensibly to prevent diversity jurisdiction. Def. Sur-Reply at 3. Defendants cite no law to suggest that adding a party to prevent diversity jurisdiction is "egregious." To the contrary, courts have long recognized that plaintiffs are "the master[s] of the claim." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The key issue is whether Bogusky may be joined in the case under applicable joinder rules, and not the subjective intent of Bogusky or other plaintiffs in filing jointly. Even if certain parties are "added to prevent removal, that is [plaintiff's] privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." Garbie v.

DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000). Thus, the Court finds nothing "egregious," collusive or improper in the addition of Bogusky to the complaint, even if it was done with the intention of preventing removal.

Further, a finding of fraudulent misjoinder is ultimately a finding that the requirements of the applicable permissive joinder rule are not satisfied. See Tapscott, 77 F.3d at 1360.[3] In their zeal to advance a fraudulent misjoinder theory, Defendants have overlooked the plain language of Rule 20. If parties are properly joined under Rule 20, fraudulent misjoinder cannot exist. See 7 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice & Procedure § 3723 (4th ed. 2009). Rule 20 requires that the plaintiffs' damages arose out of the same "transaction, occurrence, or series of transactions or occurrences," and that there is some "question of law or fact common to all plaintiffs." Both requirements are met in this case.

Defendants make much out of several distinctions between Bogusky and other plaintiffs. They argue that he is not a public employee nor a family member of such a person. He does not fit the description in the complaint that the plaintiffs are "employed by the Borough of Paulsboro or Greenwich Township."[4] They further argue that Bogusky's exposure to the spill site was only two-and-a-half hours, compared to at least nine hours of exposure for all other plaintiffs, and several days of exposure in most cases. The distinctions that Defendants endeavor to draw between Bogusky and his co-plaintiffs do not support a finding that joinder is improper under Rule 20. The rule does not define what constitutes a transaction or occurrence, and courts often

---

[3] The Court notes that there is some disagreement as to whether state or federal joinder law applies in the context of the fraudulent misjoinder doctrine. See Belmont Condo. Assoc., 2011 WL 6721775, at *8. In this Opinion, the Court refers to Rule 20 because both parties refer to Rule 20 in their briefs, and neither party refers to New Jersey joinder law. Further, the New Jersey permissive joinder statute, N.J.R 4:29-1, "is virtually identical to its federal counterpart." Reuter v. Medtronics, Inc., Civ. No. 10-3019, 2010 WL 4628439, at *5 n.2 (D.N.J. Nov. 5, 2010) (quotations omitted).
[4] Evidently, Bogusky is not the only Plaintiff to whom this description does not apply. See Pl. Reply at 2.

apply this requirement on a case-by-case basis. See Wright, Miller, Cooper & Steinman, § 1653; Cooper v. Fitzgerald, 266 F.R.D. 86, 88 (E.D. Pa. 2010). The requirement has sometimes been described as "logically related." Montgomery v. STG Int'l, Inc., 532 F.Supp. 2d 29 (D.D.C. 2008). The Railroad Defendants argue that judicial economy and fairness dictate that Bogusky's claims be tried separately because "[t]he only commonality between Mr. Bogusky and the remaining Plaintiffs is that each alleges exposure to vinyl chloride as a result of the Paulsboro derailment." Def. Opp'n at 10. This argument is unconvincing, as exposure to vinyl chloride is the central claim of all Plaintiffs. Further, the case cited by Defendants in support of their argument applies the "logical relationship test." See Kalie v. Bank of Am. Corp., Civ. No. 12-9192, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013). However "transaction or occurrence" is defined, it defies logic to suggest that the train derailment of November 30, 2012, is not a single occurrence, or that the alleged injuries resulting from exposure to chemicals when Plaintiffs responded to the scene as part of their job duties within hours or days are not logically related.

The second requirement of Rule 20 is that a question of law or fact common to all parties will arise in the case. This does not mean that every question of law or fact must be common, but permits joinder when there will be at least one common question. See Westfield Ins. Co. v. Interline Brands, Inc., Civ. No. 12-6775, 2013 WL 6816173, at *12 (D.N.J. Dec. 20, 2013). For permissive joinder under Rule 20, the common question of law or fact need not predominate, as it must in a class action. Lee v. Cook County, Ill., 635 F.3d 969 (7th Cir. 2011). Defendants make no suggestion that there is not a common question of law or fact present, and the question is easy enough that it does not require extensive discussion. In fact, in arguing that Mr. Bogusky has nothing in common with the other plaintiffs other than alleged exposure to vinyl chloride,

Defendants seem to concede that the exposure is one such common question of fact. If the Railroad Defendants acted negligently with respect to one plaintiff in causing the derailment, they acted negligently toward all plaintiffs who arrived at the scene shortly thereafter.

