<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE PAULSBORO DERAILMENT CASES | Civil No. 13-784 (RBK/KMW) (Doc. No. 274) |
| DONALD WILSON, et al., Plaintiffs v. CONSOLIDATED RAIL CORPORATION, et al., Defendants. | Civil No. 12-7586 (RBK/KMW) |
| OWEN HAYNES, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiffs, v. CONSOLIDATED RAIL CORPORATION, et al., Defendants. | Civil No. 13-410 (RBK/KMW) |
| JOHN STEPHENSON AND TRACY LEE, IN THEIR OWN RIGHT AND ON BEHALF OF ALL OTHERS | |

| | |
|---|---|
| SIMILARLY SITUATED, : <br> : <br> Plaintiffs : <br> : <br> v. : <br> : <br> CONSOLIDATED RAIL : <br> CORPORATION, et al., : <br> : <br> Defendants. : <br> _____ : <br> : <br> DONALD WILSON, D/B/A DON'S : <br> BARBERSHOP : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CONSOLIDATED RAIL : <br> CORPORATION, et al., : <br> : <br> Defendants. : <br> _____ : | Civil No. 13-721 (RBK/KMW) <br><br><br><br><br><br><br><br><br><br><br><br> Civil No. 13-761 (RBK/KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

     Before the Court is the Motion of Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc. ("Defendants") to strike class allegations from the Second Consolidated Class Action Amended Complaint ("Second Amended Complaint"). Plaintiffs in this case incurred expenses and lost income as a result of evacuating or sheltering indoors when a train derailed and spilled toxic chemicals in Paulsboro, New Jersey. Plaintiffs represent a putative class of individuals and business who sustained economic losses as a result of the derailment. Members of the putative class do not assert claims for personal injury or property damage, but rather seek to recover for lost income or evacuation expenses that they incurred.

2

Defendants contend that class allegations should be stricken from the Second Amended Complaint because the proposed class cannot satisfy the prerequisites of Federal Rule of Civil Procedure 23. They argue that the failure to satisfy the prerequisites is sufficiently clear to warrant a decision on the class issues prior to the conclusion of discovery and briefing on Plaintiffs' affirmative motion for class certification. For the reasons that follow, Defendants' motion will be **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 30, 2012, a train derailed as crossed over a bridge that passes over Mantua Creek in Paulsboro, New Jersey. Sec. Am. Compl. ¶ 13. Defendants owned and operated the train involved in the derailment, and also owned and maintained the bridge over Mantua Creek. Id. The bridge is a "swing bridge" which may be manipulated to either allow watercraft to pass through along the creek, or, conversely, to permit rail traffic to proceed over the bridge. Id. ¶ 15. As a result of the derailment, four tank cars fell off the bridge into Mantua Creek. Id. ¶ 28. At that time, at least one of the derailed tank cars was carrying 25,000 gallons of vinyl chloride or other "dangerous substances" Id. ¶ 30. As a result, the vinyl chloride was released from the railcar into both the water and the atmosphere. Id. ¶ 30. Shortly thereafter, the surrounding area became contaminated with airborne chemicals. Id. ¶ 31. Many of those living or located in the surrounding areas were instructed to either evacuate or to "shelter in place." Id. ¶ 39.

The initial mandatory evacuation zone encompassed a twelve-block area. Id. ¶¶ 40, 41. On December 4, 2012, the evacuation order was expanded to include an additional 100 homes. Id. Other residents outside the mandatory evacuation zone, but still deemed to be in dangerously close proximity to the accident site, were instructed to

remain in their homes and seal all doors and windows until it was deemed safe to do otherwise. Id. ¶ 42.

Plaintiffs allege that Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge. Id. ¶ 38. Plaintiffs further allege that the train proceeded across the bridge against a red signal, which indicated that the bridge, which could swing open to allow water traffic, was not ready to safely accommodate rail traffic. Id. ¶¶ 25-27, 38. Plaintiffs also assert that shortly before the derailment, Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems. Id. ¶ 16-19.

Plaintiff Donald Wilson initiated a putative class action eleven days after the derailment. See Civ. No. 12-7586. Plaintiffs Tracy Lee, Owen Hayes, and Donald Wilson d/b/a Don's Barbershop also filed putative class actions. See Civ. Nos. 13-721; 13-410; 13-761. These cases were later consolidated, and Plaintiffs filed a consolidated class action complaint, which has since been amended. See Civ. No 13-784, Doc. Nos. 59 and 78.

In the Second Amended Complaint, filed on June 13, 2013, Plaintiffs identify two putative subclasses. Sec. Am. Compl. ¶ 43. The first putative subclass includes residents of Gloucester County, New Jersey, who evacuated their residences as a result of the chemical spill, and incurred unreimbursed non-medical expenses as a result of the evacuation. Id. The second putative subclass includes both persons and businesses, residing or located in Gloucester County, New Jersey, who suffered income loss as a result of the derailment. Id.

On November 22, 2013, Defendants filed their motion to strike the class

allegations, which is presently before the Court. Plaintiffs have filed a separate motion for class certification, which is currently being briefed. See Civ. No. 13-761, Doc. No. 23.

## II. LEGAL STANDARD

A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1)(a). Rule 12(f) states that a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter," acting either on its own or on a motion advanced by a party. Fed. R. Civ. P. 12(f). A further procedural vehicle is provided by Federal Rule of Civil Procedure Rule 23(d)(1)(D), which provides that a "court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

When determining whether class certification is proper, district courts need not presume that all allegations in the complaint are accurate, and may "look beneath the surface of a complaint to conduct the inquiries Rule 23 requires." Wright v. Family Dollar, Inc., 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) (citing Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 677 (7th Cir. 2001)).  However, in a putative class action suit, a plaintiff is entitled to discover information relevant to Rule 23's class certification requirements.  See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 317 (3d Cir. 2008). Class certification includes a review of "the substantive elements of the [proposed class members'] case in order to envision the form that a trial on those issues would take." Id. The burden of proof as to whether a proposed class can satisfy each element of Rule 23 ordinarily rests with the plaintiffs. See Mantolete v. Bolger, 767

5

F.2d 1416, 1424-1425 (9th Cir. 1985); Wright, 2010 WL 4962838, at *2 ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action." (citing Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006))).[1] However, "where a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." Wright, 2010 WL 4962838, at *2.

A court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts. See Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011) (holding that it is premature for a district court to decide class certification issues prior to discovery unless the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); John v. Nat'l Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); Advanced Acupunture Clinic, Inc. v. Allstate Ins. Co., Civ. No. 07-4925, 2008 WL 4056244, at *7 (D.N.J. Aug. 26, 2008) ("A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself

---

[1] The Court recognizes that some disagreement exists regarding the standard of review on a motion to strike class allegations. Some courts have found that the standard of review is the same as that employed when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Bessette v. Avco Fin. Servs., Inc., 279 B.R. 442, 450 (D.R.I. 2002) (indicating that "[f]or purposes of a motion to strike class allegations, asserted prior to any discovery on the matter, this Court will employ the standard set forth in FRCP 12(b)(6), reviewing this motion as if it were a motion to dismiss."); Walls v. Wells Fargo Bank, N.A., 262 B.R. 519, 529 (Bankr.E.D.Cal.2001) (noting that defendant's anticipatory motion to deny class certification was "the functional equivalent of a motion to dismiss"). However, this Court reads the Third Circuit's decision in Hydrogen Peroxide Antitrust Litigation to mean that in the context of any motion that implicates Rule 23, a district court may "conduct a preliminary inquiry into the merits" and is not bound to accept as true all well-pleaded allegations. Hydrogen Peroxide Antitrust Litig., 552 F.2d at 317.

demonstrates that the requirements for maintaining a class action cannot be met").

It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted. Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011). Otherwise, in order for a district court to engage in the "rigorous analysis" required to determine if certification is proper, an early motion to strike should be denied so that the court can "probe behind the pleadings before coming to rest on the certification question," after discovery has taken place. Id. (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)). A leading treatise on class action litigation notes that although a "motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification . . . [i]f the viability of a class depends on factual matters that must be developed through discovery, a motion to strike will be denied pending the full-blown certification motion." 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3.4 (7th ed. 2010).

### III. DISCUSSION

Federal Rule of Civil Procedure 23(a) identifies the explicit prerequisites under which one or more members of a class may sue or be sued as representative parties. Fed. R. Civ. P. 23(a). All members of the class must satisfy the enumerated class requirements, which are as follows:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class."

Id. However, before turning to these explicit requirements, courts reviewing class certification must address "two 'preliminary matters': first, whether the class was clearly defined, and second, 'whether the class must be (and if so, is in fact) objectively ascertainable.'" Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013) (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012)).

Defendants argue that Plaintiffs' Second Amended Complaint, on its face, cannot satisfy two prerequisites of class certification, and thus the class allegations should be stricken before even considering a full-blown class certification motion. Defs.' Mot. Strike at 5. Defendants argue that the allegations fail as to ascertainability and impracticability, asserting that because it is apparent from Plaintiffs' pleading that the class is unascertainable and that joinder is practicable, the motion to strike is not premature. Id. at 5-6. Because Plaintiffs have a burden to show that both requirements can be met, the Court discusses these two elements in turn.

**A. Ascertainability**

In addition to the explicit prerequisites of Rule 23, courts must also address as preliminary matters, (1) whether the class is clearly defined, and, if so, (2) whether it is objectively ascertainable. Carrera, 727 F.3d at 305. Classes are not ascertainable when class members are impossible to identify without extensive fact-finding that would burden the court with individualized "mini-trials" to simply identify members of the class. Id. at 303-04 (citing Marcus, 687 F.3d at 593).

Ascertainability must be established "so that it will be clear later on whose rights

are merged into the judgment," as otherwise, "satellite litigation will be invited over who was in the class in the first place." Marcus, 687 F.3d at 593. (internal citations omitted). Further, when extensive individualized fact-finding becomes necessary, maintaining a class is no longer administratively feasible. Id. at 594. Thus, testing a putative class action for ascertainability serves two important objectives: (1) it eliminates administrative burdens that would run counter to the intended efficiency of class actions in general; and (2) it serves to protect absent class members by ensuring that the best notice practicable can be provided to class members.

Ascertainability has proven a difficult hurdle for plaintiffs in products liability cases, when class membership is not easily determinable. For example, in Marcus v. BMW of North America, LLC, the Third Circuit questioned the ascertainability of a class of automobile purchasers whose vehicles came with a particular kind of "run-flat tires," which had "gone flat and been replaced." 687 F.3d at 592. The Court observed that BMW did not keep records of which cars were fitted with the tires, and because some customers who had experienced flat tires would have replaced them somewhere other than at a dealership, neither BMW nor the plaintiff would have any way to know of all of the customers who had experienced flat tires. Id. at 593-94. In Carrera v. Bayer Corp., the Third Circuit, relying on Marcus, vacated the certification of a class defined as all consumers who bought a particular dietary supplement in Florida. 727 F.3d at 304. The Court found that ascertainability had not been demonstrated because there was no evidence that retailers maintained records of all customers who purchased the supplement, and because ascertaining class membership through affidavits was an inappropriate method for determining class membership. Id. at 308-09. Finally, Hayes v.

9

Wal-Mart Stores, Inc., vacated the certification of a class of consumers who were a subset of a larger pool of consumers who purchased certain service plans, where the district court did not consider the administrative feasibility of ascertaining class membership. 725 F.3d 349, 351, 355 (3d Cir. 2013). It is on these cases that Defendants rely, in particular upon the general prohibition against certifying putative classes where "proof of class membership is [based on] the say-so of putative class members." Id. at 356.

This case is readily distinguishable from those product liability actions, as the parameters of the evacuation and "shelter in place" zones that economically impacted the putative class members may be discretely defined through discovery, and those residing or doing business within articulated borders may be determinable on the basis of public records. Requiring proof of residence from purported class members does not amount to a mini-trial. The area affected by the chemical spill may be shown by discovery to be discrete, the applicable time frame is well established in the pleading, and purported class members either resided or did business within delineated areas or they did not.[2] Further, Marcus, Carrera, and Hayes all involved the certification of a class following discovery, and not the striking of class allegations based upon the pleadings.

Defendants further argue that determining who actually incurred economic losses presents "an insurmountable barrier to class certification," because evacuees would need to prove that they actually evacuated and that they incurred unreimbursed expenses as a

---

[2] During the time this motion was pending, Plaintiffs modified class definitions in their affirmative motion for class certification. See Civ. No. 13-761, Doc. No. 23. This Opinion only addresses the putative class as it was defined in the Second Amended Complaint, which defines the impacted area as Gloucester County. Second Amended Complaint ¶ 43. Importantly, the Court now only finds that the pleading sets forth a putative class that may be ascertainable, and does not yet weigh in on whether such a definition is either adequate or sufficiently concise.

result of the derailment. Defs.' Mot. Strike 12. In a factually similar case that Plaintiffs point to, involving a subclass of voluntary evacuees, a court found that such determinations are not so excessive as to rise to the level of mini-trials, and should not alone preclude certification. Beaulieu v. EQ Indus. Servs., Inc., Civ. No. 06-400, 2009 WL 2208131, at *9 (E.D.N.C. July 22, 2009) (finding, that "[t]he fact that putative members of the Secondary Evacuation Subclass were not subject to the evacuation order increases the possibility that some did not evacuate and that individualized fact finding on the issue will be needed to determine membership in the subclass. The court does not believe, however, that any such required fact finding would be excessive"). In another case involving a factually similar chemical spill resulting from a train derailment, a class was found to be ascertainable, as "[t]he class definition sets out specific geographic limitations, is precise and objective, and makes readily ascertainable the determination whether someone is within or without the class." In re Train Derailment Near Amite Louisiana, Civ. MDL No. 1531, 2006 WL 1561470 at *14 (E.D. La. May 24, 2006).

The District Court in Beaulieu elaborated that either hotel receipts or affidavits for evacuation to non-commercial locations, such as the homes of relatives or friends, could readily indicate whether class members had evacuated. Beaulieu, 2009 WL 2208131, at *9. Similarly, this Court rejects the argument that a putative class defined by residence within an official evacuation zone is impracticable to ascertain. As Defendants argue, some residents within the zones covered by these orders may have disregarded the official instructions. Defs' Mot. Strike at 12. But the possibility that some fact-finding might be necessary does not mean a class can never be certified. It is only when class members cannot be identified with "extensive" fact-finding or "mini-trials" that a court

11

should find that a class is not ascertainable. Marcus, 687 F.3d at 593. Defendants have not cited any law to suggesting that a mandatory evacuation zone cannot be used to define an ascertainable class because some residents might have decided not to obey the orders. On the other hand, as observed above, at least two courts presented with similar circumstances have found that the boundaries of an official evacuation zone may be used to define an ascertainable class. Plaintiffs describe the mandatory evacuation zone as an area with well-defined boundaries in their complaint, and should be afforded the opportunity, based upon the results of discovery, to propose certification of an ascertainable subclass of evacuees. Sec. Am. Compl. ¶¶ 40-41.

Similarly, the income loss sub-class does not necessarily fail in light of the ascertainability requirement. In fact, regarding business income loss, the Beaulieu court found that a subclass that was defined as "all businesses physically located within or geographically contiguous to the Recommended Evacuation Zone . . . that were forced to cease business operations in response to the Incident and sustained provable economic losses" was adequately ascertainable. Beaulieu, 2009 WL 2208131, at *10. The Court continued:

> [T]he question of whether a particular business ceased operations in response to the Incident and sustained provable economic losses as a result of the Incident should not entail elaborate fact finding. Most businesses within the Recommended Evacuation Zone are obviously likely to have had the access of their employees and customers blocked because of the evacuation order. . . . The effect of the evacuation order would therefore help narrow the proof of evacuation and its cause. The degree of fact finding would also tend to be limited by the relatively brief period over which the Incident occurred. . . .

Id. Similarly, as the proposed income loss subclass at issue here includes businesses that

closed due to the derailment and individuals who lost time from work, within a specific location and time period, it seems clear that proving such income loss could well require very little fact finding.

For these reasons, the Court does not agree with Defendants that, based upon the allegations in the Second Amended Complaint, it would be impossible for Plaintiffs to demonstrate that an ascertainable class exists. The Court does not today decide that the putative class <u>is</u> ascertainable, but finds that before engaging in the "rigorous analysis" required to determine if certification is proper, the Court should consider materials "behind the pleadings," including the product of any discovery that has taken place. <u>Pilgrim</u>, 660 F.3d at 949. Because "the shape and form of a class action evolves only through the process of discovery," the ascertainability determination in this case is better made with the benefit of a full record. <u>Luppino v. Mercedes-Benz USA, LLC</u>, Civ. No. 09-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013).[3]

## C. Impracticability

The second prerequisite attacked by defendants is that of numerosity, which is defined as a "class . . . so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); <u>see also</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997). Impracticability of joinder does not only relate to the sheer number of class members, but also the impracticability of plaintiffs filing suit when the individual stakes in the action are relatively small. <u>Amchem</u>, 521 U.S. at 616.

Defendants argue that the geographic proximity of the putative class members

---

[3] The Court recognizes that discovery related to the class issues is now complete. <u>See</u> Order of Dec. 11, 2013 (ECF Doc. No. 291). However, it was not complete at the time this motion was briefed, and this motion focuses on the adequacy of the class allegations on the face of the complaint. <u>See</u> Defs.' Mot. Strike at 5.

means that joinder is practicable, because all are located within a discrete area.[4] When numerosity is at issue, some courts have held that geographic proximity is part of the consideration. Defendants cite Churchill v. Cigna Corp., which indicates that "[i]n determining whether joinder is impracticable, a court should consider (1) the size of the potential class; (2) the geographic location of proposed class members; and (3) the relative ease or difficulty in identifying members of the class for joinder." Civ. No. 10-6911, 2011 WL 3563489, at *3 (E.D. Pa. Aug. 12, 2011) (citing Graveley v. City of Philadelphia, Civ. No. 90-3620, 1997 WL 698171, at *4 (E.D. Pa. Nov. 7, 1997)). With particularly small class sizes which otherwise fail to meet the numerosity requirement, geographic "centrality" becomes even more pertinent to a practicability of joinder consideration. See Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398, 402 (D.N.J. 1999) (holding that joinder of approximately twenty plaintiffs in close geographic proximity to each other was not impracticable).

In particular, Defendants rely on the Sixth Circuit's decision in Turnage v. Norfolk Southern Corp., which was a suit for private nuisance caused by a train derailment and resulting chemical spill. 307 F. App'x 918, 919 (6th Cir. 2009). The Sixth Circuit affirmed the district court's decision not to certify a class, citing the speculative size of the class as well as the geographic proximity of prospective class members to each other. Id. at 921-23. Although Turnage is factually similar to the events that took place in the instant matter, that case was decided as a motion to certify, and not as a motion to strike. Id. at 919. This is particularly relevant, as the procedural posture allowed for

---

[4] This argument advanced by Defendants brief largely runs counter to their arguments against ascertainability, discussed in the previous section. If the putative class members can easily be joined because they all live close to each other, it is likely that they are readily ascertainable.

Plaintiffs to rely on the completed discovery to make their case. In fact, the Sixth Circuit cited the ample opportunity that the plaintiffs had during litigation "to supply concrete evidence of numerosity if there were any such evidence to be had." Id. at 922. The court also cited the inability of the plaintiffs to define a discrete class, observing that "[t]he class definition advanced . . . throughout this case has been a moving target." Id. Further, the Turnage decision was an appeal to the Sixth Circuit, which emphasized the fact that the district court "has broad discretion to decide whether to certify a class," which weighed in favor of affirming the denial of certification. Id. at 921. Thus, Turnage does not stand for the proposition that a class action cannot be maintained in connection with a chemical spill that affects a relatively small community. Here, Plaintiffs should be entitled to an opportunity to arrive at a precise target with respect to the definition of the class and to "supply concrete evidence of numerosity." Id. at 922.

Defendants also rely on the number of cases pending in this district and in state courts to show that joinder is practicable, and that numerous plaintiffs have asserted claims in connection with the same accident on an individual basis. Defs.' Mot. Strike at 4. However, this does not take into account the nature of the damages alleged in those lawsuits. As Plaintiffs acknowledge, "each of these individual lawsuits involves claims for personal injury and property damage," while members of the putative class addressed herein assert only claims for economic harm. Id. at 5. Defendants do not point to any lawsuit that has not been postured as a class action where plaintiffs have asserted claims for solely economic losses.

This implicates the other side of the impracticability coin—for a number of plaintiffs in this proposed class, the potential for recovery may be relatively small and

15

would likely not result in feasible individual suits. While the amounts putative class members may be entitled to recover will certainly vary, it seems highly likely that a great number of putative class members will have a sufficiently small stake in the action so as not to warrant conducting separate lawsuits. The other suits related to the Paulsboro Derailment that Defendants cite involve claims for personal injury or property damage, which often means a greater individual stake in recovery. On the other hand, joinder may be impracticable where the individual stakes in the action are so small that it is unlikely that plaintiffs would assert their claims individually. Amchem, 521 U.S. at 616. Based on the allegations in the complaint, Plaintiffs should be allowed to develop evidence that the claims are sufficiently small that potential class members "would not otherwise be appropriately incentivized to bring their own singular claims," which is the purpose of Rule 23(b)(3).  Logory v. Cnty. of Susquehanna, 277 F.R.D. 135, 146 (M.D. Pa. 2011) (citing Amchem, 521 U.S. at 617).

Plaintiffs allege that at least 600 residents were affected by the mandatory evacuation order alone. Sec. Am. Compl. ¶ 41. Without affording plaintiffs the opportunity to rely on discovery regarding the size of the class and damages, it would be premature to decide that joinder of all of these 600 or more residents is practicable. Because facts relevant to this inquiry, such as the exact number of class members and the amount at stake, are properly addressed in discovery, this issue will be determined on Plaintiffs' motion to certify the class.

### III. CONCLUSION

Defendants' motion to strike class allegations will be **DENIED** for the reasons set forth herein. An appropriate Order shall issue today.

Date:  4/8/2014                                             /s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge