## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| **IN RE:**<br>**PAULSBORO DERAILMENT**<br>**CASES** | :<br>:<br>:<br>:<br>:<br>: | **MASTER DOCKET NO.:**<br>**13-CV-784 (RBK/KMW)** |

:  1:12-CV-07468-RBK-KMW (Breeman)
:  1:12-CV-07747-RBK-KMW (Lord)
:  1:13-CV-02357-RBK-KMW (Canning)
:  1:13-CV-02358-RBK-KMW (Armistead)
:  1:13-CV-03350-RBK-KMW (Everingham)
:  1:13-cv-03244-RBK-KMW (Morris)
:  1:13-cv-03724-RBK-KMW (Hamilton)
:  1-13-cv-03935-RBK-KMW (Clark)
:  1-13-cv-04322-RBK-KMW (Kennedy)
:  1-13-cv-04569-RBK-KMW (Johnson)
:  1:13-cv-04709-RBK-KMW (Daniels)
:  1:13-cv-05763-RBK-KMW (Truluck)
:  1:13-cv-07410-RBK-KMW (Smith)
:  1:14-cv-00043-RBK-KMW (DePietro)
:  1:14-cv-05256-RBK-KMW (Platt)
:  1:14-cv-07356-RBK-KMW (Abate)
:  1:15-cv-00071-RBK-KMW (Wileczek)
:  1:15-cv-00134-RBK-KMW (Vanblarcom)
:  1:15-cv-00578-RBK-KMW (Mackenzie)
:  1:15-cv-01125-RBK-KMW (Costa)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON PREEMPTED CLAIMS
## RELATING TO TRAINING, SUPERVISION AND DISCIPLINE

# TABLE OF CONTENTS

**<u>PAGE</u>**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          ii

Facts . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . .          2

A.  Conrail Crew . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          2

B.  Conrail's Training Program . . . . . . . . . . . . . . . . . . . . . . . . . . .          4

C.  Prior Discipline of Den Ouden . . . . . . . . . . . . . . . . . . . . . . . . .          5

Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          6

I.   Plaintiffs' negligent-training claims are preempted by the FRSA          6

II.  Plaintiffs' claims of failure to supervise the crew are also          17
     preempted by the FRSA

III. Plaintiffs' claims of negligence relating to prior discipline of the          18
     crew are preempted by the FRSA and the RLA

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          23

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Allis–Chalmers Corp. v. Lueck*
471 U.S. 202, 213 (1985)                                                    19

*Bradford v. Union Pac. R.R.*                                              11
491 F. Supp. 2d 831, 839 (W.D. Ark. 2007)

*Burlington N. & Santa Fe Ry. v. Doyle*                               11, 12
186 F.3d 790 (7th Cir. 1999)

*Carter v. National Railroad Passenger Corp.*                             14
 No. 13-CV-00809-JCS, 2014 WL 3974732 (N.D. Cal. Aug. 8,
2014)

*Cole v. Pathmark of Fairlawn*                                            19
672 F. Supp. 796, 800 (D.N.J. 1987)

*Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*              22
491 U.S. 299, 311-12 (1989)

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 558 (1993)                  7, 11

*Dean v. Norfolk S. Ry. Co.*                                             19
No. 4:13-CV-2622, 2015 WL 1423456, at *9 (N.D. Ohio Mar. 27,
2015)

*Gilbert v. Norfolk S. Ry. Co.*                                          8
2010-Ohio-2618, 2010 WL 2333773, *8 (Ohio Ct. App. 2010)

*Gould v. Norfolk S. Corp.*                                              12
No. EV 96-248-C H/Y, 1998 WL 35881612 (S.D. Ind. Sept. 28,
1998)

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)           20

*Hodge v. Burlington N. Sana Fe. Ry.*                                          12
461 F. Supp. 2d 1044, 1053 (E.D. Mo. 2006)

*Kohn v. Norfolk S. Corp*.                                                    12, 17
No. 3:96-CV-911 AS, 1998 WL 35881611 (N.D. Ind. Jan. 6, 1998)

*Lingle v. Norge Div. of Magic Chef, Inc.*                                     20
486 U.S. 399, 405-06 (1988)

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of*                  20
*Am. v. Lucas Flour Co*.
369 U.S. 95, 103 (1962)

*Lombardy v. Norfolk S. Ry.*                                              12, 15, 18
2014 W.L. 2468612 *8 (N.D. Ind. 2014)

*McCormick v. AT&T Techs., Inc*.                                               20
934 F.2d 531, 533 (4th Cir. 1991)

*Morris v. Ambassador Nursing Home, Inc*.                                      21
845 F. Supp 1164, 1167 (E.D. Mich. 1994)

*Norfolk Southern Ry. Co. v. Shanklin*                                          7
529 U.S. 344 (2000)

*Peters v. Union Pac. R.R.*                                                    11
80 F.3d 257, 262 (8th Cir. 1996)

*Prentice v. Nat'l R.R. Passenger Corp*.                                      12, 19
2014 WL 3868221, *8 (N.D. Cal. Aug. 6, 2014)

*Thompson v. Northeast Ill. Reg'l Commuter R.R*.                               12
854 N.E.2d 744, 747 (Ill. App. Ct. 2006)

*Underwood v. Red Star Yeast & Products*                                       21
1999 WL 430138 (N.D. Cal. 1999) (unpublished)

*Union Pac. R.R. v. California Pub. Utils. Comm'n*                            11, 14
346 F.3d 851 (9th Cir. 2003)

*Vigil v. Burlington N. & Santa Fe. Ry.*                    12
521 F. Supp. 2d 1185, 1213 (D.N.M. 2007)

*Wisconsin v. Wisconsin Cent. Transp. Corp.*               10
546 N.W. 2d 206, 211 (Wis. Ct. App. 1997)

*Zimmerman v. Norfolk S. Corp.*                            7
706 F.3d 170, 176 (3d Cir. 2013)

### Statutes and Rules

Rule 56(c), FRCP                                            1

49 C.F.R. § 172.700                                        9
49 C.F.R. § 217.1                                       8, 14
49 C.F.R. § 217.2                                          10
49 C.F.R. § 217.7                                          16
49 C.F.R. § 217.9                                   15, 17, 18
49 C.F.R. § 217.11                                  9, 15, 16,
                                                           18
49 C.F.R. § 240.231;                                       9
49 C.F.R. §§ 240.1(a), 242.1(a)                            9
49 C.F.R. §§ 240.1(b); 242.1(b)                            9
49 C.F.R. § 242.7                                          3
49 C.F.R. § 242.301                                        9

45 U.S.C. § 151                                           18
49 U.S.C. 20101                                           17
49 U.S.C. § 20106(a)(1) and (2)                            6
49 U.S.C. Section 20106(b)(1)(A)-(B)                       7

## INTRODUCTION

Defendants Consolidated Rail Corporation ("Conrail"), Norfolk Southern Railway Company ("Norfolk Southern")[1], and CSX Transportation, Inc. ("CSXT") (collectively "Railroad Defendants") respectfully move for partial summary judgment regarding the following claims made by Plaintiffs: (1) allegations of negligence relating to Conrail's training of its employees, including the train crew operating the train involved in the Paulsboro derailment; (2) allegations of negligence relating to Conrail's supervision of its employees; and (3) allegations of negligence relating to Conrail's discipline of its employees.[2] These claims are all preempted by the Federal Railroad Safety Act ("FRSA") and the comprehensive regulations issued thereunder. Additionally, Plaintiffs' claims regarding any alleged negligence by Conrail in the prior disciplinary actions taken against its employees are preempted by the Railway Labor Act ("RLA"). Because there is no genuine issue as to any material fact regarding these claims, summary judgment is appropriate. Rule 56(c), FRCP.

---

[1] Norfolk Southern Railway Company is also incorrectly designated in the complaint as a/k/a "Norfolk Southern Corporation".

[2] The Railroad Defendants jointly file this motion and brief, although the arguments set forth herein are specific to Conrail since it is undisputed that the crew members operating the derailed train were Conrail employees operating a Conrail train.

## FACTS

The pertinent facts relating to the derailment were set forth in the Railroad Defendants' Memorandum in Support of their first Motion for Partial Summary Judgment, and therefore will not be repeated herein. This memorandum will focus only on those facts relevant to the three issues that are the subject of this motion.

### A.  Conrail Crew

Engineer Mark Mather and Conductor Wilbert den Ouden, both of whom are Conrail employees, were the sole crew members operating the Conrail train involved in the derailment (Train FC4230). Mather was hired by Conrail in 2003 and he became an Engineer shortly thereafter. Ex. A, Mather Dep. 13:3-12. At the time of the derailment he had successfully completed all training, instructions, examinations and other requirements to receive his engineer certification. Ex. B, Ferrone Aff. at ¶ 11. He was "qualified" as defined in federal regulations governing the qualification and certification of locomotive engineers. See 49 C.F.R. § 240.7 (defining "qualified" as "a person who has passed all appropriate training and testing programs required by the railroad and this part and who, therefore, has actual knowledge or may reasonably be expected to have knowledge of the subject on which the person is qualified").

Mather had been working as an engineer on the Penns Grove Secondary Line, the Conrail track segment where the derailment occurred, for 14 months prior

2

to the accident.  Mather  Dep.  42:21-43:15, 47:4-14.    During  the  12  months
preceding  the  accident,  he  was  observed  by  Conrail  supervisors  on  66  different
days  as  part  of  Conrail's  operational  testing  program.    Mather  Efficiency  Checks
attached  to  Ferrone  Aff.  at  Ex  9.  No  rules  violations  were  noted  during  these
observations.  *Id*. There  were  46  entries  showing  that  he  properly  complied  with
stop  signals,  and  10  entries  whereby  he  was  found  to  have  complied  with  a  stop
signal  associated  with  a  moveable  bridge  in  accordance  with  Rule  241(d).[3]  *Id*.

The  conductor,  Den  Ouden,  also  worked  on  the  Penns  Grove  Secondary  line
prior  to  the  derailment.    Ex.  C,  Den  Ouden  Dep.  35:2-18.    Den  Ouden  had
successfully  completed  all  instruction,  training,  and  examination  programs
required  to  work  as  a  conductor.    Ferrone  Aff.  at  ¶  12.    Like  Mather,  he  was
"qualified"  as  defined  in  federal  regulations  concerning  train  conductors.    See  49
C.F.R.  §  242.7  (defining  "qualified"  as  meaning  "a  person  who  has  successfully
completed  all  instructions,  training  and  examination  programs  required  by  the
employer, and the applicable parts of this chapter and that the person therefore may
reasonably  be  expected  to  be  proficient  on  all  safety  related  tasks  the  person  is
assigned  to  perform.").    During  the  12  months  preceding  the  derailment,  Den
Ouden  was  observed  by  Conrail  supervisors  on  22  different  days  as  part  of  the

---

[3] NORAC operating Rule 241(d) governs train movements past a stop signal at a
moveable  bridge  and  is  the  primary  operating  rule  that  Plaintiffs  claim  was
violated on the date of the derailment.

operational testing program and no rules violations were noted with respect to stop signals. Den Ouden Efficiency Checks attached to Ferrone Aff. at Ex. 10.

Prior to the derailment, both Mather and Den Ouden had received specific on-the-job training regarding inspection of the locks on the Paulsboro moveable bridge. Mather testified that in 2004 as part of his on-the-job training as a conductor, another experienced conductor took him onto the bridge and showed him how to determine if the bridge is properly locked. Mather Dep. 30:18-31:25, 145:8-18. Similarly, as part of his on-the-job conductor training in 2009, Den Ouden was trained by an experienced conductor on inspecting the locking mechanism on the bridge. Den Ouden Dep. 21:2-21. The conductor training Den Ouden took him onto the bridge and showed him what to look for to ensure that the bridge was properly lined and locked. *Id.* at 22:2-5, 23:7-24.

B. Conrail's Training Program

Conrail has an extensive training program for its engineers and conductors in compliance with the comprehensive federal regulations that set forth the requirements for training crew members. Conrail's training consists of both formal training and on-the-job training. All of Conrail's training and testing programs are submitted to the FRA for approval as required by federal law. Ex. D, Ferrone Dep. 221:11-222:9. Conrail's engineers and conductors are given a minimum of 4 weeks of classroom training and 50 weeks of on-the-job training upon their hiring.

Ferrone Dep. 218:17-219:9.  All veteran conductors and engineers are given annual training and testing during the first three months of each year to ensure compliance with federal regulations.  *Id*. at 219:10-25, 220:1-25.  This annual training includes instruction for handling hazardous materials in accordance with the HM-1. Ferrone Dep. at 219:10-220:25; Ex. E, Richter Dep. 69:15-24, 142:7-23.  Conrail also conducts unannounced observational "efficiency tests" throughout the year to observe conductors and engineers and determine whether they are complying with the federal regulations. Ferrone Dep. at 220:1-2.  Moreover, all engineers and conductors on the Penns Grove Secondary Line are trained and qualified on the physical characteristics of that territory, which includes the Paulsboro moveable bridge.  Ferrone Aff. at ¶ 8.

C.   Prior Discipline of Den Ouden

Conrail has a collective bargaining agreement (CBA) in place with its conductors that governs the relationship between these employees and the railroad. Ex. F, Bolton Aff. At ¶ 5.  Among other things, the CBA sets forth the procedures and standards for disciplining conductors for rule violations.  *Id.* at ¶ 5.  In accordance with the CBA, the train's conductor, Den Ouden, was disciplined by Conrail for rules violations prior to the derailment.  Bolton Aff. at ¶ 6.  None of the prior rule violations committed by Den Ouden were related to the bridge at

issue, any other moveable railroad bridge, or NORAC Operating Rule 241(d). Bolton Aff. at ¶ 6.

## ARGUMENT

### I.     Plaintiffs' negligent-training claims are preempted by the FRSA.

Plaintiffs have alleged various state-law causes of action against the Railroad Defendants related to Conrail's training and supervision of the crew involved in the accident.  For example, Plaintiffs allege that Conrail was negligent in the following particulars:

> Failing to have properly trained personnel to detect the condition of the bridge, and whether the bridge was properly aligned and locked, prior to permitting the train to operate over it despite a red signal. (Breeman Amended Complaint ¶ 33(h); Lord Complaint ¶ 84(h)).

> Allowing untrained and unqualified personnel [to] authorize crossing the bridge in the presence of a red signal. (Costa Complaint ¶ 72(m); Breeman Amended Complaint ¶ 33(t)).

Plaintiffs' experts have also opined that Conrail failed to properly train and observe its employees.  *See e.g.*, Ex. G, Timko Dep. 147:3-24, 207:2-12 ("Conrail failed to properly inform, educate, observe, and enforce a qualification process for employees when required to pass a signal displaying stop (NORAC Rule 292) in accordance with NORAC Rule 241(D)" and "Conrail relied upon unqualified, untrained  and unfamiliar employees to observe the conditions at the Paulsboro bridge…").  These claims, however, are preempted.

49 U.S.C. § 20106(a)(1) and (2) provide as follows: "Laws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement." The United States Supreme Court has held that the FRSA preempts state law, including "legal duties imposed on railroads by the common law," whenever the Secretary of Transportation has issued a regulation covering the subject matter of the state law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 558 (1993); *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344 (2000). As recognized by the Third Circuit, "the FRSA expressly preempts state railroad law" unless the state law falls within one of the preemption exceptions permitted by the FRSA. *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013).

In *Zimmerman*, the Third Circuit set forth a two-step process for conducting the preemption analysis under the FRSA. "We first ask whether the defendant allegedly violated either a federal standard of care or an internal rule that was created pursuant to a federal regulation. If so, the plaintiff's claim avoids preemption. See 49 U.S.C. Section 20106(b)(1)(A)-(B). Otherwise, we move to

7

the second step and ask whether any federal regulation covers the plaintiff's claim." *Zimmerman*, 706 F.3d at 178.

In the present case, Plaintiffs have not identified any federal standard of care or internal rule created pursuant to a federal regulation that allegedly has been violated with respect to the training or supervision of the crew. Although Plaintiffs' experts have opined that the train crew violated certain NORAC Operating Rules, these are internal rules that were not adopted pursuant to any federal regulation and, therefore, do not create an actionable duty of care. *See Gilbert v. Norfolk S. Ry. Co*., 2010-Ohio-2618, 2010 WL 2333773, *8 (Ohio Ct. App. 2010) ("the fact that federal law requires that a railroad file copies of its operating rules with the Federal Railroad Administration does not equate that the rules themselves were *created* pursuant to an order of the Secretary of Transportation.") (emphasis in original).[4]  Consequently, Plaintiffs' training claims are preempted since there is no doubt that federal regulations completely cover the claims asserted.

Acting pursuant to congressional instruction, the Secretary of Transportation has issued comprehensive regulations that blanket the subject of the training of railroad employees.  Part 217 of the Code of Federal Regulations requires railroads

---

[4] In this respect, it is also significant that following the derailment, the Federal Railroad Administration ("FRA") investigated the incident.  The FRA did not issue any citations to Conrail or recommend any violations of federal regulations or law relating to the derailment.  Ferrone Aff. at ¶ 21.

to train employees on railroad operating procedures, timetables, and special timetable instructions.  49 C.F.R. § 217.1.  Pursuant to the regulations, railroads are required to periodically train their employees on all applicable operating rules of the railroad.  49 C.F.R. § 217.11.  The railroad must make its records concerning its operating rules training and testing available to the FRA inspectors for their review.  *Id.*   In addition, railroads are required to provide specific hazardous materials training to their employees. 49 C.F.R. § 172.700, et seq.

Additionally, Parts 240 and 242 of the Code of Federal Regulations were enacted "to ensure that only qualified persons" serve as locomotive engineers or conductors. 49 C.F.R. §§ 240.1(a), 242.1(a).   The Code prescribes minimum standards for the "eligibility, training, testing, certification, and monitoring" of all locomotive engineers and conductors. 49 C.F.R. §§ 240.1(b); 242.1(b).   The training and certification requirements of Parts 240 and 242 are extensive.  They include provisions with respect to particular geographic areas in which a locomotive engineer or conductor will operate. 49 C.F.R. § 240.231; 49 C.F.R. § 242.301.

Parts 217, 240, and 242 provide highly detailed specifications covering the subject matter of training and qualification of engineers, conductors, and other railroad employees.  So that there could be no doubt that these regulations preempt any claims relating to training and supervision of railroad employees, the

9

regulations explicitly mandate that they are to be given preemptive effect. Specifically, 49 C.F.R. § 217.2, captioned "Preemptive Effect," provides as follows:

> Under 49 U.S.C. 20106 (Section 20106) issuance of the regulations in this part preempts any State law, regulation, or order covering the same subject matter, except an additional or more stringent law, regulation, or order that is necessary to eliminate or reduce an essentially local railroad safety or railroad security hazard; that is not incompatible with a law, regulation, or order of the United States Government; and does not unreasonably burden interstate commerce.

Similar language mandating preemption is found in 49 C.F.R. § 240.5, relating to training and qualification of locomotive engineers. This section, like § 217.2, specifically provides that issuance of the regulations in part 240 "preempts any State law, regulation, or order covering the same subject matter" except where exempted from preemption under § 20106. The provisions in this section have been applied to conductors as well as engineers. *Wisconsin v. Wisconsin Cent. Transp. Corp.*, 546 N.W. 2d 206, 211 (Wis. Ct. App. 1997) ("We conclude, however, that the federal term 'train operators' incorporates the traditional conductor job description and, therefore, the federal law subsumes the field. The conductor law is thereby preempted by the federal regulation of engineers").

Based upon these extensive federal regulations, courts have consistently held that state-law tort claims pertaining to crew training, instruction, and

supervision are preempted. For example, the Ninth Circuit has held that the regulations in Part 217 preempted state laws seeking to impose additional safety and training requirements on railroad employees. *Union Pac. R.R. v. California Pub. Utils. Comm'n*, 346 F.3d 851 (9th Cir. 2003). The court noted that "federal training regulations do 'substantially subsume' the subject of employee training." *Id.* at 868 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Similarly, the Seventh Circuit has held that Wisconsin laws seeking to impose qualification requirements for locomotive engineers and trainmen were preempted by the FRSA and federal regulations promulgated thereunder. *Burlington N. & Santa Fe Ry. v. Doyle*, 186 F.3d 790 (7th Cir. 1999). After discussing the history and purposes of the FRSA and noting the "numerous federal regulations" in 49 C.F.R. parts 240 and 217, the court stated that "[f]ederal regulations clearly cover the subject matter of these [state law] requirements." *Id.* at 796. Accordingly, the qualification requirements in the state statutes were held to be preempted. *Id. See also Peters v. Union Pac. R.R.*, 80 F.3d 257, 262 (8th Cir. 1996) (holding that plaintiffs' common-law claim regarding engineer certification was preempted by federal regulations); *Bradford v. Union Pac. R.R.*, 491 F. Supp. 2d 831, 839 (W.D. Ark. 2007) ("claims regarding engineer training and certification" are preempted).

The holdings in these cases are not unique.  Courts have not only held state statutes seeking to impose additional or differing training and qualifications requirements on railroad employees preempted by federal law, but have also found preemption where, as in these cases, the claim is based on state common-law tort claims alleging negligence relating to a railroad's training of its employees.  *See Prentice v. Nat'l R.R. Passenger Corp*., 2014 WL 3868221, *8 (N.D. Cal. Aug. 6, 2014) (noting that numerous courts have held that state-law claims of negligent training or supervision are preempted by federal law); *Lombardy v. Norfolk S. Ry.,* 2014 W.L. 2468612 *8 (N.D. Ind. 2014) (claims for negligent training, education, instruction, supervision and qualification are precluded by the FRSA); *Thompson v. Northeast Ill. Reg'l Commuter R.R.*, 854 N.E.2d 744, 747 (Ill. App. Ct. 2006) ("The trial court did not err by granting summary judgment for defendant on plaintiff's claim in Count II relating to training qualifications and supervision of the engineer"); *Hodge v. Burlington N. Sana Fe. Ry.*, 461 F. Supp. 2d 1044, 1053 (E.D. Mo. 2006) ("claim regarding failure to properly train crew is preempted"); *Vigil v. Burlington N. & Santa Fe. Ry.*, 521 F. Supp. 2d 1185, 1213 (D.N.M. 2007) ("To the extent that Plaintiffs claim that Amtrak negligently trained its crew, such a claim is preempted"); *Gould v. Norfolk S. Corp*., No. EV 96-248-C H/Y, 1998 WL 35881612, *9 (S.D. Ind. Sept. 28, 1998) ("The Court must, therefore, conclude that [49 C.F.R. 240] expressly 'occupies the field' of the training of operators of

locomotive engines.  Any claim that the train crew should have been provided additional training or instruction fails as a matter of law"); *Kohn v. Norfolk S. Corp.*, No. 3:96-CV-911 AS, 1998 WL 35881611, *3 (N.D. Ind. Jan. 6, 1998) ("The defendant is completely correct that the assertions and claims with reference to alleged negligence in training, instruction and supervision of the train crew is [sic] preempted by federal law under the Federal Railroad Safety Act of 1970…").

In the present case, Plaintiffs do not appear to be contending that Conrail failed to have a training program in place as required by federal law; nor do they identify any specific aspect of the federal regulations allegedly violated by Conrail with respect to its training program. Plaintiffs' own expert admits that he cannot point to any evidence showing that Conrail failed to have a training program in place or that Den Ouden or Mather were not qualified in accordance with the federal regulations. Timko Dep. 210:1-214:24, 216:6-218:22.  Instead, Plaintiffs suggest that Conrail's liability should rest on the alleged failure to provide specific training that Plaintiffs deem important or necessary.  Primarily, this relates to the alleged failure to adequately train the crew and other employees regarding inspection of moveable bridges and compliance with Rule 241(d).  In this respect, it is important to note that Plaintiffs do not claim that Mather and Den Ouden received no training regarding inspecting the bridge locks, as both crew members testified that they had received on-the-job training with experienced conductors

13

who showed them how to inspect the bridge locks. Timko Dep. 207:2-24-208:15;

Mather Dep. at 30:18-31:25, 145:8-18;  Den Ouden Dep. at 21:2-21; 22:2-5, 23:7-

24.   Plaintiffs' claims of inadequate or insufficient training, however, are also

preempted.

In  *California Public Utilities Commission, supra*, the state did not dispute

that federal regulations required the railroads to conduct training, but instead

argued that the current training was not adequate and that railroad employees

needed better training with respect to certain areas "which had historically high

accident rates or particularly demanding operational characteristics." 346 F.3d at

868.  The Ninth Circuit responded:

> This argument is unpersuasive.  It is clear that the federal training
> regulations do "substantially subsume" the subject of employee
> training.  To "ensure" that railroad employees understand the
> Railroads operating rules, section 217.1 states, "each railroad . . . shall
> periodically instruct each [ ] employee on the meaning and application
> of the railroad's operating rules in accordance with a written program.
> . . ." Section 240.123 requires specific training regarding continuing
> education for certified locomotive engineers.  While CPUC's
> regulations are more specific and stringent than the federal
> government's, they both mandate training on the Railroads' own
> internal operating rules for the same safety concerns.  We agree with
> the district court that CPUC's regulation is preempted by the FRSA.

*Id.* (internal citations omitted).

Also, in *Carter v. National Railroad Passenger Corp.,* No. 13-CV-00809-

JCS, 2014 WL 3974732 (N.D. Cal. Aug. 8, 2014) the plaintiffs did not dispute that

their training and supervision claims were covered by FRA regulations requiring

that the defendants have a program for training and certifying engineers.  Instead, Plaintiffs pointed to a number of facts which they contended showed that the railroad employees were not properly trained in certain key areas pertinent to plaintiffs' claims.  Rejecting this argument, the district court held that the plaintiffs had failed to cite any federal regulations that were purportedly violated with respect to training and supervision.  *Id*. at *28.  Further, the plaintiffs had failed to link any of the evidence they cited in support of their claims to any specific federal standard of care.  *Id* at *29.  As such, the court concluded that the plaintiffs' claims were preempted by the FRSA and the FRA regulations.

The fact that Plaintiffs have submitted expert testimony criticizing Conrail's training of its employees does nothing to save these claims from preemption.  In *Lombardy v. Norfolk Southern Railway*, 2014 W.L. 2468612 (N.D. Ind. 2014), the plaintiffs made a similar effort, pointing to an affidavit from their expert witness, Colon Fulk.  The court rejected this contention, noting that "Fulk's opinion is not based upon Norfolk's training and testing programs under §§ 217.9 and 217.11, but on what he perceives as [the employees'] lack of knowledge" of the applicable rules.  *Id.* at *6.  The court then concluded:

> Fulk does not opine that Norfolk failed to conduct the training and testing required under Part 217 by § 220.25, and Plaintiff has not pointed the Court to any evidence in the record that Norfolk failed to conduct the required training and testing.  This Court concurs with Norfolk that "[w]hat Mr. Fulk perceives as [the employees'] perceived violation (or inadequate knowledge) of certain radio rules is not the

issue before the court. The issue is whether Norfolk Southern provided the training and testing required under the federal regulations."  And here, based upon the undisputed facts, Norfolk did provide the required federal regulation's training and testing.  Plaintiff cannot challenge the sufficiency of the regulations in Parts 217 and 240.

*Id.*

In accordance with these cases, the Railroad Defendants are entitled to summary judgment on Plaintiffs' negligent-training claims.  It is undisputed that at the time of the derailment, Conrail had filed with the FRA its code of operating rules, timetables, and timetable special instructions in accordance with 49 C.F.R. § 217.7.  See Ferrone Aff. at ¶ 3.  Conrail also had in place a written program for providing instruction to its engineers and conductors on the meaning and application of its operating rules, as required by 49 C.F.R. § 217.11.  *Id*. at ¶¶  5-6.  Further, Conrail had a written program for conducting operational tests and inspections to determine employees' compliance with its operating rules and timetables, as required by 49 C.F.R. § 217.9. Id. at ¶ 7.  On the date of the accident, Mather and Den Ouden had received training on Conrail safety, operating rules, and timetables, as well as having received hazardous materials training.  *Id*. at ¶¶ 5-6.  Because the Secretary of Transportation has promulgated detailed regulations substantially subsuming the subject matter of crew training, and because Conrail fully complied with all of these regulations, any related claims brought by

Plaintiffs are expressly preempted by the FRSA. Accordingly, the Railroad Defendants are entitled to summary judgment on these claims.[5]

## II.    Plaintiffs' claims of failure to supervise the crew are also preempted by the FRSA.

Plaintiffs also have asserted, through their expert witness, Stephen Timko, that Conrail was negligent in failing to observe or supervise the train crew involved in the derailment. Timko Dep. 161:21-24, 162:1-16. This claim need not detain the Court long, as it is nothing more than a "negligent training" claim under a different name. *See Kohn v. Norfolk S. Corp.*, No. 3:96-CV-911 AS, slip op. at 5 (N.D. Ind. Jan. 6, 1998) ("The defendant is completely correct that the assertions and claims with reference to allege[d] negligence in training, instruction and supervision of the train crew is preempted by federal law under the Federal Railroad Safety Act of 1970, as repealed and transferred to 49 U.S.C. 20101, et seq. The defendant is entitled to summary judgment as a matter of law with reference to that issue."). The substance of the claim, rather than the label Plaintiffs choose to apply to the claim, is the dispositive issue. Plaintiffs' attempt to frame the issue as one of

---

[5] Plaintiffs' pleadings and expert testimony are principally focused on alleged training deficiencies of the crew operating the derailed train. However, Plaintiff's expert Timko also testified about alleged training deficiencies of the Conrail dispatcher who authorized the movement across the Paulsboro bridge. Timko Dep. 174:19-175:7. To the extent Plaintiffs are pursuing claims relating to dispatcher training, these claims are similarly preempted by Section 217, which applies generally to training on railroad operating rules. See 49 C.F.R. § 217.9 (requiring training on operation tests and inspections to determine compliance with railroad operating rules, timetables, and timetable special instructions).

supervision cannot avoid the preemptive force of the regulations. The federal regulations speak in broad terms, requiring railroads to "test," "inspect," and "instruct" employees. See 49 C.F.R. §§ 217.9, 217.11. In other words, the federal regulations speak not only of "training" employees, but of "supervising" them. These regulations have preemptive force, regardless of whether Plaintiffs frame the claim as "training" or "supervision." The claims are, in substance, indistinguishable. *See Lombardy v. Norfolk So. Ry.*, 2014 W.L. 2468612, *8 (N.D. Ind. 2014) ("Plaintiff's claims for negligent training, education, instruction supervision, and qualification are precluded by the FRSA").

### III. Plaintiffs' claims of negligence relating to prior discipline of the crew are preempted by the FRSA and the RLA.

Although not set forth in their complaints, Plaintiffs also appear to be pursuing a claim that Conrail negligently failed to discipline its employees. Specifically, Plaintiffs have produced an expert report opining that the Railroad Defendants were negligent in failing to take disciplinary action against Den Ouden in a progressive manner with respect to prior incidents. Timko Dep. 201:15-203: 8. Plaintiffs' claims in this respect are barred by two federal statutes, the FRSA and the Railway Labor Act ("RLA"), 45 U.S.C. § 151.

First, like the failure-to-supervise allegation, failure-to-discipline claims have been treated by courts as similar to failure-to-train claims that are preempted by the FRSA. In *Prentice v. National Railroad Passenger Corp.*, 2014 WL

3868221 (N.D. Cal. Aug. 6, 2014), the court considered claims of negligence in testing, monitoring, training, discipline and certification of a railroad engineer. The court discussed the multiple regulations in part 217 and 240 that govern locomotive engineer training, certification and discipline, and concluded that the FRSA preempted plaintiffs' gross-negligence claim based on allegations that Amtrak had negligently disciplined its engineer. *Id.* at *9.

Second, Plaintiffs' failure-to-discipline claims fail because they are preempted under the RLA. Disciplinary actions for railroad employees are governed by the Collective Bargaining Agreement (CBA) between the railroad employees' union and Conrail. Any such claim related to discipline is therefore preempted by the RLA because it is inextricably intertwined with the disciplinary and grievance provisions of the CBA. A state tort-law claim is preempted where evaluation of that claim is "inextricably intertwined with consideration of the terms of the labor contract." *Cole v. Pathmark of Fairlawn*, 672 F. Supp. 796, 800 (D.N.J. 1987) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)); *see also Dean v. Norfolk S. Ry. Co.*, No. 4:13-CV-2622, 2015 WL 1423456, at *9 (N.D. Ohio Mar. 27, 2015) (holding that plaintiff's state law defamation claims were preempted because they were inextricably intertwined with the CBA).

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes" in

the railroad industry. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405-06 (1988); *see also Norris*, 512 U.S. at 261-62. The necessity of state-law preemption is clear: "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Lingle*, 486 U.S. at 404 n.3 (quoting *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co*., 369 U.S. 95, 103 (1962)).

Soon after *Lingle* was decided, the Fourth Circuit followed the Supreme Court's holding to uphold the dismissal of a state-law tort claim, as preempted by § 301 of the Labor Management Relations Act ("LMRA"). *McCormick v. AT&T Techs., Inc*., 934 F.2d 531, 533 (4th Cir. 1991). In that case, AT&T terminated the plaintiffs' employment and proceeded to clean out his locker, discarding some of his personal belongings, which led to a suit under state law for intentional

infliction of emotional distress and conversion. *Id.* The Fourth Circuit concluded that the plaintiff's state-law tort claims were preempted by the LMRA, explaining:

> The rightness or wrongness of the [employer's] action has not been committed to the common law of tort, but to the legal arrangements embodied in a contractual agreement, in this case through collective bargaining. State tort claims are preempted where reference to a collective bargaining agreement is necessary to determine whether a "duty of care" exists or to define "the nature and scope of that duty."

*Id.* at 536 (emphasis added).

To determine whether Conrail (and the union) acted negligently in connection with prior disciplinary action against Den Ouden for prior alleged rule violations, a jury would have to look to what was required of the parties to the CBA in the disciplinary process. Of course, this question cannot be answered without turning to the terms of the CBA, which constrains what type of discipline can be imposed and the procedures by which it can be imposed. The CBA defined Conrail's duty with regard to discipline, suspension, or retention of its employees. Consequently, a number of courts have held that negligent-retention claims necessarily involve interpretation of an applicable CBA and are, therefore, barred. *See, e.g.*, *Morris v. Ambassador Nursing Home, Inc.*, 845 F. Supp 1164, 1167 (E.D. Mich. 1994); *Underwood v. Red Star Yeast & Products*, 1999 WL 430138 (N.D. Cal. 1999) (unpublished).

Importantly, the Supreme Court has explained that a CBA need not fix precise terms to have a preemptive effect:

21

Neither party relies on any express provision of the agreement; indeed, the agreement is not part of the record before us.  As the parties acknowledge, however, collective-bargaining agreements may include implied, as well as express, terms.  Furthermore, it is well established that the parties' "practice, usage and custom" is of significance in interpreting their agreement.  This Court has observed: "A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts. '. . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate . . .  The collective agreement covers the whole employment relationship.  It calls into being a new common law–the common law of a particular industry or of a particular plant.'"

*Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 311-12 (1989) (internal citations omitted).

In order to recover on any claims related to a disciplinary action, Plaintiffs have the burden of proving that Conrail breached a duty of care in failing to take different action against Den Ouden with respect to any prior rules violations.  Such a determination necessarily requires an inquiry into the terms of the CBA, an interpretation of the terms of the CBA, and an investigation into the totality of the circumstances that informed Conrail's determination of the appropriate disciplinary action to take against Den Ouden. Simply put, the issue of whether Conrail took appropriate or progressive action in disciplining Den Ouden is inextricably intertwined with the CBA.  Further, Plaintiffs' expert admits that he has no evidence that any disciplinary action was not in compliance with the CBA.

Timko Dep. 206:17-24, 207:1.  As such, any claims relating to alleged failure to discipline are preempted.

## **CONCLUSION**

Based upon the foregoing arguments and authorities, the Railroad Defendants respectfully submit that they are entitled to partial summary judgment in their favor with respect to Plaintiffs' claims alleging failure to train, failure to supervise, and failure to discipline.

BURNS WHITE LLC


By:     */s/ Brian D. Pagano*
        Brian D. Pagano, Esquire
        1800 Chapel Avenue West, Suite 250
        Cherry Hill, NJ  08002
        (856) 382-6012


        *Attorneys for Defendants,*

        *Consolidated Rail Corporation,*
        *Norfolk Southern Railway Company,*
        *and CSX Transportation, Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of May, 2015, a copy of the within Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation Inc.'s Memorandum in Support of its Motion for Summary Judgment as to Preempted Claims on Training, Discipline, and Supervision was served on all counsel of record via efile.

BURNS WHITE LLC

By:    */s/ Brian D. Pagano*
        Brian D. Pagano, Esquire
        1800 Chapel Avenue West, Suite 250
        Cherry Hill, NJ  08002
        (856) 382-6012

        *Attorneys for Defendants,*

        *Consolidated Rail Corporation,*
        *Norfolk Southern Railway Company,*
        *and CSX Transportation, Inc.*