# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  | : |  |
|---|---|---|
|  | : |  |
| **IN RE** | : | **MASTER DOCKET NO.:** |
| **PAULSBORO DERAILMENT CASES** | : | **13-CV-784 (RBK/KMW)** |
|  | : |  |
|  | : |  |

|  | : |  |
|---|---|---|
| **RONALD MORRIS, et al.,** | : |  |
|  | : |  |
| **Plaintiffs,** | : | **CASE NO. 1:13-CV-3244 (RBK/KMW)** |
|  | : |  |
| **vs.** | : |  |
|  | : |  |
| **CONSOLIDATED RAIL** | : |  |
| **CORPORATION, *et al.*,** | : |  |
|  | : |  |
| **Defendants.** | : |  |

**DEFENDANTS CONSOLIDATED RAIL CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY AND CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND <u>TESTIMONY OF PLAINTIFFS' EXPERT, DAVID A. RAUSH, PH.D.</u>**

Filed on behalf of Defendants,
Consolidated Rail Corporation,
Norfolk Southern Railway Company,
and CSX Transportation, Inc.

Counsel of Record for This Party:

Brian D. Pagano, Esquire

BURNS WHITE LLC
1800 Chapel Avenue West
Suite 250 Cherry Hill, NJ 08002
(856) 382-6006

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION ....................................................................... 2

SUMMARY OF EXPERT'S QUALIFICATIONS, OPINIONS AND
METHODOLOGY ...................................................................... 4

    I.  Qualifications ................................................................ 4

    II.  Raush's Conclusions And Methodolog ...................................... 4

ARGUMENT AND CITATION OF AUTHORITIES............................... 5

    I.     Standards For Evaluation Of A Motion To Exclude Expert Testimony............ 6

    II.    Dr. Raush's Expert Opinions Are Not Admissible ............................. 9

        A.    Dr. Raush's opinions regarding Defendants should be excluded
            from the trial of this matter because his reasoning and
            methodology are not scientific and do not meet the admissibility
            requirements under Federal law .............................................. 9

            1.    Dr. Raush's Opinions Are Premised Upon Incomplete and
                Inconsistent Information ............................................. 9

            2.    Dr. Raush's Methodology is Improper, and Fails to
                Account for Alternative Explanations for Morris' Alleged
                Injuries ................................................................ 16

                i.    Dr. Raush is Uninformed Regarding Unspecified
                    Trauma- and Stressor-Related Disorder......................... 17

                ii.    Dr. Raush Failed to Consider Alternative
                    Explanations for Morris' Alleged Symptoms ................. 18

            3.    The Probative Value Of Dr. Raush's Opinions Is
                Outweighed By The Danger Of Unfair Prejudice,
                Confusion Of The Issues, And Misleading The Jury.................. 21

CONCLUSION.......................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.,*
     300 F.3d 325 (3d Cir.2002)...................................................................................6

*Bradley v. Brown, 852 F. Supp. 690 (N.D. Ind.), qff'd,*
     42 F.3d 434 (7th Cir. 1994) ................................................................................18

*Claar v. Burlington N.R.R.,*
     29 F.3d 499 (9th Cir. 1994) ................................................................................19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
     509 U.S. 579 (2003)..............................................................................................3

*Daubert. See McClain v. Metabolife Int'l, Inc.,*
     401 F.3d 1233 (11th Cir. 2005) ..........................................................................21

*Deimer v. Cincinnati Sub-Zero Products, Inc.,*
     58 F.3d 341(7th Cir. 1995) .................................................................................16

*Durkin v. Wabash Nat.,*
     2013 WL 1314744 (D.N.J. Mar. 28, 2013).........................................................20

*Elcock v. Kmart Corp.,*
     233 F.3d 734 (3d Cir.2000)..............................................................................6, 10

*Gen. Elec. Co. v. Joiner,*
     522 U.S. 136 (1997)...............................................................................................6

*Graves v. Mazda Motor Corp.,*
     675 F. Supp. 2d 1082 (W.D. Okla. 2009) aff'd, 405 F. App'x 296 (10th Cir. 2010) .........20

*Guile v. United States,*
     422 F.3d 221(5th Cir. 2005) ...............................................................................21

*Gumbs v. International Harvester, Inc.,*
     718 F.2d 88 (3d Cir.1983)....................................................................................10

*In re "Agent Orange" Product Liab. Lit.,*
     611 F.Supp. 1223 (E.D.N.Y. 1985) .....................................................................22

*In re Paoli R.R. Yard PCB Litig.,*
     35 F.3d 717 (3d Cir.1994).......................................................................................7

*In re Paoli R.R. Yard PCB Litig.,*
  916 F.2d 829 (3d Cir.1990)............................................................................7

*In Re Paoli R.R. Yard PCB Litigation,*
  35 F.3d 717 (3d Cir. 1994)...........................................................................10

*In re Paoli Railroad Yard PCB Litigation,*
  35 F.3d 717 (3d. Cir. 1994).........................................................................23

*In re TMI Litig.,*
  193 F.3d 613 (3d Cir.1999)...........................................................................6

*Kannankeril v. Terminix Int'l Inc.,*
  128 F.3d 802 (3d Cir.1997 ...........................................................................7

*Magistrini v. One Hour Martinizing Dry Cleaning,*
  180 F. Supp. 2d 584 (D.N.J. 2002) ............................................................20

*McNabb v. Landis,*
  223 Ga. App. 894, 896,479 S.E.2d 194 (1996).........................................23

*Pappas v. Sony Electronics, Inc.,*
  136 F. Supp. 2d 413 (W.D. Pa. 2000).........................................................21

*Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,*
  161 F.3d 77 (1st Cir.1998).............................................................................8

*Schneider v. Fried,*
  320 F.3d 396 (3d Cir.2003)...........................................................................6

*Soldo v. Sandoz Pharms. Corp.,*
  244 F. Supp. 2d 434 (W.D. Pa. 2003).........................................................18

*Stecyk v. Bell Helicopter Textron, Inc.,*
  295 F.3d 408 (3d Cir. 2002).........................................................................10

*Summers v. Missouri Pacific Railroad System,*
  897 F. Supp. 533 (E.D. Okla. 1995) ...........................................................17

*U.S. v. Downing,*
  753 F.2d 1224 (3d Cir. 1985).......................................................................10

*Waldorf v. Shuta,*
  142 F.3d 601 (3d Cir.1998)...........................................................................6

## **<u>RULES</u>**

Fed. Rule Evid. 403 ............................................................................................22, 23

Fed.R.Evid. 702 .......................................................................................................7

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| **IN RE**<br>**PAULSBORO DERAILMENT CASES** | :<br>:<br>:<br>:<br>:<br>: | **MASTER DOCKET NO.:**<br>**13-CV-784 (RBK/KMW)** |

|  |  |  |
|---|---|---|
| **RONALD MORRIS, et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**CONSOLIDATED RAIL**<br>**CORPORATION,** *et al.*,<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CASE NO. 1:13-CV-3244 (RBK/KMW)** |

## DEFENDANTS CONSOLIDATED RAIL CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY AND CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND <u>TESTIMONY OF PLAINTIFFS' EXPERT DAVID A. RAUSH, PH.D.</u>

COME NOW Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc. ("Defendants"), by and through their counsel, Burns White LLC, and submit this Memorandum of Law in Support of Motion to Exclude Expert Report and Testimony of Plaintiffs' Expert, David A. Raush, Ph.D.

Dr. Raush's report and testimony fail to meet the applicable standards for admission of expert opinion evidence under federal law, particularly the admissibility standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Accordingly, Dr. Raush's proffered report and testimony should not be admitted into evidence at trial.

1

## INTRODUCTION

On May 22, 2013, Plaintiffs filed the instant suit in this Honorable Court, seeking damages arising out of a release of vinyl chloride as a result of a train derailment over the Mantua Creek in Paulsboro, New Jersey, on November 30, 2012.

Plaintiffs' Complaint asserts claims against Defendants for medical monitoring, negligence, nuisance, trespass, and punitive damages. With respect to the negligence claims, the Complaint alleges, *inter alia*: (i) the Defendants owed a duty of care to the plaintiffs, and as a result of their acts and omissions, breached that duty of care, causing the bridge to collapse, the train to derail, and hazardous substances to be released into the air and water, causing damage to plaintiffs' person and property; (ii) the Defendants acted in a manner that was grossly inconsistent with the duty of care that they owed to the plaintiffs; and (iii) as a direct result of defendants' breach of their duty of care, plaintiffs have sustained damages to their persons and property. Complaint, ¶¶ 25-27.

In support of these claims, Plaintiff Ronald Morris (hereinafter "Plaintiff" or "Mr. Morris") has submitted the January 19, 2015 report of David A. Raush, Ph.D., a Licensed Psychologist (attached as Exhibit A; hereinafter "Report"). In his Report, Dr. Raush states that Mr. Morris was "referred by [his attorney] for evaluation of Posttraumatic Stress Disorder (PTSD) or other mental health condition [sic] associated with the train derailment and chemical spill in Paulsboro, New Jersey on November 30, 2012." Defendants anticipate that Plaintiff will offer Dr. Raush's Report and testimony at trial to support Mr. Morris' allegation that he was exposed to vinyl chloride at the time of the November 30, 2012 derailment, and that this exposure was the cause of his alleged emotional distress injuries. To that end, Dr. Raush's Report states that Mr. Morris suffers from "Unspecified Trauma- and Stressor- Related

Disorder" which Raush claims is "associated with the Paulsboro, New Jersey, vinyl chloride spill of November 30, 2012". (Ex. A, at p. 8).

Dr. Raush's opinions and testimony are not admissible pursuant to Fed. R. Evid. 702, the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (2003), and its progeny. Dr. Raush's conclusions in his Report concerning Mr. Morris' Unspecified Trauma- and Stressor- Related Disorder are based upon incomplete information regarding Mr. Morris, and are not helpful to a jury. Moreover, his opinions as to the "association" between Mr. Morris' mental health condition and the November 30, 2012 derailment are based on nothing more than fitting the vague symptoms alleged by Morris into a diagnosis, rather than conducting a scientifically/medically rigorous and reproducible analysis of the totality of Morris' medical history, alleged symptoms, and post-derailment actions and activities.  Thus, there is nothing in Dr. Raush's methodology that would make his opinions helpful to a jury.

Dr. Raush's deposition testimony further demonstrates that the opinions expressed in his Report are superficial and unsupported by any objective evidence.  His primary opinion that Mr. Morris' Unspecified Trauma- and Stressor- Related Disorder was caused by Morris' alleged exposure to vinyl chloride during the derailment is offered in the absence of any knowledge of, or inquiry into, the extent of Mr. Morris' actual exposure. (*See*, Transcript of April 27, 2015 Deposition of David A. Raush, Ph.D., attached as Exhibit B, at pp. 101:1-21; 102:1-2). His Report also fails to take into account Mr. Morris' lengthy, pre-existing anxiety condition, which Dr. Raush admits Mr. Morris suffered from prior to the derailment as well as a host of other conditions which could account for Mr. Morris' current alleged injuries.  (*Id.*, at pp. 102-103).

Additionally, the probative value of Dr. Raush's unsupported opinions set forth in his Report and deposition testimony is greatly outweighed by the probability that they will lead to unfair prejudice and jury confusion.   For this additional reason, Dr. Raush's opinions and testimony should be excluded through application of Fed. R. Evid. 403.

### SUMMARY OF EXPERT'S
### QUALIFICATIONS, OPINIONS AND METHODOLOGY

#### I.   Qualifications

Dr. Raush is a Licensed Psychologist, currently in private practice, and he also consults for the Behavioral Health Service for the Veterans Affairs Medical Center in Philadelphia, Pennsylvania.   Dr. Raush's education, training and qualifications are summarized in Dr. Raush's *curriculum vitae* attached hereto as Exhibit C.

#### II.   Raush's Conclusions And Methodology

Dr. Raush's report and testimony confirm that he conducted a "semi-structured" interview with Plaintiff, a "semi-structured informational interview" with Plaintiff's wife (who is also a plaintiff in this lawsuit) via telephone, and reviewed some but not all of the medical records of Mr. Morris, interrogatories, diary notes written by Plaintiff's wife, PTSD checklist for DSM-5 (PCL-5), and Life Events Checklist for DSM-5 (LEC-5). (Ex. A, at p. 1; Ex. B, generally). However, Dr. Raush failed to review Mr. Morris' December 30, 2014 deposition transcript, which contains his sworn testimony regarding the derailment and his symptoms/complaints since the derailment.  (Ex. A, at p. 1). (*Id.*) Moreover, Dr. Raush's report fails to cite any medical literature to support his opinions regarding Mr. Morris' alleged injuries. (*Id.*, generally). Instead, Dr. Raush's conclusion that Plaintiff Morris suffers from Unspecified Trauma- and Stressor-Related Disorder as a result of his alleged exposure to vinyl chloride

following the November 30, 2012 derailment is based on interviews and his limited review of the above-referenced materials.

Raush's methodology is the very antithesis of the scientific method, and in essence, he worked backward from a pre-articulated diagnosis of PTSD suggested by Morris' counsel to a slightly less severe diagnosis of Unspecified Trauma- and Stressor- Related Disorder. He spends nearly the entirety of his report and testimony discussing why Morris does not have PTSD, rather than evaluating Morris' symptoms impartially to arrive at an accurate diagnosis. (Ex. A, generally; Ex. B, generally). Raush's opinions represent nothing more than attempting to shoehorn Morris' self-reported symptoms into a diagnosis requested by Morris' counsel. Instead, Dr. Raush should have conducted an objective analysis of Morris' alleged symptoms to arrive at a scientifically-supported conclusion. Dr. Raush's lack of knowledge of Mr. Morris' history and his reliance upon Mr. Morris' self-reported symptoms, coupled with the boot-strapping nature of Raush's diagnosis of Mr. Morris, underscores the complete uselessness of Raush's expert report and testimony as it relates to Mr. Morris' complaints. Ultimately, Raush weakly opines that the "expression" of Morris' symptoms and their onset "*support* that his Unspecified Trauma- and Stressor-Related Disorder is *associated with* the Paulsboro, New Jersey, vinyl chloride spill of November 30, 2012". (*Id*., at 8; emphasis added.)

## ARGUMENT AND CITATION OF AUTHORITIES

Dr. Raush's report and anticipated trial testimony should be excluded at trial, as the methodology supporting his causation opinions fail to meet the criteria for reliability and admissibility under Federal Rule of Evidence 402, 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## I. **Standards For Evaluation Of A Motion To Exclude Expert Testimony**

The opinion of a qualified expert witness is admissible if: (1) it is based on sufficient facts or data; (2) it is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The expert's scientific, technical, or other specialized knowledge must also "help the trier of fact to understand the evidence or determine a fact in issue." *Id*. The Court here is thus vested with a gatekeeping function, ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. The Supreme Court identified in *Daubert* a number of factors that might assist the district court in determining the admissibility of expert evidence. *Id*. at 593–94.   It instructed district courts to focus on "principles and methodology, not on the conclusions that they generate." *Id*. at 595. Expert evidence may be excluded if "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Under *Daubert* and its progeny, courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability and fit.  *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir.2000). The party offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir.1999).  First, to qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd*. v. BB Techs., Inc., 300 F.3d 325, 335 (3d Cir.2002) (*quoting Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert. *See*

*Waldorf*, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir.1990) (*quoting* Fed.R.Evid. 702) ("*Paoli I*" ).

Second, the reliability requirement of *Daubert* "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir.1994) ("*Paoli II*" ) (*quoting Daubert*, 509 U.S. at 590). In *Kumho Tire*, the Supreme Court held that the *Daubert* test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141–42 (emphasis omitted). In determining whether the reliability requirement is met, courts examine the following factors where appropriate: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Mitchell*, 365 F.3d at 235 (*citing Paoli II*, 35 F.3d at 742 n. 8). These factors are neither exhaustive nor applicable in every case. *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806–07 (3d Cir.1997). Under the *Daubert* "reliability" prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Paoli*

*II*, 35 F.3d at 744 (emphasis omitted). "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id*. "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process— competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Mitchell*, 365 F.3d at 244 (*quoting Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co*., 161 F.3d 77, 85 (1st Cir.1998)).

Finally, for expert testimony to meet the *Daubert* "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citations and internal quotation marks omitted). " 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id*.

When the standard set forth by *Daubert* is applied to Dr. Raush's opinions, it is clear that Dr. Raush's proffered expert report and/or trial testimony should be barred because: (1) his reasoning and methodology are not scientific; (2) his testimony demonstrates a limited factual foundation and is contrary to the established admissions of Mr. Morris, and will not serve to assist the jury in determining an issue at trial; (3) his conclusions and opinions are based on subjective beliefs and unsupported speculation; and (4) whatever probative value Dr. Raush's opinions may have are substantially outweighed by the likelihood that they will mislead and confuse the jury.

**II. Dr. Raush's Expert Opinions Are Not Admissible**

    **A. Dr. Raush's opinions regarding Defendants should be excluded from the trial of this matter because his reasoning and methodology are not scientific and do not meet the admissibility requirements under Federal law**

        **1.    Dr. Raush's Opinions Are Premised Upon Incomplete and Inconsistent Information**

Dr. Raush failed to consider Morris' mental health history, anti-depression and anti-anxiety medication history, his smoking history, his drug use, his alcohol abuse, and a number of other factors that should enter into the most cursory of causation analyses with respect to the injuries alleged by Mr. Morris in this case. (See, Ex. A., and Ex. B, generally). Raush failed to review the deposition transcripts of both Mr. Morris and Mr. Morris' wife, although both were available at the time that Raush prepared his report, and certainly available in advance of Raush's April 27, 2015 deposition. (*Id.*, at p. 95). Raush failed to verify any of Morris' self-serving, self-reported statements, even though Raush had medical and other records available to him. Therefore, Dr. Raush's reliance on this information is unreliable, and pursuant to Rule 702 jurisprudence recognizing that unsupported assumptions, unexplained or unjustified extrapolations, and leaps of faith or lapses in logic are badges of unreliable, speculative, and unscientific conclusions, it also violates the "fit" requirement of Rule 702. Dr. Raush's Report and opinions must be excluded.

Dr. Raush opines that Unspecified Trauma- and Stressor- Related Disorder "is *the best fit*" for Morris' "complex clinical picture" that does not quite amount to Post-Traumatic Stress Disorder. (*Id.*; emphasis added). As noted above, Dr. Raush's opinions in this case stand in stark contrast to the factual evidence contained in Mr. Morris' records and his sworn testimony, and represent precisely the type of speculation and conjecture that *Daubert* and Rule 702 are meant to guard against, and they must be excluded. *See Daubert*, 509 U.S. at 590, ("[T]he word

'knowledge' connotes more than subjective belief or unsupported speculation."). Under Rule 702's fit prong, "it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 756 n. 13 (3d Cir. 2000)); *see also In Re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, at 743 (3d Cir. 1994) ("[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge for purposes of the case"). An expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to a jury. *See Elcock v. Kmart Corp.,* 233 F.3d 734, 754 (3d Cir.2000) (*citing Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 93 (3d Cir.1983)).   Admissibility, therefore, depends in part upon the proffered connection between the expert's opinions to be presented and particular disputed factual issues in the case. *Paoli II*, 35 F.3d at 743 (quoting *U.S. v. Downing*, 753 F.2d 1224, 1237 (3d Cir. 1985)).

An analysis of Dr. Raush's methodology reveals that he either did not review, or did not consider, compelling facts that would undermine his opinions regarding Mr. Morris' condition. Dr. Raush began his analysis of Mr. Morris' case by relying upon information offered by Mr. Morris' counsel- that Morris was suffering from symptoms of PTSD, and that Morris' urine "was still positive for metabolites of vinyl chloride six days after exposure". (Ex. A, at p. 1). It is noteworthy that Morris' counsel suggested a diagnosis of PTSD from Dr. Raush in the utter absence of any diagnosis or suggestion of PTSD from any of Morris' treating physicians indicating that Morris might suffer from PTSD. Raush acknowledged during his deposition that he reviewed no records to verify Plaintiff's counsel's statement regarding vinyl chloride, nor did Raush conduct any independent research as to what such a statement medically indicated with

respect to Morris' present and future health. (Ex. B, at pp. 41-42). Despite this complete lack of inquiry into the facts related to vinyl chloride, Raush concludes that Morris has severe worry about his vinyl chloride exposure because he [Morris] "know(s) the research and statistics that say the risks are ongoing and severe"- worry that Raush gives credence to without reviewing any scientific or medical literature on the subject. (*Id*., at p. 96). Next, and inexplicably, Raush found Mr. Morris' anxiety related to his fear of vinyl chloride-related cancer after a purported three seconds of possible exposure to be reasonable, but dismissed Morris' lengthy history of tobacco use (1 pack per day for 20 years) - a recognized carcinogen with a well-known risk of cancer. (*Id*., at p. 99-100). Mr. Morris testified that his wife and daughter asked him to quit smoking, out of concern for his health. (*See*, Transcript of December 30, 2014 Deposition of Ronald Morris, attached as Exhibit D, at p. 115:2-19).

Dr. Raush testified that he was generally aware of Morris' smoking history, but he failed to include it in his analysis. (*Id*., at p. 100).

Q.      Are you aware that he had a smoking history?

A.      Yes.

Q.      Are you aware of when he began smoking?

A.      No.

Q.      Do you know if he was currently smoking when you evaluated him?

A.      No.

Q.      Do you recall if you discussed whether he had any fears of developing lung cancer as a result of his smoking history?

> A.     No.

Ex. B, at p. 100:10-24.

Dr. Raush also failed to consider existing evidence from Mr. Morris' medical records and deposition testimony demonstrating that Morris has suffered from a pre-existing baseline anxiety condition for many years. (Ex. D, at pp. 95-96; 120-122). Dr. Raush did not analyze the multiple significant stressors for Mr. Morris that pre-dated the derailment, including relationship problems with his daughter and marital problems with his wife, as well as the numerous stressors that post-date the derailment, including Morris' father's death in October of 2013 with its resultant disrupted family relationships over a failed family business, combined with financial worries and alcohol abuse, all of which are ongoing stressors. (*Id*., at pp. 7; 9-10; 18; 79; 81; 94-96; 119-122; 137-139; 141-142).

Dr. Raush also did not take into account that Mr. Morris' regular alcohol use, and probable alcohol dependence, likely impact his anxiety complaints. Morris' deposition testimony and medical records reflect an extensive history of drug and alcohol use. (Ex. D, generally). There is also Morris' long-term use of both narcotic painkillers and anti-depressant/anxiety medications to consider, and Raush admits that he did not factor in their use or their side effects with respect to his diagnosis of Mr. Morris:

> Q.     Since you don't prescribe these medications, you're not aware of the side effects of these drugs we've talked about, and I'll list them: Percocet, oxycodone, Ambien, Xanax or Valium; is that fair?
>
> A.     That's fair.
>
> Q.     Not your area?
>
> A.     Not my area.

Ex. B, at p. 135:1-10.

Among the hallmarks of Unspecified Trauma- and Stressor-Related Disorder according to Dr. Raush's Report, are symptoms that "negatively impact [Morris'] work and his relationships with his family." (Ex. A, at p. 7). Dr. Raush has failed to demonstrate that Mr. Morris has experienced any changes in his occupation or any other areas of life despite his self-reports to the contrary, or reports of such changes from his wife (and Co-Plaintiff). Mr. Morris testified at his deposition that his work is sporadic and seasonal. (Ex. D, at p. 23:20-22). He did not report any significant absences from work, and while he did testify that he would occasionally stay in bed for a few days at a time, there are multiple, pre-existing factors (psychosocial stressors/alcohol use) that might explain any loss of work.  (Ex. B, at pp. 73-74; 80-81; 86-87; 113-114; 118; Ex. C at pp. 120-123). In fact, during his deposition, Mr. Morris testified that his income from work is actually greater at present than it was prior to the derailment. (Ex. C at pp. 20-21). Although he testified that he experiences dizziness, he claimed that it clears up as the day goes on, and he is safely able to use a ladder in his occupation as a roofer- he then seemed to change his response, and commented that he does not get dizzy during the day. (Ex. C at pp. 128-129). With respect to symptoms negatively impacting Mr. Morris's relationships with his family, his relationship problems with his daughter and marital problems with his wife pre-date the derailment, and his disrupted family relationships and failed family business were triggered by Morris' father's death in October of 2013. (*Id*., at pp. 7; 9-10; 18; 137; 141-142). This, too, underscores the unreliability of Mr. Morris' self-reported and conflicting symptoms, which largely comprise the basis for Dr. Raush's report and expected testimony in this matter.

In addition to failing to take into account all available information from Morris' health and social history with respect to evaluating Mr. Morris' claimed injuries, Dr. Raush's Report does not demonstrate that Mr. Morris' anxiety complaints allegedly related to the derailment differ in any manner from Mr. Morris' pre-existing anxiety condition. In fact, during his deposition, Dr. Raush was hard-pressed to explain how Mr. Morris's pre-existing "adjustment disorder with anxiety", which manifested as anxiety with "symptoms specifically tied to stressful situations", differed from his current anxiety complaints. (Ex. B, at pp. 102-105). There is no objective or reliable evidence in the records that Morris' anxiety complaints were different <u>after</u> November 30, 2012 than his pre-existing baseline anxiety. Instead, Dr. Raush leaps to the unsubstantiated conclusion that although Mr. Morris continuously exhibits the <u>same</u> anxiety symptoms he has historically suffered from, he is now suffering from an entirely different anxiety disorder linked to the derailment. (Ex. B, at pp. 104-105).

Mr. Morris stated in deposition he had problematic anxiety due to alleged emotional effects stemming from the derailment, but never sought mental health care treatment from a psychiatrist or psychotherapist. (Ex. D, at pp 110-114). Morris never complained to his primary care doctor, Dr. Winfield, about increased anxiety following the November 30, 2012 derailment, and in fact had his Valium dosage reduced on September 5, 2014. (*See*, Declaration of Dale E. Panzer, M.D., attached as Exhibit E**,** generally). He did not complain to Dr. Winfield (or any other physician) about depression, yet Dr. Raush states Mr. Morris self-reported that he experiences a depressed mood all day, every day. (Ex. E, generally; Ex. A, at p. 3).  Mr. Morris did not complain of depression in his deposition. (Ex. D, generally).

Mr. Morris' Valium prescription, as mentioned above, acts as a reliable indicator of his pre-existing and current mental health, but Raush does not factor it into his analysis. Morris was

prescribed Valium at a fairly high dose, 10 mg. three times per day for his pre-existing anxiety condition, long before November 30, 2012. (Ex. E, generally). His dose did not increase after November 30, 2012, and in fact, since September 2014, his dose has decreased to 10 mg. twice per day, reflecting likely improvement in his anxiety. (Ex. E, generally). Dr. Raush does not comment on this in his Report. (Ex. B, at pp. 73-74). When asked about this at his deposition, Dr. Raush stated that Mr. Morris advised him that "he was not even regularly refilling prescriptions regularly during that time…" (Ex. B, at p. 75:7-9). Morris additionally self-reported to Dr. Raush that after the derailment, Morris "began taking the Valium more regularly again". (Ex. B, at p. 75:15-17). However, Mr. Morris' medical records belie that statement, and Dr. Raush failed to verify these statements against Morris' actual health history available in those records. (Ex. E, generally).

Dr. Raush has failed to apply his purported expertise to the facts of this case. His opinions with respect to Mr. Morris are based almost entirely upon his interview with Mr. Morris.  His report confirms this, noting that Morris:

> Satisfies the diagnostic criteria for Unspecified Trauma- And Stressor- Related Disorder according to DSM-V. *His reported symptoms in the interview and observations by his wife support this diagnosis.*

Ex. A, at p. 7 (emphasis added).

Raush further opines that Morris "reported experiencing symptoms *supporting a diagnosis* of Unspecified Trauma- and Stressor-Related Disorder." (Ex. A, at p. 2; emphasis added.) Dr. Raush notes that "this is the *best fit*" for Morris' "complex clinical picture" that does not quite amount to Post-Traumatic Stress Disorder. (Id.; emphasis added). Dr. Raush's conclusion that Mr. Morris' alleged mental health complaints were caused by the derailment is based upon incomplete information. Other than the scant items he reviewed, his interview with

Mr. Morris, and his telephone interview with Mrs. Morris, Raush relies almost entirely upon Mr. Morris' self-reported statements about his anxiety condition. (Ex. A, p. 7; Ex. B, at p. 57:20-23). He relied upon Mrs. Morris' "observations" of Mr. Morris' mental health complaints, in the absence of any context of her role in this litigation. (*Id.*, at p. 52). Mr. Morris' interview statements, as reported by Dr. Raush, are inconsistent with the totality of available evidence, including Mr. Morris' own sworn testimony from his deposition. Mr. Morris' conflicting self-reports about his anxiety, depression, and other symptoms contradict both his deposition testimony given under oath, as well as the objective information available in his medical records.

In light of these glaring omissions on the part of Dr. Raush, because Dr. Raush's opinions and Report in this matter are premised upon incomplete and inaccurate information about Mr. Morris, they should be excluded pursuant to Rule 702 and *Daubert*.

> **2. Dr. Raush's Methodology is Improper, and Fails to Account for Alternative Explanations for Morris' Alleged Injuries**

Dr. Raush's Report and opinions are not the product of reliable principles and scientific methods. Where, as here, a proffered expert does not conduct any studies or analysis and offers only unverified statements unsupported by any scientific method, the proffered testimony is properly barred. *Deimer* v. *Cincinnati Sub-Zero Products, Inc.,* 58 F.3d 341, 344-45 (7th Cir. 1995). Although Dr. Raush stated that Mr. Morris' symptoms "satisfy the diagnostic criteria for Unspecified Trauma- and Stressor-Related Disorder", the "methodology" employed by Dr. Raush is suspect since he performed an incomplete review of the various sources of information that were potentially available, as outlined in Section 1 above. (*Id.*, at p. 7). Not surprisingly, Dr. Raush fails to cite to any support for his "methodology".

> **i.      Dr. Raush is Uninformed Regarding Unspecified Trauma- and Stressor-Related Disorder**

Dr. Raush's methodology provides an insufficient basis for him to extrapolate that Mr. Morris suffers from Unspecified Trauma- and Stressor-Related Disorder arising out of an alleged three second exposure to vinyl chloride following the derailment. Dr. Raush admitted during his deposition that Unspecified Trauma- and Stressor-Related Disorder is a diagnosis that was added to the DSM-V in the past "year or two", and that he has almost no familiarity with it in either his private practice or his clinical practice at the VA. (Ex. B., at pp. 21-22). In fact, his experience and education with respect to Unspecified Trauma- and Stressor-Related Disorder is limited to attendance at "a couple of workshops specific to the DSM-V", and that he "read the relevant sections of the DSM-V." (Ex. B, at p. 36:11-24).

Since Dr. Raush has done no independent research addressing Unspecified Trauma- and Stressor-Related Disorder, he must rely on outside scientific literature as a basis for his conclusions/opinions.  Here too, however, Dr. Raush has failed to cite to *any* scientific literature in support his opinion that Mr. Morris is suffering from Unspecified Trauma- and Stressor-Related Disorder, identifying instead a general description of findings in the DSM-V. (Ex. B, at pp. 3; 4). Because Dr. Raush fails to cite to *any* medical or scientific literature showing that Mr. Morris' self-reported symptoms constitute Unspecified Trauma- and Stressor-Related Disorder, an admittedly new diagnosis in the realm of mental health, and one which Dr. Raush claims almost no familiarity, the underlying methodology of Dr. Raush's opinions is unreliable and thus, not admissible under the standards established in *Daubert*.

This lack of scientific acceptance of the underlying theory is perhaps the key factor in a *Daubert* analysis. *Daubert,* 509 U.S. at 591-94.   In *Summers* v. *Missouri Pacific Railroad System,* 897 F. Supp. 533 (E.D. Okla. 1995), the court excluded the testimony of plaintiffs'

medical expert because the theory itself was not sufficiently substantiated to allow its admission into evidence.  In *Summers,* the expert was prepared to testify that the plaintiffs suffered from diesel exhaust-induced "Multiple Chemical Sensitivity ("MCS")."  Applying *Daubert*, the court concluded that this testimony was inadmissible, reasoning that "[t]he 'science' of MCS's etiology has not progressed from the plausible, that is, hypothetical, to knowledge capable of assisting a fact finder, jury or judge." *Id.* at 538 (quoting *Bradley v. Brown,* 852 F. Supp. 690, 700 (N.D. Ind.), *qff'd,* 42 F.3d 434 (7th Cir. 1994)).  The *Summers* court accepted the testimony of three physicians that "there is no known causal link between exposure to diesel exhaust and long-term or permanent damages." *Id.* at 541. "[T]he court will not permit evidence evincing long term effects to a short-term exposure to diesel exhaust when there is no reliable scientific evidence to support such a theory." *Id.* at 542.

Dr. Raush's analysis does nothing to establish that Mr. Morris suffers from any mental health condition that is in any way different than the anxiety condition that he suffered for years before the 2012 derailment. As such, without any objective evidence of a diagnosed mental health condition that is inextricably linked to Mr.  Morris' alleged vinyl chloride exposure, Dr. Raush' testimony constitutes no more than the junk science that *Daubert* requires this Court to exclude.

## ii.   Dr. Raush Failed to Consider Alternative Explanations for Morris' Alleged Symptoms

An additional methodological shortcoming evident in Dr. Raush's analysis is his failure to account for alternative explanations for Mr. Morris' alleged injuries. The failure to make a valid scientific showing of general causation necessarily means that the record fails to establish specific causation, i.e., that Morris' alleged injuries were caused by exposure to vinyl chloride. *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 565 (W.D. Pa. 2003) ("the issue of specific

causation is material, however, only if plaintiff can demonstrate general causation..."). Further, it is well-established that an expert's opinion fails the *Daubert* test of reliability when he or she fails to "adequately account[] for obvious alternative explanations." Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amend. (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994)). The Third Circuit has held that "where a defendant points to a plausible alternative cause and the doctor offers no explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable." *Paoli*, 35 F.3d at 759 n.27; *Heller*, 167 F.3d at 156. As noted above, Dr. Raush is unable to differentiate Morris' pre-existing mental health condition from the Unspecified Trauma- and Stressor-Related Disorder Raush he now claims Morris suffers from.  (Ex. B, at pp. 102-105; Ex. D, generally, Ex. E, generally). Dr. Raush describes Morris' pre-existing adjustment disorder with anxiety as occurring "at the time of a stressful event, or shortly after…" (Ex. B, at p. 103). He claims the main difference between Morris' pre-existing anxiety condition and the Unspecified Trauma- and Stressor-Related Disorder is that "it's not going away, it's consistent." (*Id.*, at p. 104).

A cursory review of Morris' medical records and testimony, as outlined previously, underscores the fact that the symptoms of Morris' pre-existing anxiety condition, frequent, prolonged periodic anxiety at the time of, or shortly following a stressful event, are in fact those he complains of following the derailment. (Ex. D, generally, Ex. E, generally). Dr. Raush dismisses Morris' pre-existing anxiety as unimportant, and does not allow for it as an alternative explanation for his current anxiety, although he is unable to point to any substantive difference between the two. (Ex. B, at pp. 104-105). Additionally, Dr. Raush failed to fully inform himself of Morris' prior medical history—a critical factor in a proper differential diagnosis, and he did not account for numerous alternative explanations for the issues of which Morris now complains.

These include, but are not limited to, Morris' mental health history, his ongoing family relationship issues, anti-depression and anti-anxiety medication history, his smoking history, his drug use, and his alcohol use. During his deposition, Raush dismisses these other factors as unimportant, and repeatedly testified that he did not even discuss them with Morris. (*See*, *e.g.*, Ex. B, at pp. 41-42; 100:10-24)

This haphazard explanation for failing to account for other possible causes does not withstand even superficial scrutiny. *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 608 (D.N.J. 2002), *aff'd*, 68 F. App'x 356 (3d Cir. 2003) ("'Judgment' does not substitute for scientific method; without a reliable method, result-oriented 'judgment' cannot be distinguished from scientifically or methodologically-based judgment"). Dr. Raush's Report, opinions and testimony should be excluded in light of his failure to establish any reliable grounds for concluding Morris' alleged injury was caused by exposure to vinyl chloride and not something else. His subjective and arbitrary rejections of established alternative causes in favor of the proffered litigation cause, based primarily on temporality and information provided by Morris' counsel, Morris, and Morris' wife, is precisely the type of subjective, unscientific opinion that fails to satisfy Rule 702.

Moreover, as this court has noted, non-scientific expert testimony that is "conveniently malleable" should invite close scrutiny to determine whether the expert's opinions are *ipse dixit*. *Durkin v. Wabash Nat.*, 2013 WL 1314744, at *16 (D.N.J. Mar. 28, 2013)(citing *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1103 (W.D. Okla. 2009) *aff'd*, 405 F. App'x 296 (10th Cir. 2010)).  "If *Daubert* and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Pappas*

*v. Sony Electronics, Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000). As the United State

Supreme Court recognized in *Joiner*:

> Although an expert may extrapolate his opinions from existing data.... nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The court may conclude that there is too great an analytical gap between the data and the opinion proffered.

522 U.S at 146. An expert cannot attempt to fill a large analytical gap with his own *ipse dixit*

opinions, which are not substitutes for the scientific proof required by *Daubert*. *See McClain v.*

*Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005) (reversing decision to admit

testimony of plaintiffs' expert, who "simply substituted his own *ipse dixit* for scientific proof");

*see also Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (rejecting expert testimony

regarding breach of standard of care owed by a psychiatrist, stating that "[a] claim cannot stand

or fall on the mere *ipse dixit* of a credentialed witness.").

Dr. Raush's opinions in this case really amount to no more than *ipse dixit* and they cannot

survive *Daubert*. Aside from the DSM-V, Dr. Raush cites no standards, studies, or literature in

support of his opinions. The conclusions from his Report are loosely connected to the underlying

evidence only through Dr. Raush's unreproducible methodology, and must therefore be

excluded.

> **3.     The Probative Value Of Dr. Raush's Opinions Is Outweighed By The Danger Of Unfair Prejudice, Confusion Of The Issues, And Misleading The Jury**

In his Report, Raush concludes that Morris "*satisfies the diagnostic criteria* for

Unspecified Trauma- and Stressor-Related Disorder", which Raush's deposition testimony seems

to confirm was based entirely upon Morris' "reported symptoms in the interview", and that

"observations by his wife [Co-Plaintiff Kristen Pickel] support this diagnosis."[1] (Ex. A, at p. 7; Ex. B, at pp. 50-51; 118; 126; 130; 138-139; emphasis added). Morris' self-reported statements of negligence and uninformed, layperson opinion regarding the dangers of vinyl chloride are not probative of any type of negligence whatsoever. Dr. Raush's reliance upon a diagnosis suggested by Plaintiff's counsel, his interview with Mr. Morris, his discussions with Mr. Morris' wife (and Co-Plaintiff), and his failure to consider the overwhelming evidence of Mr. Morris' pre-existing anxiety condition, general life stressors, and alcohol/drug/prescription medication use, is simply not an adequate foundation for Dr. Raush's opinions.

Pursuant to Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely on them must be excluded." *Paoli II*, 35 F.3d at 748 (*quoting In re "Agent Orange" Product Liab. Lit.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)). Dr. Raush's Report and/or testimony are based upon incomplete and inconsistent information and will not assist the jury in determining or understanding any issue during trial. Federal Rule of Evidence 702 requires that expert testimony assist the jury in determining and/or understanding a fact at issue in the case. Mr. Morris' admissions demonstrate that the jury will not need assistance from Dr. Raush on the question of whether Mr. Morris' anxiety condition is related to the derailment. *Daubert*, 509 U.S. at 591.

Finally, it is clear that whatever slight probative value Dr. Raush's opinions regarding the cause of Mr. Morris' alleged mental health claims may have is substantially outweighed by the potential for unfair prejudice, confusion of issues and waste of time. (Fed. R. Evid. 403). Fed. Rule Evid. 403 requires that evidence, although relevant, may still be excluded from trial, if its

---

[1] Raush conceded at his deposition that his diagnosis of Morris was based almost entirely upon his interview of Mr. Morris. (Ex. B, at p. 57).

22

probative value is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury; and, in this case, the probative value of Dr. Raush's opinions is clearly outweighed by these concerns.  *McNabb v. Landis, 223 Ga. App.* 894, 896,479 S.E.2d 194, 196 (1996). (Citation omitted); *see also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 782-783 (3d. Cir. 1994) (when applying *Daubert* analysis, it is proper to utilize Fed. Rule Evid. 403 to exclude proffered expert testimony on grounds that possibility of unfair prejudice outweighed evidence's probative value), cert. denied, 513 U.S. 1190 (1995).

As described herein, Dr. Raush's report regarding Mr. Morris' mental health diagnosis is not only too vague and general to be relevant but also ignores contradictory testimony. Consideration of Dr. Raush's unsupported opinions with respect to Mr. Morris' self-reported mental health symptoms will deflect the jury's attention from consideration of the crucial determination of whether Conrail's negligence, if any, caused the train derailment of November 30, 2012.  For these reasons, the admission of Dr. Raush's Report into evidence, or admission of his testimony at trial, would be unduly prejudicial to Defendants. Accordingly, it is clear that the probative value of Dr. Raush's opinions is substantially outweighed by the considerations of Fed. Rule Evid. 403, and should be excluded from trial.

## **CONCLUSION**

For the foregoing reasons, Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc., respectfully request that this Honorable Court exclude the proffered expert testimony of David A. Raush, Ph.D. Defendants also request that the Court convene a *Daubert* evidentiary hearing on this Motion.

Respectfully Submitted,

*/s/ Brian D. Pagano*
Brian D. Pagano, Esquire
BURNS WHITE LLC
1800 Chapel Avenue West
Suite 250 Cherry Hill, NJ 08002
(856) 382-6006
Email: bdpagano@burnswhite.com

*Attorney for Defendants,*
*Consolidated Rail Corporation, Norfolk Southern*
*Railway Company and CSX Transportation, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of May, 2015, a copy of the within Memorandum in

Support of Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and

CSX Transportation Inc.'s Memorandum of Law in Support of *Daubert* Motion to Exclude

Expert Testimony of Plaintiffs' Expert, David A. Raush, Ph.D., was served on all counsel of

record via efile.


BURNS WHITE LLC

By:     */s Brian D. Pagano*
        Brian D. Pagano, Esquire
        1800 Chapel Avenue West
        Suite 250 Cherry Hill, NJ 08002
        (856) 382-6006

        *Attorneys for Defendants,*
        *Consolidated Rail Corporation, Norfolk*
        *Southern Railway Company, and CSX*
        *Transportation, Inc.*