NOT FOR PUBLICATION (Doc. No. 5)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE PAULSBORO DERAILMENT CASES | Master Docket No. 13-784 (RBK/KMW) |
| PAULSBORO PUBLIC SCHOOLS, et al. Plaintiffs v. CONSOLIDATED RAIL CORPORATION, et al. Defendants. | Civil No. 14-7431 (RBK/KMW) **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation (collectively "Defendants") to dismiss the Amended Complaint of Plaintiffs Paulsboro Public Schools ("PPS"), the Borough of Paulsboro ("the Borough"), and Walter C. Quint (collectively "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

On the morning of November 30, 2012, a freight train derailed and four tank cars plunged into the Mantua Creek in Paulsboro, New Jersey when the Paulsboro Bridge, a railroad bridge

spanning the creek, collapsed. Compl. ¶¶ 43-45. The bridge was a "swing bridge" that was opened and closed remotely, and had a signal system in place to indicate when the track was properly locked. Id. ¶¶ 29, 38-40. Plaintiffs allege that despite the presence of a red signal, Defendants' dispatcher authorized the train to travel across the bridge when it was not properly locked. Id. ¶ 43. At least one of the derailed railcars was carrying vinyl chloride and released its cargo into the air and water when it fell into the creek. Id. ¶ 46.

Plaintiffs filed suit, alleging that Defendants acted negligently in their operation of the freight train and maintenance of the bridge. Plaintiffs allege that in the year prior to the derailment, Defendants had been notified of problems relating to the operation of the bridge but failed to correct the problems. Id. ¶¶ 30-33. In Count I of Plaintiffs' Complaint, PPS alleges that it has facilities in the vicinity of Defendants' railroad right-of-way, and that Defendants' negligence resulted in a "closure of the schools, a cessation of and interruption of curriculum, and later absenteeism" amounting to a loss of six days of curricular instruction valued at approximately $134,223 per day. Id. ¶¶ 57, 59. Count II of Plaintiffs' Complaint alleges negligence resulting in a reduction in the property taxes that PPS and the Borough rely upon. Id. ¶¶ 62-63, 72, 74. The Borough alleges that beginning on the day of the derailment and to the present day, the media has depicted the derailment and the release of hazardous substances into the community, and this "adverse publicity" has created a "stigma" that has caused a "loss of assessed property values and/or a deceleration of the rate increase of assessed value increases" that reduces the tax revenues available to Plaintiffs. Id. ¶¶ 67-72.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

**III.    DISCUSSION**

Defendants argue that Plaintiffs claims fail because Plaintiffs have not alleged any facts plausibly suggesting that the anticipated educational expenses sought were "particularly foreseeable" such that Defendants owed PPS a duty of care. They also argue that the harm

3

suffered by both Plaintiffs is too remote to be proximately caused by the derailment. The Court will address the arguments with respect to each count in turn.

### A. Count I

#### 1. Standing

As a threshold matter, Defendants contend that PPS does not have standing to bring their claim. To have standing to sue, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751(1984). A plaintiff has standing only where he has personally experienced past or imminent "actual harm." Lewis v. Casey, 518 U.S. 343, 349 (1996). The plaintiff bears the burden of establishing standing at the pleading stage "by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action." Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 2000).

Here, the alleged injury to PPS was the disruption of its curriculum which led to economic harm. This injury is not "too abstract . . . to be considered judicially cognizable." Wright, 468 U.S. at 752. Nor is "the line of causation between the illegal conduct and injury too attenuated." Id. Plaintiffs allege that as a direct result of Defendants' conduct—the crossing of the creek despite a red signal, which caused the train to derail and release the hazardous chemical—PPS, being in the immediate proximity of the spill, had to close its facilities. This injury is specifically traceable to Defendants' alleged negligence. And the injury is redressable in money damages and thus the prospect of obtaining relief from the injury is not "too speculative." Id. Though Defendants correctly note that other Paulsboro residents, many of

whom are likely to be students in Paulsboro or their parents, are pursuing claims against Defendants, these claims do not allege that the derailment disrupted and impaired PPS's operations. The instant claim does not belong to the students, but rather represents PPS's "own legal interests" that it has standing to pursue. See Mariana v. Fisher, 338 F.3d 189, 205 (3d Cir. 2003).

    **2. Duty of Care**

In New Jersey, the elements of a cause of action for negligence are (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008). To determine whether an alleged tortfeasor is liable for negligence, a court must first determine whether defendants owed a duty of care to plaintiffs. The determination of whether a duty of care exists is "quintessentially a question of law for the court." Highlands Ins. Co. v. Hobbs Grp., LLC, 373 F.3d 347, 351 (3d Cir. 2004). Under New Jersey law, the duty of care is "commensurate with the foreseeable risk" involved in the activity. Eden v. Conrail, 175 N.J. Super. 263, 288 (App. Div. 1980); see also Strang v. South Jersey Broad. Co., 9 N.J. 38, 45 (1952) ("[T]he measure of duty is care in proportion to the foreseeable risk.")

When solely economic damages are claimed, in addition to the elements that must be present in all negligence claims, the plaintiffs claiming economic damages must be of "an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct." People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 263 (1985). The class of plaintiffs affected must be "particularly foreseeable" by the defendant "in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type

of economic expectations disrupted." Id. at 264. In People Express, the New Jersey Supreme Court explained that "members of the general public . . . or persons travelling on a highway near the scene of a negligently-caused accident . . . [who] suffer varied economic losses" are foreseeable. Id. at 263. However, no duty would be owed to them because "their presence within the area would be fortuitous, and the particular type of economic injury . . . unpredictable and not realistically foreseeable." Id. at 263-64.

Defendants argue that they did not owe a duty of care to PPS because it was not a foreseeable Plaintiff under People Express. In another Paulsboro derailment case, this Court previously held that the requirements of People Express were satisfied at the motion to dismiss stage by allegations that Paulsboro-area residents and businesses incurred out-of-pocket expenses and lost income as an immediate and direct result of the derailment and chemical release. Wilson v. Consol. Rail Corp., No. 12-7586, 2013 WL 5530046 (D.N.J. Oct. 4, 2013). In Wilson, the plaintiffs were individuals and businesses who incurred expenses and lost income as a result of the evacuation and shelter-in-place orders issued by the Borough after the derailment. This Court opined:

> Plaintiffs meet all of the requirements for "particularly foreseeable" as announced in People Express. The "type of persons or entities comprising the class" here consists of individuals and businesses whose residence or place of business is close to location of the spill. Economic loss to such parties in the event of a major toxic chemical spill would have been "particularly foreseeable," if not nearly a certainty. The same holds for "presence within the area." Plaintiffs here are not members of the general public or fortuitous travelers that People Express indicated would not be sufficiently foreseeable. Id. at 263. Rather than being present only fortuitously, Plaintiffs' "presence within the area" was also a virtual certainty. Defendant also had reason to know of the type of economic loss that would be suffered by Plaintiffs. Shelter-in-place and evacuation orders leading to individuals missing work and businesses temporarily closing requires no leap in logic.

Id. at *4.

The Court does not see a meaningful difference between PPS and the businesses that lost revenue in Wilson.  PPS alleges that it had facilities in the immediate vicinity of the railroad right-of-way, and that Defendants should have known that an accident involving the release of a hazardous substance would deprive the schools of instruction days.  Closing the schools and the resulting economic losses that stem from the chemical spill, like the losses incurred by the plaintiffs in Wilson, likewise requires no leap in logic.  Therefore, for the reasons expressed in Wilson and stated above, PPS has properly alleged that Defendants owed it a duty of care.

### 3. Proximate Causation

Plaintiffs allege that the interruption in continuous days of instruction had a "disproportionate and adverse effect" on their student body because it is "comprised of a high proportion of low-income and minority students."  Compl. ¶ 58.  Defendants argue that the anticipated costs to address educational needs "unique" to the Paulsboro student body were thus not particularly foreseeable or proximately caused by the derailment.  They argue further that since PPS has not implemented their make-up days yet, the timing of Plaintiffs' economic loss dictates that the injury was not proximately caused under People Express.

At the motion to dismiss stage, a court must determine whether the Plaintiffs have alleged sufficient facts to state a claim for relief which is plausible on its face.  Iqbal, 556 U.S. at 678. The facts alleged here are that the schools are located in the immediate vicinity of Defendants' railroad, and that the derailment and resultant chemical spill caused school closures and later absenteeism that disrupted the curriculum.  These contentions satisfy the proximate cause element of negligence at the pleading stage.  Contrary to Defendants' position, the added factual allegation that the closures had a particularly harsh effect on the low-income students of

7

Paulsboro does not detract from the sufficient factual allegations otherwise pled.[1] And the fact that Plaintiffs have not yet been able to make up the losses suffered does not indicate that the losses suffered were not proximately caused by Defendants; Defendants confuse the timing of the loss with the timing of expenditures to remedy the loss.

For these reasons, Count I of Plaintiffs' Complaint survives Defendants' motion to dismiss.

**B. Count II**

Defendants argue that Count II fails because reputational stigma damages are not recoverable under New Jersey law absent physical harm to property. They also argue that the harm to Plaintiffs was built on intervening causes and thus was not proximately caused by Defendants. Finally, Defendants claim that the alleged damages are too speculative to be particularly foreseeable under People Express.

The New Jersey Supreme Court has described proximate causation as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Ostrowski v. Azzara, 111 N.J. 429, 439 (1988) (internal quotations omitted). The doctrine is "not so much . . . an expression of the mechanics of causation . . . as an expression of line-drawing by courts and juries, an instrument of 'overall fairness and sound public policy.'" Id. (quoting Brown v. United States Stove Co., 98 N.J. 155, 173 (1984)).

Although People Express was decided at the summary judgment stage, this Court has applied its principles concerning the "particularly foreseeable" standard for a claim of economic

---

[1] This Court is in no way maintaining that PPS can assert claims on behalf of Paulsboro students. See supra Section III(A)(1). Any claims relating to the alleged disproportionate effect of the school closures on low-income or minority students must be brought by those individual students or their representatives.

8

damages to a motion to dismiss.  See Wilson, supra.  Where resultant economic harm is not "particularly foreseeable," there is no proximate cause.  In deciding this issue, courts should examine whether there were any intervening causes, how close the injury was in time and space to the negligent act, the defendant's ability to ascertain the plaintiff's interests, and whether the extent of liability is finite or expansive.  People Express, 100 N.J. at 265.  "While a lone act can cause a finite amount of physical harm, that harm may be great and very remote in its final consequences."  Id. at 252-53.

In Rickards v. Sun Oil Co., cited with approval in People Express, the court dismissed the plaintiffs' complaint because it found that the harm "was not the natural and proximate result of defendant's negligence."  41 A. 2d 267, 270 (N.J. 1945).  In Rickards, a barge negligently crashed into and destroyed a bridge that was the only point of passage for land travel between the New Jersey mainland and the City of Brigantine.  A number of businesses located on the island of Brigantine sued the owner of the barge for the business they lost as a result of the lack of vehicular accessibility to the island for a period of time.  The People Express court relied on Rickards to illustrate that not all cases will be easily categorized, and at times "courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy. . . ."  People Express, 100 N.J. at 264.

Here, Plaintiffs' factual contentions as to causation are that beginning on the day of the derailment until the present day, "local print, broadcast, cable, and internet media ran intensive, daily, graphic footage and narrative descriptions depicting the derailment and the release of hazardous substances into the community."  Compl. ¶ 67.  Plaintiffs allege further that any prospective buyer of a home or prospective business person considering Paulsboro for commercial or industrial development "who uses an internet search engine to find background on

9

the community" will find such graphic depictions in the media. Id. ¶¶ 70-71. Plaintiffs allege that this "adverse publicity" created a "stigma" that will ultimately result in tax losses to Plaintiffs when and if businesses and individuals choose not to come to Paulsboro. Id. ¶ 72.

Based on Plaintiffs' allegations, it appears to the Court that if the media had not publicized the event, Plaintiffs would not have suffered the degree of harm alleged. This presents a situation of an intervening cause, like in Rickards, and the Court is obligated to draw the line in the interest of public policy. Plaintiffs do not allege that the chemical spill physically contaminated any land in the Borough. They do not allege that individuals and businesses abandoned their properties or took their businesses elsewhere as a result of the spill. They do not even allege that any prospective individuals or businesses have actually decided not to come to Paulsboro because of the derailment or even as a result of the media's depiction of the derailment. In short, Plaintiffs allege no facts plausibly supporting an inference that Defendants knew or should have known that media coverage of the derailment would reduce the value of real estate not actually contaminated with vinyl chloride. Additionally, the extent of the liability claimed is rather expansive, with Plaintiffs alleging a loss of operating revenue over 10 to 20 years. Compl. ¶ 74.

Moreover, Defendants assert, and Plaintiffs do not deny, that New Jersey has never recognized a claim for stigma damages in tort absent some sort of physical harm to the property. Instead, Plaintiffs argue that courts in other jurisdictions have recognized that a diminution of property values may be proximately caused by the stigma resulting from a release of hazardous substances. Be that as it may, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." City of Philadelphia v. Beretta U.S.A. Corp., 277 F. 3d 415, 421 (3d Cir. 2002). For these reasons, Count II will be dismissed.

10

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion as to Count I is denied. Count II of Plaintiffs' Complaint is dismissed with prejudice. An appropriate Order shall issue.


Dated: 6/8/2015                                                           s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge