### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | : | |
|---|---|---|
| | : | |
| **IN RE** | : | **MASTER DOCKET NO.:** |
| **PAULSBORO DERAILMENT CASES** | : | **13-CV-784 (RBK/KMW)** |
| | : | |
| | : | |

| | : | |
|---|---|---|
| **ALICE BREEMAN** *et al.,* | : | |
| | : | |
| **Plaintiff,** | : | **CASE NO. 1:12-cv-7468 (RBK/KMW)** |
| | : | |
| **vs.** | : | |
| | : | |
| **CONSOLIDATED RAIL** | : | |
| **CORPORATION,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANTS CONSOLIDATED RAIL CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY AND CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE <u>EXPERT REPORT AND TESTIMONY OF LEE BROOKS, M.D.</u>

Filed on behalf of Defendants,
Consolidated Rail Corporation,
Norfolk Southern Railway Company,
and CSX Transportation, Inc.

Counsel of Record for This Party:

Brian D. Pagano, Esquire

BURNS WHITE LLC
1800 Chapel Avenue West, Suite 250
Cherry Hill, NJ 08002
(856) 382-6006

# <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     SUMMARY OF DR. BROOKS' QUALIFICATIONS AND OPINIONS ........................3

III.    ARGUMENT AND CITATION OF AUTHORITIES .......................................................4

        A.      Standards For Evaluation Of A Motion To Exclude Expert Testimony ...............4

        B.      Dr. Brooks' Opinions are not Based Upon Any Discernible Methodology
                or Reproducible Analysis .......................................................................................5

        C.      Dr. Brooks has not Established "General Causation." ...........................................7

        D.      Dr. Brooks' Opinions are not Supported by Sufficient Facts or Data ...................8

        E.      Dr. Brooks does not Know the Dose Received by the Plaintiff............................10

        F.      Dr. Brooks Improperly Relies on Dr. Osinubi and Dr. Laumbach to Establish
                Dose .......................................................................................................................12

        G.      Dr. Brooks Improperly Replies Temporal Proximity ...........................................13

        H.      Dr. Brooks Failed to Reliably Exclude Other Alternative Causes........................14

        I.      The Probative Value of Dr. Brooks' Opinions is Outweighed by the Dangers
                of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury.  .............16

IV.     CONCLUSION.............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Castellow v. Chevron USA,* 97 F. Supp. 2d 786 n. 2 (S.D. Tex. 2000) ........................................11

*Cavallo v. Star Enter.,* 892 F. Supp. 756, 771 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 100 F.3d 1150 (4th Cir. 1996) ................................................................................5, 7, 10

*Conde v. Velsicol Chem. Co.*, 804 F. Supp. 972, 1023 (S.D. Ohio 1992), *aff'd*, 24 F.3d 809 (6th Cir. 1994) ................................................................................................13

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) ................................. *passim*

*Diaz v. Johnson Matthey, Inc.,* 893 F. Supp. 358, 376 (D.N.J. 1995) ...........................................14

*Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000) ..................................................4

*In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1234 n.5 (D. Colo. 1998) ................................6

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ................................4, 6, 9, 14

*In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) ..........12

*In Re: TMI Litig.,* 193 F.3d 613, 698 (3rd Cir. 1999) ........................................................9, 12, 13

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999) ............................................................5

*Magistrini v. One Hour Martinizing Dry Cleaning,* 180 F. Supp.2dd 584 (D.N.J. 2002) .7, 14, 15

*Martincic v. Urban Redevel. Auth.*, 844 F. Supp. 1073, 1075-76 (W.D. Pa. 1994), *aff'd*, 43 F.3d 1461 (3d. Cir. 1994) ................................................................................................8

*Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ........................................................4

*Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 611 (7th Cir. 1993) ..................................................13

*Savage v. Union Pac. R.R. Co.,* 67 F. Supp.2d 1021 (E.D. Ark. 1999) ........................................11

*Schmaltz v. Norfolk & W. Ry. Co., 878 F. Supp. 1119 (N.D. Ill. 1995)* ........................................13

*Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983) ..................................................13

*Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 563 (W.D. Pa. 2003) ..........................4, 15

*United States v. Schiff,* 538 F. Supp. 2d 818, 833 (D.N.J. 2008) ..................................................5

*United States v. Tran Trong Cuong,* 18 F.3d 1132, 1143-44 (4th Cir. 1994) ..............................13

*Whiting v. Boston Edison Co*., 891 F. Supp. 12, 24 (D. Mass. 1995) ...........................................16

*Wills v. Amerada Hess Corp*., 379 F.3d 32, 49 (2nd Cir. 2004) ....................................................12

*Wright v. Willamette Indus*., 91 F.3d 1105, 1106 (8th Cir. 1996) ........................................5, 6, 10

## **Additional Authority**

Federal Rule of Evidence 702 ..............................................................................................2, 4, 8

Federal Rule of Evidence 403 ..................................................................................................3, 16

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| | : | |
| | : | |
| IN RE | : | MASTER DOCKET NO.: |
| PAULSBORO DERAILMENT CASES | : | 13-CV-784 (RBK/KMW) |
| | : | |
| | : | |

| | | |
|---|---|---|
| ALICE BREEMAN *et al.,* | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:12-cv-7468 (RBK/KMW) |
| | : | |
| vs. | : | |
| | : | |
| CONSOLIDATED RAIL | : | |
| CORPORATION, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CONSOLIDATED RAIL CORPORATION, NORFOLK SOUTHERN
RAILWAY COMPANY AND CSX TRANSPORTATION, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE
<u>EXPERT REPORT AND TESTIMONY OF LEE BROOKS, M.D.</u>**

NOW COME Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc. ("Defendants"), by and through their counsel, Burns White LLC, and submit this Memorandum of Law in Support of their Motion to Exclude the Expert Report and Testimony of Lee Brooks, M.D.

I.      <u>PRELIMINARY STATEMENT</u>

Savanna Breeman-Rodgers ("Plaintiff") brought this toxic tort action against Defendants following a November 30, 2012 train derailment in Paulsboro, New Jersey.  In support of her allegations, Plaintiff intends to introduce the expert testimony of Lee Brooks, M.D., who will opine

that Plaintiff's brief and acute exposure to vinyl chloride following the derailment exacerbated her pre-existing respiratory symptoms. This Court should exercise its gatekeeping function under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and exclude Dr. Brooks' report and testimony as both unreliable and irrelevant.

Based on a review of his one and a half page report, as well as his deposition testimony in this matter, it is clear that the opinions of Dr. Brooks are based solely on his subjective belief. Dr. Brooks failed to either identify or utilize any scientific method used to arrive at his conclusions and opinions. Not only are his opinions not based upon sufficient facts or data, but Dr. Brooks fails to cite even a single publication in his report. Dr. Brooks has made no attempt to estimate the quantity of vinyl chloride to which Plaintiff was allegedly exposed, or to conduct any independent analysis or research regarding the purported exposures. In fact, Dr. Brooks' proffered opinion that Plaintiff's injuries were exacerbated by the derailment is admittedly based largely her mother's subjective account of exposure,[1] or by opinions he gleaned from other experts in the derailment matters.

Further, Dr. Brooks failed to perform a viable analysis to evaluate the relative impact of other more obvious causes of Plaintiff's exacerbated respiratory problems. Dr. Brooks did not have access to Plaintiff's complete medical history, and either lacked or overlooked significant information relevant to his differential diagnosis.

In the end, Dr. Brooks' opinions are no more than subjective views without an objective scientific foundation. His opinions are the product of litigation, not reliable application of generally accepted scientific methods and principles. Accordingly, the expert report, opinions and testimony of Dr. Brooks should be excluded, as they fail to satisfy the *Daubert* standards and Rule 702. Additionally, the probative value of such unsupported opinions is greatly outweighed by the

---

[1] Plaintiff is four years old, and was only 18 months old at the time of the derailment, so she would not be in a position to give her own report of the incident.

probability that they will lead to unfair prejudice and jury confusion, thereby warranting exclusion under Fed. R. Evid. 403.

## II.      SUMMARY OF DR. BROOKS' QUALIFICATIONS AND OPINIONS

Dr. Brooks is a medical doctor who is board certified in pediatric pulmonology.  For the purposes of this motion, Defendants do not challenge Dr. Brooks' qualifications as a physician.

Dr. Brooks will be offering his opinion on the issue of medical causation.  He provided testimony in a deposition dated June 2, 2015, and an expert report dated April 14, 2015. *See* Brooks deposition, attached hereto as Exhibit A; Brooks Expert Report, attached hereto as Exhibit B.  In addition to his examination of Plaintiff, Dr. Brooks reviewed a very limited amount of material that Plaintiffs' counsel provided to him prior to generating his report,[2] including the medical records of Plaintiff's primary care physician, medical records from Inspira Hospital and the expert reports of Dr. Omowunmi Osinubi, M.D.[3]

Ultimately, based on these limited sources, Dr. Brooks concluded as follows:

Based on the history given to me by [Plaintiff's] mother, and the documents I have reviewed, it appears that [Plaintiff] was exposed to significant levels of respiratory irritants as a result of the train derailment. In my opinion, this exposure was a substantial factor in contributing to her current condition, as the severity of her respiratory problems worsened markedly after the incident.  To the extent [Plaintiff] may have had pre-existing respiratory issues, these exposures would definitely exacerbate them.

Brooks Rep. at 2.

---

[2] At his deposition, Dr. Brooks indicated that subsequent to drafting his report, he was provided with additional materials from Plaintiff's counsel.  Brooks Dep. at 29, 96. However, he testified that the new materials, including any scientific articles, did not change his opinions in this matter. *Id.* at 97; 109.

[3] Plaintiff has not designated Dr. Osinubi as an expert witness in this matter.

### III.   <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

#### A.   Standards for Evaluation of a Motion to Exclude Expert Testimony.

It is well-established that district courts are to conduct a "rigorous" analysis to ensure that expert evidence satisfies the *Daubert* requirements and Rule 702 of the Federal Rules of Evidence before admitting expert testimony or opinions into evidence. *See, e.g., Daubert v. Merrill Dow Pharms, Inc.*, 509 U.S. 579 (1993). Briefly stated, those requirements are: (1) the witness must qualify as an expert; (2) the testimony or opinions must be reliable; and (3) the expert testimony or opinions must assist the trier of fact and "fit" the facts of the case. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

With respect to the qualifications prong of the inquiry under Daubert and Rule 702, expert testimony should be excluded unless it is shown that the witness possesses sufficient specialized expertise in the field in which he or she is proffered as an expert. *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000).

The reliability prong mandates "that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). A court "is not required to simply 'take the expert's word for it.'" *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 563 (W.D. Pa. 2003). As this Court has explained, the Third Circuit has developed an eight-part test for evaluating the reliability or scientific validity of purported expert testimony: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which

have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *United States v. Schiff*, 538 F. Supp. 2d 818, 833 (D.N.J. 2008) (quoting *United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004)).

Finally, the expert testimony has to "fit"—that is, the court must determine that the opinion "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony that does not relate to the specific issues before the trier of fact "is not relevant and, ergo, non-helpful." *Id.*

**B.      Dr. Brooks' Opinions are not Based Upon Any Discernible Methodology or Reproducible Analysis.**

*Daubert* requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). However, the scientific method of assessing cause-and-effect relationships between agents and health effects contrasts starkly with the lax reasoning employed by Dr. Brooks in this case.

As in all toxic tort cases, the issue of causation requires a two-fold analysis:  (1) whether the chemical is capable of causing the injuries alleged by the plaintiff ("general causation") and (2) whether the chemical did in fact cause the plaintiff's injuries ("specific causation"). *Cavallo v. Star Enter.,* 892 F. Supp. 756, 771 (E.D. Va. 1995), *aff'd in part, rev'd in part*, 100 F.3d 1150 (4th Cir. 1996)*; Wright v. Willamette Indus*., 91 F.3d 1105, 1106 (8th Cir. 1996). This accepted methodology has been approved by governmental agencies, international health organizations, and courts. *See, e.g., Cavallo*, 892 F. Supp. at 764 (*citing* World Health Organization, National Academy of Sciences, and various agencies of federal government). The method focuses on (1) the chemicals to which the plaintiff was exposed, (2) the dose of the chemicals received, (3) the temporal

5

relationship between the exposure and the disease, (4) the amount of exposure necessary to cause the disease as reported in the scientific literature, and (5) the other possible explanations for the disease. *Id.*; *Wright*, 91 F.3d at 1106.

In his report and deposition, Dr. Brooks makes no reference to the extensive literature on causation methods. Indeed, the Bradford Hill criteria have been widely recognized by courts throughout the United States for their usefulness in providing a framework for identifying the generally accepted methodology for making determinations of medical causation. *See Federal Judicial Center's Reference Manual on Scientific Evidence, Third*. (2011) at 601-06 (providing descriptions of the Bradford Hill factors)*; see also* Declaration of Douglas L. Weed, M.D., M.P.H., Ph.D., attached hereto as Exhibit C, Exhibit A at 23-26.  Here, Dr. Brooks was not even aware of the Bradford Hill criteria, so he admittedly did not use them in causally relating Plaintiff's symptoms to her alleged vinyl chloride exposure. Brooks Dep. at 133; *but see In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1234 n.5 (D. Colo. 1998) (failure to address, much less follow, the Bradford Hill criteria renders an expert's methodology unreliable).

Instead, when asked what his methodology was for determining causation in this matter, Dr. Brooks relied solely on temporality for his opinions, responding "the fact that her symptoms got worse after her exposure." Brooks Dep. at 111. As demonstrated herein, Dr. Brooks did not attempt to quantify the dose of vinyl chloride received by Plaintiff; he failed to determine the amount of exposure necessary to exacerbate the alleged symptoms, as reported in the scientific literature; and he failed to account for the other possible explanations for Plaintiff's exacerbated respiratory symptoms. Thus, not only did Dr. Brooks fail to articulate any causation methodology, he also failed to follow any objective, reproducible methodology. His "subjective belief or unsupported speculation" is wholly insufficient. *Paoli*, 35 F.3d at 742.

A similar failure resulted in the exclusion of a medical causation expert's opinions in *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp.2dd 584 (D.N.J. 2002). There, the plaintiff's causation expert attempted to opine that the plaintiff's leukemia was caused by exposure to PCE, a chemical used in dry cleaning. The court excluded the expert because he could not articulate any objective, reproducible process or methodology he followed to reach his conclusions:

> [The expert] opines that causation is a "judgment" made about experimental data. "Judgment" does not substitute for scientific method; without a reliable method, result-oriented "judgment" cannot be distinguished from scientifically or methodologically based judgment. Where, as here, elements of judgment pervade the methodology, it is essential that the expert set forth the method for weighing the evidence upon which his opinion is based.

*Id.* at 584.

Here, there is simply no transparent or reproducible methodology that Dr. Brooks can identify to allow the Court to determine whether his opinions are a result-oriented "judgment" as opposed to a scientifically or methodologically-based judgment. Accordingly, his opinions must be excluded.

### C.    Dr. Brooks has not Established "General Causation."

Before attributing a person's disease to her exposure to a substance, science requires evidence that the substance is capable of causing the disease. *Cavallo*, 892 F. Supp. at 771; *see also* Federal Judicial Center at 419-22, 382-83 ("an agent cannot be considered to cause the illness of a specific person unless it is recognized as a cause of that disease in general").

Contrary to the standard toxicological methodology, Dr. Brooks failed to establish general causation as to any of Plaintiff's reported symptoms, namely her increased cough. Indeed, Dr. Brooks' report fails to reference a single study to support his conclusions in this case. Dr. Brooks' failure to cite the scientific literature to develop his opinions is striking. Such a method is completely inadequate and unreliable.

Although Dr. Brooks indicates that he reviewed two articles prior to drafting his report, a closer look at the articles reveals that neither of them support his opinions in this matter – that Plaintiff's brief exposure to vinyl chloride causes, or exacerbates coughing and respiratory problems in children. By his own admission, the Suzuki article was an animal study on mice, and the Lilis review (which focused on primarily workers in PVC plants which were exposed to much greater quantities of vinyl chloride than alleged in this case) discussed only exertional dyspnea (shortness of breath), not cough. Brooks Dep. at 47-49.

This lack of scientific acceptance of the underlying theory is perhaps the key factor in a *Daubert* analysis. *Daubert,* 509 U.S. at 591-94. Dr. Brooks has not tested his theory that the level of exposure allegedly experienced by Plaintiff can cause her symptoms. He has not published his theory in any peer-reviewed scientific journal, and he is not able to identify any other scientist who has done so.  For these reasons alone, the exclusion of his testimony is entirely justified.

**D.      Dr. Brooks' Opinions are not Supported by Sufficient Facts or Data.**

Even if the methodology used by the expert satisfies some of the *Daubert* prerequisites, an expert's opinion is not admissible if it is not grounded on sufficient and reliable data.  Fed R. Evid. 702(1).  The expert's opinion is not grounded on sufficient data if the data is faulty, untrustworthy, contradicted by other uncontested and unconsidered data, or otherwise incomplete or inadequate. If the data are unreliable, an expert's analysis based upon the data is likewise inherently unreliable. *See, e.g., Martincic v. Urban Redevel. Auth.*, 844 F. Supp. 1073, 1075-76 (W.D. Pa. 1994), *aff'd*, 43 F.3d 1461 (3d. Cir. 1994).

Here, Dr. Brooks bases his opinions on unreliable data – namely the lay opinions of Plaintiff's mother.  For example, he relays that "[]t looked like fog" and "[b]ased on the history given to me by [Plaintiff's] mother, and the documents I have reviewed, it appears that Plaintiff was

exposed to *significant* levels of respiratory irritants as a result of the train derailment." Brooks Rep.

1-2. Likewise, he testified:

> Q:      . . . So, your conclusion that her coughing indicated lung damage, that was based on the history given to you by [Plaintiff's mother]?
>
> A:      Yes.

Brooks Dep. at 49.

> Q:      And, I'm not trying to beat a dead horse, but the basis for your opinion is the history that's been reported to you.
>
> A:      Yes.

*Id.* at 112. However, Dr. Brooks' reliance on Plaintiff's mother's subjective self-report as a basis for her opinions does not withstand the *Daubert* test. Notably, the Third Circuit has affirmed the exclusion of expert testimony where, as here, an expert was "retained strictly for litigation purposes [and] based ... [a] causation [opinion] on nothing more than a plaintiff's self-report." *In Re: TMI Litig.,* 193 F.3d 613, 698 (3rd Cir. 1999). Similarly, in *Paoli*, the Third Circuit explained that in the litigation context, reliance on patient statements should not be the sole basis for an expert's opinion; the expert should seek some form of corroborative evidence. *See Paoli,* 35 F.3d at 762. This is because in such a situation "the usual [ ] candor with a physician—the hope of successful treatment or diagnosis—[is] wholly lacking," and plaintiffs have every incentive to "be overinclusive," *i.e.*, to exaggerate. *Id.* The court was therefore "satisfied that where [experts] based their conclusion as to a plaintiff's symptoms solely on the plaintiff's self-report of illness in preparation for litigation, the district court act[s] within its discretion in excluding the testimony as based on an unreliable source of information." *Id.*

The rationale of *TMI* and *Paoli* apply equally here. Dr. Brooks seemingly based his entire causation opinion upon a biased source of information—the self-report of Plaintiff's mother in the

current litigation. Even Dr. Brooks admits that given that she has a financial interest in the outcome of the litigation, Plaintiff's mother may have distorted the history given to him. Brooks Dep. at 118. However, Dr. Brooks still relied on the self-report, despite the fact that he admits that his exam of Plaintiff and the chest film were normal, and the fact that Plaintiff's pre-litigation medical records do not give any indication that Plaintiff was coughing every day, as her mother claimed. Brooks Dep. at 49, 112.  Dr. Brooks' reliance on an unreliable source of information, with no corroborating evidence, renders his opinions inadmissible.

  **E.**  **Dr. Brooks does not Know the Dose Received by the Plaintiff.**

   The first law of toxicology is "the dose makes the poison."  Bernard D. Goldstein and Mary Sue Henifin, *Reference Guide on Toxicology* in *Federal Judicial Center Reference Manual on Scientific Evidence* (hereafter, "*Reference Guide on Toxicology*"), at 636 (3d ed. 2011). Indeed, "all chemical agents are intrinsically hazardous – whether they caused harm is only a question of dose." *Id*. Thus, the toxicological method requires at least an estimate of dose to determine whether the dose was sufficient to cause injury.  *Cavallo*, 892 F. Supp. at 772-73; *Wright,* 91 F.3d at 1105, 1107. ("At a minimum, we think that there must be evidence from which the factfinder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered"). Without a reference to dose, the expert is engaging in nothing more than speculation.

   The requirement of dose is highlighted by the Bradford-Hill criteria. The Bradford-Hill criteria demand scrutiny of a number of factors before any causation conclusion is appropriate—

*including the dose-response relationship* between the exposure to the chemical and the risk of developing the disease.[4] *See Castellow v. Chevron USA,* 97 F. Supp. 2d 786 n. 2 (S.D. Tex. 2000).

A particularly instructive case regarding the impact of dose is *Savage v. Union Pac. R.R. Co.,* 67 F. Supp.2d 1021 (E.D. Ark. 1999). In rejecting plaintiff's expert's causation testimony under *Daubert,* the court stated:

> There is sufficient evidence that Plaintiff was around and physically in touch with the creosote. . . But Plaintiff has produced no scientific data showing the *nature* of creosote exposure required to initiate or promote the development of [skin cancer]. Nor has he shown the *level* of such exposure needed to cause such skin cancer in humans generally. Nor does he show with any degree of scientific reliability the level of his own exposure. In sum, Plaintiff has failed to present the fundamental information necessary to establish the scientific validity of Dr. Boyd's opinions. For this reason, Dr. Boyd's opinions with respect to creosote cannot meet the requirements of *Daubert.*

*Id.* at 1032-34. As in *Savage*, Dr. Brooks clearly does not know the dose of vinyl chloride received by Plaintiff.

Q: If I ask you specific questions like how far away were they from the actual derailment, you can't answer that.

A: That's right.

Q: And you can't answer at what specific times they were at specific locations that morning; is that correct?

A: That's right.

Brooks Dep. at 56.

Q: Do you have an opinion as to when or how much was remaining in the air after the first day of the derailment?

---

[4] The Bradford Hill factors include whether: (1) a temporal relationship exists; (2) the association is strong or weak; (3) a dose-response relationship exists; (4) the results have been replicated; (5) the association is biologically plausible; (6) alternative explanations have been adequately considered; (7) the association exhibits specificity; and (8) the findings are consistent with other knowledge. *See Magistrini v. One Hour Martinizing Dry Cleaning,* 180 *F.* Supp.2d 584, 592 (D.N.J.2002)(citing the Bradford Hill factors).

A:   I don't know.

*Id. at 67-68.*

Undoubtedly, Dr. Brooks cannot quantify Plaintiff's level of exposure to vinyl chloride, or state whether her exposure to vinyl chloride was of a significant enough level to have caused her to develop any respiratory symptoms.

Instead of trying to equate Plaintiff's location at the time of the derailment to any exposure measurements, he instead relies on Plaintiff's mother's word.  Lay opinions of this sort provide a wholly insufficient basis for an expert to extrapolate the amount of toxins to which Plaintiff was exposed. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49 (2nd Cir. 2004). Where, as here, a proffered expert offers only unverified statements unsupported by any scientific method, the proffered testimony is properly barred.

**F.     Dr. Brooks Improperly Relies on Dr. Osinubi and Dr. Laumbach to Establish Dose.**

To the extent that Dr. Brooks relies on the opinions of other expert witnesses, namely Drs. Osinubi and Laumbach, to establish the levels of exposure to Plaintiff, such reliance is also unreasonable. Brooks Dep. at 53, 57 (Q: Do you have any idea what the levels of exposure were? A: I think that information was in the other reports). It is well-established that an expert "may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) (citing In re TMI Litig., 193 F.3d 613, 715-716 (3d Cir. 1999). Here, Dr. Brooks has done nothing to check the qualifications of these experts to opine on the issue, other than read their curriculum vitae and report. Brooks Dep. at 54. Furthermore, to the extent either of these exports is precluded from giving expert testimony due to their own methodological problems, Dr. Brooks' opinion is likewise subject to exclusion.

12

An expert is entitled to rely only on facts or data that are "reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. It is undisputed that Dr. Osinubi and Dr. Laumbach's reports and opinions were prepared specifically for this litigation, and that Dr. Brooks blindly relied on them. "Reports specifically prepared for purposes of litigation are not, by definition, 'of a type reasonably relied upon by experts in the particular field.'" *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994); *Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983) (defense expert's testimony excluded where witness relied on statistics prepared in anticipation of litigation). As the Third Circuit has held, where, as here, Dr. Brooks relies on the opinions of others, and makes no effort "to assess the validity of the opinions of the experts he relied upon ... the methodology he used to formulate his opinion was flawed under Daubert...." *TMI Litig.*, 193 F.3d at 716. Accordingly, his testimony should be excluded.

### G.       Dr. Brooks Improperly Replies Temporal Proximity

Also invalid is Dr. Brooks' flawed reliance on temporal proximity as the basis for his opinion. Brooks Rep. at 2 ("the severity of her respiratory problems worsened markedly after the incident.") Brooks Dep. at 111 (his opinion is based on "the fact that her symptoms got worse after her exposure").

It is well settled that a causation opinion based solely on a temporal relationship is not derived from scientific method and is therefore insufficient to satisfy the requirements of the Federal Rules of Evidence. *Schmaltz v. Norfolk & W. Ry. Co.*, 878 F. Supp. 1119 (N.D. Ill. 1995) (citing *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 611 (7th Cir. 1993)); *Conde v. Velsicol Chem. Co.*, 804 F. Supp. 972, 1023 (S.D. Ohio 1992), *aff'd*, 24 F.3d 809 (6th Cir. 1994); *Daubert*, 43 F.3d at 1319. In this case, Dr. Brooks flip-flops scientific reasoning in mistaking sequence for consequence. He assumes that the exacerbation of Plaintiff's respiratory symptoms was caused by

13

her alleged vinyl chloride exposure, and back-fills this assumption with the hypothesis that the temporal proximity between the development of the symptoms and the alleged exposure proves a connection between these events.  All he has shown, however, is that one event followed the other in time.

### H.      Dr. Brooks Failed to Reliably Exclude Other Alternative Causes

Dr. Brooks failed to properly and scientifically rule out alternative causes for Plaintiff's cough, the only exacerbation symptom he has identified in his report. The Third Circuit has affirmed the exclusion of testimony where, as here, the expert "made no effort to employ differential diagnosis to eliminate possible alternative causes of [plaintiff's conditions]." *Paoli,* 35 F.3d at 767. Relying on *Paoli,* this Court has concluded that "where a defendant points to a plausible alternative cause and the doctor offers no reasonable explanation for why she still concludes that [her cause] was a substantial factor in bringing about the plaintiff's disease, that doctor's methodology is unreliable." *Magistrini,* 180 F. Supp. at 609 (internal quotations omitted); *Diaz v. Johnson Matthey, Inc.,* 893 F. Supp. 358, 376 (D.N.J. 1995) (excluding expert medical testimony on issue of specific causation where physician "did little, if anything, to rule out alternative causes" and either "ignored" or offered "no reasonable explanation" for discounting "several [alternative] possible causes" for plaintiffs asthma identified by defendant).

Dr. Brooks' analysis falls woefully short of a differential diagnosis, as he wholly fails to meaningfully consider Plaintiff's genetic history of asthma and other environmental factors as alternative causes for her cough symptoms, including her mother's smoking history.  Brooks Dep. at 58-59, 78-79. Likewise, he fails to consider the poor air quality on Paulsboro, although he agreed that someone living in an industrial area where the air quality is not good could affect (exacerbate) the asthma symptoms in a child.  *Id.* at 62.

14

Instead, Dr. Brooks indicates that he relied primarily on Plaintiff's mother's own self-serving statement for the fact that her cough got worse after the derailment cough, despite the fact that she had well-documented episodes of coughing prior to the derailment. Brooks Dep. at 74.

Dr. Brooks' failure to account for these alternate factors strongly indicates that his conclusions are not grounded in reliable scientific methods, as required by *Daubert*. Dr. Brooks is completely unable to articulate any basis whatsoever for his conclusion that Plaintiff's very brief and limited acute exposure to vinyl chloride, rather than other possible known causes, exacerbated her cough.  How did he rule out alternative causes and rule in vinyl chloride? What were the diagnostic techniques he used to do so? What were the factors weighing toward vinyl chloride (*i.e.*, level of the dose, timing of the dose) as opposed to other causes? Dr. Brooks cannot articulate a process or method he followed, much less scientific support, for his opinions. His inability to do so renders his assertion that Plaintiff's respiratory symptoms were exacerbated by her exposure to vinyl chloride, as opposed to other known factors, sheer speculation. *See Magistrini,* 180 F. Supp. 2d at 610 (excluding testimony of expert who "discounted entirely smoking as a risk factor, without discussing why smoking was ruled out as a cause of Plaintiff's illness"); *Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp. 2d 434 (W.D. Pa. 2003) (excluding causation opinion where expert could not rule out idiopathic or alternative causes for plaintiff's stroke).

Inference-making based on unsupported assertions and avoidance of inconvenient findings is not scientific method. For these reason, Dr. Brooks cannot identify any other doctor who will support his proffered causation theory, much less demonstrate "widespread acceptance." *See Daubert*, 509 U.S. at 591-94.

I.      **The Probative Value of Dr. Brooks' Opinions is Outweighed by the Dangers of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury.**

Federal Rule of Evidence 403 requires that evidence, although relevant, may still be excluded from trial, if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury; and, in this case, the probative value of Dr. Brooks' opinions is clearly outweighed by these concerns. "The role [of gatekeeper] is especially sensitive in cases 'where the plaintiff claims that exposure to a toxic substance caused his injury, [because a] jury may blindly accept an expert's opinion that conforms with their underlying fears of toxic substances without carefully understanding or examining the basis of that opinion.'" *Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995).

Plaintiff will likely argue that the assessment of Dr. Brooks' opinion on this case is a question for the jury.  However, the mere fact that Dr. Brooks has good academic credentials could unfairly influence a jury and distract them from examining whether an adequate scientific basis exists to support his conclusions.  The admission of his testimony merely serves to echo Plaintiff's opinion that her alleged exposures following the derailment caused her injuries.  As it is of very limited probative value, there is a substantial danger that its admission will result in unfair prejudice to the Defendants.  For this additional reason, Dr. Brooks' testimony should be excluded.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc., respectfully request that this Honorable Court exclude the proffered expert testimony of Lee Brooks, M.D. Defendants also request that the Court convene a *Daubert* evidentiary hearing on this Motion.

Respectfully Submitted,


*/s/ Brian D. Pagano*
Brian D. Pagano, Esquire
BURNS WHITE LLC
1800 Chapel Avenue West, Suite 250
Cherry Hill, NJ 08002
(856) 382-6012
Email: bdpagano@burnswhite.com

*Attorney for Defendants,*
*Consolidated Rail Corporation, Norfolk Southern*
*Railway Company and CSX Transportation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2015, a copy of the within Memorandum of Law in Support of their Motion to Exclude the Expert Report and Testimony of Lee Brooks, M.D. was served on all counsel of record via e-file.

BURNS WHITE LLC

By:     */s Brian D. Pagano*
        Brian D. Pagano, Esquire
        1800 Chapel Avenue West, Suite 250
        Cherry Hill, NJ 08002
        (856) 382-6012

        *Attorneys for Defendants,*
        *Consolidated Rail Corporation, Norfolk*
        *Southern Railway Company, and CSX*
        *Transportation, Inc.*