UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| IN RE: | : | MASTER DOCKET NO.: |
| PAULSBORO DERAILMENT CASES | : | 13-CV-784 (RBK/KMW) |
| | : | |
| | : | 1:12-CV-07468-RBK-KMW (Breeman) |
| | : | 1:12-CV-07747-RBK-KMW (Lord) |
| | : | 1:13-CV-03350-RBK-KMW (Everingham) |
| | : | 1:13-cv-03244-RBK-KMW (Morris) |
| | : | 1-13-cv-04569-RBK-KMW (Johnson) |
| | : | 1:13-cv-05763-RBK-KMW (Truluck) |
| | : | 1:13-cv-07410-RBK-KMW (Smith) |

**DEFENDANTS CONSOLIDATED RAIL CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, AND CSX TRANSPORTATION, INC.'S
REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF
<u>PLAINTIFFS' EXPERT, PANOS G. GEORGOPOLOUS, M.S, PH.D.</u>**

Filed on behalf of Defendants,
Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc.

Counsel of Record for This Party:

Brian D. Pagano, Esquire

BURNS WHITE LLC
1800 Chapel Avenue West, Suite 250
Cherry Hill, NJ 08002
(856) 382-6006

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT AND CITATION OF AUTHORITIES .................................................... 1

    I.    Dr. Georgopolous' Declaration Improperly Seeks To Supplement His Initial Report And Should Be Stricken ............................................................... 1

    II.    Dr. Georgopolous' Expert Opinions Are Not Admissible ................................. 5

        A.    Dr. Georgopolous is not qualified to offer an expert opinion. ................ 5

        B.    Dr. Georgopolous Failed to Properly Account for Wind Speed And Direction in His Model ............................................................... 7

            1.    Dr. Georgopolous' Methodology Fails to Properly Account for The Thermodynamics of the Vinyl Chloride At the Time of the Release ........................................................... 8

            2.    Dr. Georgopolous' Methodology Fails to Properly Account for Terrain Variation In the Dispersion of the Vinyl Chloride Following the Derailment .................................. 9

            3.    Dr. Georgopolous Failed to Test His Results Against Available Air Monitoring Data From the Derailment and His Report and Opinions Are Inherently Unreliable Because They Are Inconsistent With Actual Air Monitoring Data ......................................................................... 9

            4.    Dr. Georgopolous' Methodology Fails to Properly Estimate Potential Degradation Products of the Vinyl Chloride At the Time of the Release ........................................... 11

CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Aloe Coal Co. v. Clark Equip. Co.*,
   816 F.2d 110 (3d Cir. 1987) .................................................................................. 7

*Beller v. United States*,
   221 F.R.D. 696 (D.N.M.) ..................................................................................... 5

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*,
   300 F.3d 325 (3d Cir. 2002) ................................................................................. 6

*In re Asbestos Liability Lit.*,
   289 F.R.D. 424 (E.D. Pa. 2013) ........................................................................... 5

*Reichhold v. U.S. Metals Refining Co.*,
   2007 WL 1428559 (D.N.J. 2007) ........................................................................ 1

*Sancom, Inc. v. Quest Comm. Corp.*,
   683 F.Supp.2d 1043 (D.S.D. 2010) ..................................................................... 4

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998) ................................................................................. 7

**Rules**

Fed. R. Civ. P. 26(e) ......................................................................................... 2, 4

# INTRODUCTION

Instead of refuting the weaknesses of Dr. Georgopolous' methodology raised in Defendants' Motion to Exclude, Plaintiffs have instead filed an untimely and impermissible supplemental report by Dr. Georgopolous that includes repetitive arguments critical of Defendants' experts, even though Defendants' experts and their respective methodologies are not at issue. This supplemental report is identified as a "declaration" by Dr. Georgopolous, and relies upon at least 44 new exhibits, comprising more than 300 pages of information, that were <u>not</u> identified in his March 20, 2015 Report, although nearly all of this information was available to him at the time that he prepared his report.[1] Dr. Georgopolous' Declaration, and the multitude of previously unconsidered and unidentified information referenced in Plaintiffs' Response, acts as implicit recognition by Plaintiffs of the inherent, and evidently unanswerable, methodological deficiencies of Dr. Georgopolous' March 20, 2015 report and opinions. Accordingly, Dr. Georgopolous' report, testimony, and opinions should be excluded under Rule 702 and *Daubert*.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Dr. Georgopolous' Declaration Improperly Seeks To Supplement His Initial Report And Should Be Stricken

In this Court's Scheduling Order of November 13, 2013, the Court directed all expert reports and disclosures on behalf of the Plaintiffs to be served upon Defense counsel by March 4, 2015, and that expert depositions be completed by May 1, 2015. *See*, Order, November 13, 2014, at ¶ 8. (Doc. No. 545). Dr. Georgopolous' report was served on March 23, 2015, and his

---

[1] It would appear that only the April 28, 2015 Defense Expert Report of Exponent, and the June 3, 2015 Transcript of Lloyd Schulman, Ph.D., were unavailable to Dr. Georgopolous at the time he prepared his March 20, 2015 Report, although such unavailability does not now permit Dr. Georgopolous to revise his opinions based upon their conclusions. *Reichhold v. U.S. Metals Refining Co.*, 2007 WL 1428559, *14 (D.N.J. 2007).

deposition was held on April 30, 2015. On May 21, 2015, Defendants filed their Motion to Exclude Dr. Georgopolous' Expert Report, and any opinions or testimony based upon the report.

On June 19, 2015, Plaintiffs filed their Response. (Doc. No. 788). Exhibit E to Plaintiffs' Response is a Declaration from Dr. Georgopolous that is 17 pages long. (Doc. No. 788-1). This "declaration", when fairly read, is in actuality a supplemental expert <u>report</u> by Dr. Georgopolous, improperly submitted by Plaintiffs without leave of court, that rehashes his methodology and conclusions and criticizes Defendants' experts. It seeks to improperly inject new grounds supporting Dr. Georgopolous' Report and opinions after both his deposition and Defendants' Motion to Exclude revealed significant flaws in his methodology. Such a tactic unfairly prejudices Defendants and violates both the letter and spirit of this Court's November 13, 2014 Scheduling Order and Fed. R. Civ. P. 26(e).

As stated in Defendants' Motion, Defendants challenged Dr. Georgopolous' methodology and conclusions on several topics: (1) his lack of expertise in the area of dense gas modeling, including his use of a model that did not accurately portray the vinyl chloride release; (2) his failure to incorporate a variety of relevant data in forming his opinions, including wind speed data, thermodynamics considerations, terrain variation, and testing of his model against available data, leading him to grossly overestimate vinyl chloride exposures; and (3) his failure to properly estimate potential vinyl chloride degradation products at the time of the release.

Dr. Georgopolous' Declaration attempts to buttress his previous conclusions with a variety of new information that he neither considered nor identified in his report or deposition testimony. For example, Exhibit B to his Declaration is an excerpt from a 2009 scientific article by Geiger *et al.* regarding wind currents near the ground – perhaps information relevant to Dr. Georgopolous' opinions, but nonetheless not included in his report. A review of both the "List

[sic] Documents Reviewed by P.G. Georgopolous" found at page 64 of his Report, and the "Bibliography" found at pages 60-63 of his Report, demonstrate that this citation was <u>not</u> included in his Report. *See*, Def. Mot. at Ex. A at 64; 60-63. Exhibit E is the June 3, 2015 deposition transcript of Dr. Lloyd Schulman, one of Defendants' experts- another item clearly not considered by Dr. Georgopolous in preparing his Report, because Dr. Schulman's deposition had not yet been taken. There are also numerous references in Dr. Georgopolous' Declaration to exhibits contained in a <u>separate</u> declaration by Plaintiffs' Counsel David Cedar, Esquire, included as part of Plaintiffs' Response - nearly all of which were items <u>not</u> considered or identified by Dr. Georgopolous in his Report.[2] (Doc. No. 788-19). These include, but are not limited to, various eyewitness accounts of conditions near the derailment. *Id*.

In addition to Dr. Georgopolous' Declaration, Plaintiffs' Response itself represents another attempt to improperly supplement Dr. Georgopolous' March 20, 2015 Report. Plaintiffs spend almost the entirety of their Response criticizing Defendants' experts, and supplementing Dr. Georgopolous' previous opinions with a multitude of previously available, but undisclosed, citations. Section D of Plaintiffs' Response incorporates information not previously identified by Dr. Georgopolous to corroborate his opinions, and Plaintiffs' attempts to explain Dr. Georgopolous' methodology reference his Declaration. However, a review of the referenced paragraphs shows that they are simply criticisms of Defendants' experts. (*See*, Pls. Resp. at 8-9; Geo. Dec. at ¶¶ 25-26). At Section E, Plaintiffs counter Defendants' critique of Dr. Georgopolous' methodology with respect to terrain variation by claiming that he employed the same terrain as Defendants' experts - again, not explaining why Dr. Georgopolous is correct, but

---

[2] Of the 49 separate exhibits/references made in Plaintiffs' Response, including the Declarations of Dr. Georgopolous, David Cedar, Esquire, and Mark Cuker, Esquire, approximately 44 exhibits were not previously identified by Dr. Georgopolous in his March 20, 2015 Report.

3

rather impermissibly criticizing Defendants' experts' methodologies. Section F attempts to refute various data available from the derailment, in light of Defendants' criticism of Dr. Georgopolous' failure to compare his results to existing data. Dr. Georgopolous cites to additional, previously unconsidered information in opposition to Defendants' challenge to his claim that contemporaneous data was unreliable, including an undated report by Plaintiffs' Expert, Dr. Brian Buckley, which was <u>not</u> among the information Dr. Georgopolous identified in his Report, and acts as a supplement to his original Report. *See*, Def. Mot.at Ex. A, at 64. Sections G and H act as additional, improper supplementation of Dr. Georgopolous' Report, rather than refutation of his methodological deficiencies raised by Defendants. Plaintiffs' basis for the minimal arguments included as support for Dr. Georgopolous' opinions (rather than the lengthy criticism of Defendants' expert they engage in instead) in these sections again largely references Dr. Georgopolous' Declaration, and cites to a variety of scientific articles and treatises not previously disclosed by Dr. Georgopolous in his Report. *See*, Geo. Dec. at ¶¶ 11, 12, 14, 15-18, 19; Def. Mot.at Ex. A, at 64.

Statements such as those highlighted above, which are by no means an exhaustive list of the improper supplementation by Plaintiffs of the Report of Dr. Georgopolous found in both Dr. Georgopolous' Declaration and Plaintiffs' Response, constitute nothing more than an impermissible attempt to bolster Dr. Georgopolous' existing opinions to correct his already inadequate Report. While Fed. R. Civ. P. 26(e) recognizes that parties have an obligation to supplement expert reports in a timely manner if the party learns that in some material respect the report is incomplete or incorrect, such supplemental disclosures are "only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report. …" *Sancom, Inc. v. Quest Comm. Corp.*, 683 F.Supp.2d 1043, 1062-63 (D.S.D. 2010).

A supplemental report may be rejected where it is offered to rebut an argument raised in a summary judgment motion, or was served merely because a party simply wished to supplement." *In re Asbestos Liability Lit.*, 289 F.R.D. 424, 425-26 (E.D. Pa. 2013). In addition, "it is not sufficient that opposing parties have the supplemental report in hand now before trial. The intent of the rule is to ensure that deposition testimony can proceed with parties already armed with the expert's report, so as to be able to evaluate the opinions to be offered." *Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M.). To permit such unfettered supplementation "would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Id.*, at 701. All of this would also interfere with the Court's ability to set case management deadlines, "because new reports and opinions would warrant a new round of consultation with one's own expert and virtually require new rounds of depositions." *Id.*, at 701-02.

Dr. Georgopolous' Declaration, and Plaintiffs' Response itself, are not attempts to remedy inadvertent factual errors or amend his report based on information not previously available to him. Rather, he is specifically trying to wholesale supplement his opinions as well as fill the numerous gaps in his March 20, 2015 report that were brought to light during his deposition. As a result, his Declaration should be stricken from the record pursuant to Rule 26(e) and this Court's Scheduling Order of November 13, 2014.

## II. **Dr. Georgopolous' Expert Opinions Are Not Admissible**

### A. Dr. Georgopolous is not qualified to offer an expert opinion.

Defendants' Motion contends that Dr. Georgopolous' Report and deposition testimony underscore his lack of qualification in the area of dense gas modeling. Despite Plaintiffs'

arguments to the contrary, Dr. Georgopolous admitted during his deposition that he has never published in the area of dense gas modeling, and the work that he has performed did not involve vinyl chloride. Def. Mot.at Ex. C, 46-47; 50-51.  Plaintiffs' Response spends more than two and a half pages proclaiming Dr. Georgopolous' credentials, with a large portion of those pages emphasizing Dr. Georgopolous' work on the "Achilles" project- a project that Dr. Georgopolous admitted was never published. Plaintiffs' contention that the ACHILLES project, because it reviewed tank car leaks among the many scenarios analyzed, and analyzed a variety of substances which were not vinyl chloride, stands as paramount evidence of Dr. Georgopolous' expertise in the area of dense gas modeling. In fact, his work on the ACHILLES project does no such thing, as his testimony demonstrates.

> A. [ACHILLES] involved looking at the variety of scenarios and the way hazardous chemicals could spill either from a fire, an accident, traffic, transportation accident and so on.
>
> Q. And that included leaks from railroad tank cars?
>
> A. Yes. Not specifically vinyl chloride. I think we were looking at things like chlorine. But we looked at a variety of things when things are happening.
>
> Q. Was that work written up and published?
>
> A. That was done for a very ambitious state system that unfortunately did not continue after a change in administration.

Def. Mot.at Ex. C, at 46:17-24; 47:1-11.

Plaintiffs' continued attacks on Defendants' experts and their credentials on dense gas modeling merely underscore Plaintiffs' poorly veiled and improper attempts to distract the Court from the issues properly raised by Defendants in their Motion- Dr. Georgopolous' lack of experience. To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc*., 300

F.3d 325, 335 (3d Cir. 2002) (*quoting Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). Despite Plaintiffs' protestations, Dr. Georgopolous has not met the standards for admissibility set forth in *Daubert* and its progeny. Dr. Georgopolous' opinions will not assist the trier of fact. *See, e.g., Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987). His inexperience with vinyl chloride, coupled with the use of a model that grossly overestimates the dispersion of the vinyl chloride following the derailment, reflect his lack of requisite expertise in the area of vinyl chloride modeling. He lacks the specialized knowledge needed to provide opinions in this matter pursuant to Rule 702, and opinions regarding vinyl chloride dispersion and estimated exposure levels must be excluded.

### B. Dr. Georgopolous Failed to Properly Account for Wind Speed And Direction in His Model

A primary defect in Georgopolous' methodology is his utilization of hourly windspeeds and directions to measure concentrations of vinyl chloride following the derailment to conclude that the winds were "calm" following the chemical release. Neither Georgopolous nor Plaintiffs do anything to effectively rebut this criticism. His "rebuttal," as it were, fails to acknowledge that even when winds are deemed to be "calm," by METAR observations, they can still be responsible for significant transport of the vinyl chloride cloud. Schulman Decl., ¶17. Additionally, winds from Philadelphia International Airport, measured every two minutes, indicated persistent winds ranging from 1 to 4 knots in the first 90 minutes after the accident. *Id.*, ¶ 18. A windspeeed of less than 3 knots is considered "calm." Id., ¶ 17.

Thus, Dr. Georgopolous' use of hourly wind speed is arbitrary, and his methodology represents precisely the type of speculation and conjecture that *Daubert* and Rule 702 are meant to guard against, and they must be excluded. *See*, *Daubert*, 509 U.S. at 590, ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation.").

1. **<u>Dr. Georgopolous' Methodology Fails to Properly Account for The Thermodynamics of the Vinyl Chloride At the Time of the Release</u>**

Section D of Plaintiffs' Response incorporates: (a) information not previously identified by Dr. Georgopolous to corroborate his opinions- including the Raelynn Stevenson statement to the NTSB, deposition testimony of Mark Mather, deposition testimony of Wilbert Den Ouden, and transcripts of radio communications during the response[3]; and (b) repeated criticisms of the methodology of Defendants' experts. Plaintiffs' attempts in Section D to explain Dr. Georgopolous' methodological concerns raised by Defendants reference Dr. Georgopolous' Declaration as support for their arguments, but a review of the referenced paragraphs finds them to be criticisms of Defendants' experts as well, rather than evidence from Dr. Georgopolous' Report or testimony to counter Defendants' critiques. *See*, Pls. Resp. at 8-9; Geo. Dec. at ¶¶ 25-26.

Nothing in Plaintiffs' Response to this topic renders Dr. Georgopolous' opinions to be reliable. The inclusion of numerous items as "evidence" supporting his opinions, all of which were available to Dr. Georgopolous for review at the time he prepared his Report, but that he did not consider, is improper. This further underscores the impropriety of Plaintiffs' Response, and acts as further acknowledgement by Plaintiffs that Dr. Georgopolous' Report and opinions were insufficient under Rule 702 and *Daubert*. Dr. Georgopolous' Report and opinions must be excluded accordingly.

---

[3] Plaintiffs will undoubtedly note that Dr. Georgopolous does identify the Paulsboro Police Report as part of the items he reviewed (*see* Def. Mot. at Exhibit A, at 64), but the statement attributed in Plaintiffs' Response to Raelynn Stevenson was not included in the Paulsboro Police Report, making this information previously unconsidered by Dr. Georgopolous. (*See*, Pls. Resp. at 11).

### 2. Dr. Georgopolous' Methodology Fails to Properly Account for Terrain Variation In the Dispersion of the Vinyl Chloride Following the Derailment

Dr. Georgopolous' methodology remains flawed for failure to appropriately capture terrain variation in his model, which impacts the dissipation rate and movement of the vinyl chloride. For dense gas modeling, terrain is critical in properly simulating transport and dispersion. Def. Mot. at Ex. D. Plaintiffs' comments as to Defendants' experts' methodologies are a misplaced attempt to justify Dr. Georgopolous' flawed exclusion of Mantua Creek. A creek, river or ravine can contain the dense gas for an extended period, and affect the dispersion of the gas. *Id*. The Mantua Creek channel is a primary driver of the dense gas dispersion in this case and cannot be ignored or dismissed as Dr. Georgopolous has done. Schulman Decl., ¶ 23. The Delaware River current issue raised by Dr. Georgopolous also acts an additional distraction from his poor methodology, and he fails to mention that he did not consider it either. *See*, Def. Mot. at Ex. B. The fact that the Delaware River is larger than Mantua Creek is not relevant because the dense gas was not released over the Delaware River. The critical points missed by Georgopolous are the settling of the dense gas which is released within the creek channel, and the subsequent sheltering by the wind.

### 3. Dr. Georgopolous Failed to Test His Results Against Available Air Monitoring Data From the Derailment and His Report and Opinions Are Inherently Unreliable Because They Are Inconsistent With Actual Air Monitoring Data

Dr. Georgopolous' methodology failed to consider available air monitoring data. Section F of Plaintiffs' Response attempts to refute the various data available from the derailment, in light of Defendants' criticism of Dr. Georgopolous' failure to compare his results to existing data, but does nothing to address Dr. Georgopolous' admitted inconsistency on this point:

> Q. You start off by saying that there's very limited monitoring that took place, and then you talk about the NTSB references some monitoring, but you didn't look at that monitoring.
>
> A. I did not have information on the specifics. Maybe information is out there, but I did not have that. I'm not sure.

Def. Mot.at Ex. C, at 69:19-24; 70:22-24; 71:1.

Plaintiffs' statement that Dr. Georgopolous is permitted to reject data that he found to be unreliable is true- but that does not disguise the fact that Dr. Georgopolous largely ignored all available data, rather than rejecting it. Plaintiffs' arguments to the contrary, including their continued, misplaced criticism of Defendants' experts when it is Dr. Georgopolous' methodology at issue, are baseless. Dr. Georgopolous <u>did not</u> refute this data in his Report, and <u>could not</u> refute it during his deposition, other than to vaguely claim that he understood it to be unreliable. Def. Mot.at Ex. C, at 152-155. Now he claims that the data is unreliable and that is why he did not consider it, and cites to additional, previously unconsidered information as support for this argument, including an undated report by Plaintiffs' Expert, Dr. Brian Buckley, produced by Plaintiffs on March 23, 2015, which was <u>not</u> among the information Dr. Georgopolous identified in preparing his Report. Def. Mot.at Ex. A, at 64.

Plaintiffs' Response indicates that the EPA data referenced by Defendants in their Motion to Exclude Dr. Georgopolous was a "draft" of data from the EPA that "was completely erroneous, and quickly corrected". *See*, Pls. Resp. at 12. Aside from the fact that Plaintiffs have utterly no support for their claim that the data was either erroneous or corrected, a review of the data referenced by Defendants, and the emails attached to them as part of the EPA Air Monitoring Summary available from the NTSB, demonstrate that the data itself was not a "draft", but rather the summary table the data was a part of. *See*, Ex. A to Dec. of Mark Cuker, Esquire, from Pls. Resp. (NJDEP-0998).

All of this information and statements by Plaintiffs represent improper supplementation of Dr. Georgopolous' Report and opinions and does nothing to refute Defendants' argument that Dr. Georgopolous' methodology is flawed for failure to include available, contemporaneous data.

### 4. Dr. Georgopolous' Methodology Fails to Properly Estimate Potential Degradation Products of the Vinyl Chloride At the Time of the Release

Sections G and H of Plaintiffs' Response are almost entirely comprised of a lengthy critique of Defendants' expert's methodology on degradation products- a subject clearly not properly raised here. Pages 8 through 12 of Dr. Georgopolous' Declaration, and pages 15 through 18 of Plaintiffs' Response also reference numerous citations to scientific articles and treatises Dr. Georgopolous neither cited to, nor arguably considered, in preparing his Report. This information was not disclosed in his report, and certainly would have been a subject of inquiry at his deposition. Sections G and H act as additional, improper supplementation of Dr. Georgopolous' Report, and are more properly the subject of a *Daubert* challenge to Defendants' experts, rather than as part of Plaintiffs' Response as to Dr. Georgopolous' methodological deficiencies. Plaintiffs' support for the arguments in these sections again largely reference Dr. Georgopolous' Declaration, and cite to a variety of scientific articles and treatises not previously disclosed by Dr. Georgopolous in his Report. *See*, Geo. Dec. at ¶¶ 11, 12, 14, 15-18, 19; Def. Mot.at Ex. A, at 64. There is no information now cited by Dr. Georgopolous on this topic that was unavailable to him at the time he prepared his Report. His failure to do so, and Plaintiffs' impermissible attempts to now rehabilitate those opinions, further calls into question the methodology he employed in preparing his Report, and the validity of the opinions that he previously expressed.

## **CONCLUSION**

Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc., respectfully request that this Honorable Court exclude the proffered expert testimony of Panos G. Georgopolous, M.S., Ph.D.

          Respectfully Submitted,

          */s/ Brian D. Pagano*
          Brian D. Pagano, Esquire
          BURNS WHITE LLC
          1800 Chapel Avenue West, Suite 250
          Cherry Hill, NJ  08002
          (856) 382-6006
          Email: *bdpagano@burnswhite.com*

          *Attorney for Defendants,*
          *Consolidated Rail Corporation, Norfolk Southern*
          *Railway Company and CSX Transportation, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2015, a copy of the within Reply Memorandum in Support of Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation Inc.'s Reply to Plaintiffs' Response to Defendants' Memorandum of Law in Support of Motion to Exclude Expert Testimony of Plaintiffs' Expert, Panos G. Georgopolous, was served on all counsel of record via efile.

                                                                  BURNS WHITE LLC

By:    */s/ Brian D. Pagano*
          Brian D. Pagano, Esquire
          1800 Chapel Avenue West, Suite 250
          Cherry Hill, NJ  08002
          (856) 382-6006

*Attorneys for Defendants,
Consolidated Rail Corporation, Norfolk
Southern Railway Company, and CSX
Transportation, Inc.*