The poor fit of the fraudulent misjoinder doctrine to the facts of this case illustrates why the doctrine is more easily applied in the pharmaceutical context. Although the Railroad Defendants endeavor to characterize this case as a "toxic tort" case that should be treated like a case where many plaintiffs allege injury from ingestion of a certain drug, there are key distinctions. See Def. Opp'n at 10. In a pharmaceutical case, various plaintiffs may have ingested a drug in different doses, for differing lengths of time, in multiple jurisdictions, obtained from different sources, and over a period of months or years, raising a legitimate question as to whether the harm constitutes a single transaction or occurrence. Here, rather than suffering injuries at different times and from different sources, Plaintiffs were all physically present at the scene of the derailment on the day that it happened or shortly thereafter, and were all allegedly exposed to the same discharge of toxic chemicals. All Plaintiffs share some connection with New Jersey in that they were all present in Paulsboro, New Jersey, within days of one another when exposed to the chemicals. Although each plaintiff does not allege the same type and extent of injury, and some were exposed to the chemicals for longer periods of time than others, their claims all arose out of the same transaction or occurrence.

The Court thus rejects Defendants' argument for application of the fraudulent misjoinder doctrine for the four reasons discussed herein. First, it is not clear that fraudulent misjoinder is a viable theory in this district. Second, if it is a viable theory, it has never been applied in this district outside of the pharmaceutical context, and it is not clear that it would be appropriate to apply it in the context of a chemical spill. Third, Defendants have not pointed to any egregious

11

conduct on the part of Plaintiffs. And fourth, it would be inappropriate to invoke fraudulent misjoinder because the plain requirements of Rule 20 for permissive joinder are satisfied.

   2. Rule 21 Severance

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Rule 21 allows "a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989). Defendants argue that the Court should drop Bogusky from the suit and sever his case, which would result in his case being remanded to the Superior Court with Bogusky as the sole plaintiff, and this court retaining jurisdiction over the claims of the remaining plaintiffs. Rule 21 is often used "to drop a nondiverse party after 'the case proceeds to trial and judgment [and] issues of judicial economy prevail.'" Route 27, LLC v. Getty Petroleum Mktg., Inc., Civ. No. 10-3080, 2011 WL 1256618, at *10 (D.N.J. Mar. 30, 2011) (quoting CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 382 n.6 (3d. Cir. 2004)). On the other hand, Courts have rejected attempts to have parties dropped under Rule 21 where a suit "is in its nascent stage." Id. Removal in the absence of fraudulent joinder purportedly based on diversity jurisdiction, in the hopes that a court will drop a party under Rule 21 "may be an attempt to 'end-run' around Third Circuit fraudulent joinder jurisprudence." Id.

Defendants have cited no law supporting dismissal of a nondiverse party under Rule 21 immediately after removal, in the absence of fraudulent joinder, in order to create diversity to suit the preference of one of the parties who wishes to litigate in federal court. On the other hand, courts in various jurisdictions have rejected Rule 21 arguments as a basis for removal. See Route 27, 2011 WL 1256618, at *10, Gonzalez v. J.C. Penney Corp., Civ. No. 05-22254, 2005

WL 5304795, at *2-3 (S.D. Fla. Nov. 7, 2005); Osborn v. Metropolitan Life Ins., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004); Ferry v. Bekum Am. Corp., 185 F. Supp. 2d 1285, 1290 (M.D. Fla. 2002); Garbie v. Chrysler Corp., 8 F. Supp. 2d 814, 817-18 (N.D. Ill. 1998). Dropping Bogusky would also not be "just," as required by Rule 21, in that it would force him to file his own action and lose the cost-saving benefits of joint litigation. The Court thus declines to exercise its discretion to sever Bogusky's claims pursuant to Rule 21.[5]

C. Attorney's Fees

In the motion to remand, Plaintiffs also request counsel fees and costs pursuant to 28 U.S.C. § 1447. In arguing for an award of attorney's fees, Plaintiffs cite Martin v. Franklin Capital Corp., 546 U.S. 132 (2005). In Martin, the Supreme Court indicated that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141. The Court agrees with the Railroad Defendants that they were objectively reasonable in seeking removal. At a minimum, they had a good faith belief that a court might extend the application of the fraudulent misjoinder doctrine in a manner that would confer jurisdiction. See Uriarte v. Outback Steakhouse, Civ. No. 11-897, 2011 WL 4020953, at *9 (D.N.J. Sept. 8, 2011). Accordingly, Plaintiffs' application for counsel fees is denied.

**III. CONCLUSION**

For the reasons stated herein, Plaintiffs' motion to remand will be **GRANTED**. Because this Court does not have jurisdiction, as required by 28 U.S.C. § 1441(b), this case will be

---

[5] Because of the Court's findings at this step of the analysis, it is unnecessary to discuss Plaintiffs' contention that jurisdiction does not exist because Conrail is a citizen of New Jersey. However, this Court recently decided a motion to remand on this basis in another case consolidated onto the master docket in this matter. See Kidd v. Consol. Rail. Corp., Civ. No. 13-208, ECF Doc. No. 84.

13

remanded to the Superior Court of New Jersey, Gloucester County.  An appropriate order shall issue.


Dated:  01/13/2014 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge