**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

| | | |
|---|---|---|
| **IN RE:** | : | **MASTER DOCKET NO.:** |
| **PAULSBORO DERAILMENT** | : | **13-CV-784 (RBK/KMW)** |
| **CASES** | : | |
| | : | 1:12-CV-07468-RBK-KMW (Breeman) |
| | : | 1:12-CV-07747-RBK-KMW (Lord) |
| | : | 1:13-CV-03350-RBK-KMW (Everingham) |
| | : | 1:13-cv-03244-RBK-KMW (Morris) |
| | : | 1-13-cv-04569-RBK-KMW (Johnson) |
| | : | 1:13-cv-05763-RBK-KMW (Truluck) |
| | : | 1:13-cv-07410-RBK-KMW (Smith) |

---

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF PLAINTIFFS' EXPERT STEPHEN M. TIMKO**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

LAW AND ARGUMENT ........ 1

I. Plaintiffs fail to demonstrate that Timko is qualified to offer many of the opinions he expresses. ........ 1

II. Plaintiffs fail to demonstrate that Timko's opinions are based on reliable methodologies or principles. ........ 5

a. Training Regarding Inspections and Rule 241(d) ........ 6

b. Access to Shipping Papers ........ 8

c. Education of First Responders and Local Community ........ 9

d. List of Qualified Bridge Inspectors ........ 10

e. Criticisms of the Dispatcher ........ 10

III. Plaintiffs fail to demonstrate a sufficient factual basis for Timko's opinions ........ 11

a. Training Regarding 49 C.F.R. § 217 ........ 11

b. Crew Training Regarding Bridge Inspection ........ 12

c. Criticism of Supervisor of Structures ........ 13

d. Other Opinions Lacking Factual Basis ........ 14

CONCLUSION ........ 15

# **TABLE OF AUTHORITIES**

## **Cases**

*Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593 (3d Cir. 1998) .............. 3

*Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521(3d Cir. 2008) ............... 6

*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) .......... 11

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) .............................. 6

*Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881 (W.D. La. 2001) ........................................................................................... 4

## **Statutes**

49 C.F.R. ¶¶ 240.1(b), 242.1(b) ........................................................ 8

49 C.F.R. § 217 ........................................................................................ 11

## INTRODUCTION

Plaintiffs have failed to show that Timko is qualified to give opinions regarding the maintenance and operation of movable bridges or the training of employees to inspect movable bridges. Plaintiffs also fail to demonstrate that Timko's opinions have a reliable foundation or are based on the facts of this case. Plaintiffs' memorandum in opposition is based largely on mischaracterizations of the Railroad Defendants' arguments, as well as inaccurate or overgeneralized representations of the facts. Moreover, Plaintiffs completely ignore many of the arguments asserted by the Railroad Defendants. As previously demonstrated by Defendants, Timko's opinions should be excluded from the trial of these cases.

## LAW AND ARGUMENT

### I. Plaintiffs fail to demonstrate that Timko is qualified to offer many of the opinions he expresses.

As set forth in Defendants' initial brief, Timko admitted that he is not qualified to render opinions on several of the issues covered by his expert report and affidavit. Contrary to Plaintiffs' argument, Defendants have never contended that Timko might not be qualified to testify in some areas relating to railroad operations or practices. However, by his own admission, he is not qualified to address many of the subjects detailed in his report and affidavit. See Timko Dep. 57:2-11, 140:21-141:9, 176:6-15, 183:20-185:12;

192:18-193:5, 214:24-215:8 (admitting that he has no expertise in the operation of bridges, bridge locking devices, signal operations, or bridge inspection requirements). Tellingly, on p. 5 of their brief, Plaintiffs list the areas in which they contend Timko has some experience and/or expertise: "This includes knowledge of train dispatching functions, railroad radio rules and operations, railroad air brake and train handling rules and instructions, and railroad signal names, aspects, and indications, and Conductor and Engineer Certification Programs. Additionally, Mr. Timko has substantial experience and training in Hazardous Materials Requirements pertaining to shipping papers, train placement, and other portions of the Code of Federal Regulations governing Hazardous Materials." Plts. Mem. p. 5. Noticeably absent from this list is any reference to movable bridges, inspections of locks on movable bridges, or training in these subjects. Plaintiffs have essentially conceded Timko's lack of qualifications in these areas.[1]

Instead of addressing the Railroad Defendants' argument regarding Timko's complete lack of qualification with respect to movable bridges, Plaintiffs simply argue at length about his general experience in railroad

[1] Plaintiffs also over-reach in their suggestion that Timko is a certified engineer and previously worked as a conductor. Timko has never held seniority in either craft. He testified he worked as an engineer on a "tourist railroad" for a friend for one summer, and only worked as a conductor briefly during strike duty. Timko Dep. 65:4-15, 70:1-23. He has no experience doing the engineer or conductor jobs such as those done by Mather and Den Ouden at the time of the derailment.

operations. They ignore the fact that he has never trained employees to inspect locks on a movable bridge. Timko Dep. 129:20-132:15. Moreover, contrary to Plaintiffs' assertion, Timko testified he has never trained employees, or developed lesson plans for training employees, regarding NORAC Rule 241(d). Timko Dep. 149:7-150:1.

Timko admits that he does not have any experience inspecting the locks on a movable bridge like the one at Paulsboro. Timko Dep. at 130:21-131:1. While Plaintiffs state that Timko was once trained to operate a movable bridge in Cleveland in 1965, they conveniently omit Timko's admission that the Cleveland Bridge was "totally different" from the Paulsboro Bridge. *Id*. at 130:2-20; 258:5-259:5. That bridge was a manned bridge operated by a bridge tender and had an entirely different type of locking mechanism. *Id*. The fact that Timko may have been trained to operate a completely different type of bridge more than 4 decades ago does not render him qualified to offer opinions about the operation of the automated Paulsboro Bridge or the training provided to crews operating trains across it.

Plaintiffs erroneously rely on *Lauria v. Nat'l R.R. Passenger Corp*., 145 F.3d 593 (3d Cir. 1998), to show that Timko's general knowledge of railroad operations qualifies him to offer opinions on movable bridges

despite his complete lack of experience in that area. Unlike Timko, the plaintiff's expert in *Lauria* had actual experience and specialized knowledge in the area in which his expert opinions were offered. In that case, the plaintiff sought to offer a railroad safety consultant as an expert in track maintenance who would provide opinions regarding the defendant's inspection and maintenance of tracks in the area where a railroad employee was injured. The court noted that plaintiff's expert had experience as a railroad maintenance of way supervisor, which included oversight of maintenance of the track structure, installation of rail ties, and safe maintenance of the areas of work. As such, the court concluded this experience qualified him to offer opinions regarding the railroad's responsibility to inspect and maintain track in a safe condition.

In contrast to the expert in *Lauria*, Timko has a complete lack of experience or specialized knowledge regarding movable bridges like the Paulsboro Bridge. He should not be permitted to offer opinions in an area where he admits that he has no expertise or experience. *See, e.g., Verzwyvelt v. St. Paul Fire & Marine Ins. Co*., 175 F. Supp. 2d 881, 886 (W.D. La. 2001)(refusing to qualify coroner, who admittedly had no expertise with listeria infections, as an expert offering opinions regarding listeriosis as being the likely cause of the decedent's death). Although Plaintiffs claim

that it is improper to exclude an expert because he may not be the "best qualified," Defendants have made no such argument here. Defendants do not seek to exclude Timko's opinions because he is not the "best qualified." Rather, Timko's opinions should be excluded because he has admitted that he is not at all qualified to offer opinions with respect to movable bridge operations, inspections, or training.

## II. **Plaintiffs fail to demonstrate that Timko's opinions are based on reliable methodologies or principles.**

Plaintiffs also completely mischaracterize Defendants' argument regarding the lack of a reliable basis for Timko's opinions. Contrary to Plaintiffs' assertion, Defendants do not contend that Timko's opinions must be based exclusively upon federal regulations or NORAC Rules.[2] Rather, Defendants contend that Timko's opinions must be based on something other than his *ipse dixit*. Even a non-scientific opinion should be excluded as unreliable if the expert cannot provide any methodology used to reach his opinions and he cannot identify any industry standards, obligation, or other

[2] Plaintiffs' also incorrectly claim that regulatory compliance does not preclude a finding of negligence under New Jersey law. Regardless of whether that may be true in other areas, it is not true concerning claims involving railroads. As set forth in Defendants' preemption briefs, compliance with federal regulations governing railroad operations preempts state law negligence claims. Regardless, even if regulatory compliance did not preclude a negligence claim, Timko's opinions must still be based on an appropriate methodology.

duties that support his opinions. *Murray v. Marina Dist. Dev. Co*., 311 F. App'x 521, 524 (3d Cir. 2008).

The Advisory Committee notes to Rule 702 cited by Plaintiffs do not grant experts *carte blanche* to render *ipse dixit* opinions under the guise of experience. The notes expressly state:

> [i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

F.R.E. 702 advisory committee's note (2000 amends.) In evaluating the advisory committee's notes on experience-based opinions, the Eleventh Circuit has stated that "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

a. Training Regarding Inspections and Rule 241(d)

Plaintiffs have not pointed to any reliable basis for Timko's opinions that the train crew was not properly qualified to inspect a movable bridge under Rule 241(d) or that the crew should have inspected the bridge twice. While Plaintiffs claim that Timko has "referred" to NORAC Rule 241(d) for the basis of his opinions, they offer no explanation of how this rule actually

supports them. NORAC 241(d) only provides that a "qualified employee must determine that the rails are properly lined and the bridge is safe for movement before verbal permission is given to pass the signal . . . ." There is nothing in Rule 241(d) that would preclude a conductor or engineer qualified in accordance with the federal regulations from being the "qualified employee" referenced in the rule. Further, there is nothing in the rule or regulations stating that a movable bridge must be inspected twice before the crew begins to travel across the bridge.

Timko repeatedly confessed that he cannot point to any actual regulation, rule, or standard that Conrail violated with respect to bridge inspections or training. Timko Dep. 174:19-176:21, 224:15-227:8. Additionally, as noted above, Timko has admitted that he has no experience with regard to inspecting automated movable bridges or in training railroad employees inspecting the locks on automated movable bridges. *Id*. at 74:16-75:6, 130:2-131:15, 128:17-20; 148:22-150:1. Plaintiffs point to absolutely nothing of relevance as an objective and reliable foundation for Timko's bridge lock inspection and operation opinions.

Rather than address the *ipse dixit* nature of Timko's opinions, Plaintiffs argue that neither federal regulations nor the NORAC Rules define "qualified employee" for purposes of Rule 241(d). Plts. Mem. pp. 27-29.

But this has nothing to do with providing a factual basis for Timko's opinions, which still must be based on something in order to be admissible. Moreover, as previously noted by Defendants, federal regulations do define "qualified", and specify that a conductor or engineer is "qualified" when he or she has completed all testing and training required under the railroad's training program that has been submitted to the FRA. See 49 C.F.R. ¶¶ 240.1(b), 242.1(b).[3] Plaintiffs cite no evidence that such training was not provided to Den Ouden and Mather, the employees whose conduct they challenge in this case. The fact that they, and perhaps Timko, feel that the training should have been provided in a classroom rather than in the field is irrelevant given Plaintiffs and Timko's inability to cite any legal requirement that the training be done in this manner.

b. Access to Shipping Papers

Plaintiffs have also failed to show any objective basis for Timko's opinion that the dispatcher should have had "instant access" to the shipping papers. While Plaintiffs point to NORAC Rule 119 as the basis for this

[3] Plaintiffs' contention that Defendants are being "intentionally deceptive" by pointing out and relying upon the federal regulations defining "qualified" is unwarranted and offensive. There is nothing deceptive about citing and relying upon federal regulations that provide the only definition cited by either party of who is qualified under federal law. If Plaintiffs are unhappy with how federal regulators have defined "qualified" in the regulation, they should direct their ire at the drafters of the regulation, and not engage in unwarranted accusations of Defendants.

opinion, this rule does not require "instant access" to shipping papers. Rather, Rule 119 only requires that the dispatcher "must have available" the shipping papers. Timko's opinion that the dispatcher was required to have "instant access" to the shipping papers at his desk is not based on Rule 119, any industry standards, or any other objective basis. Timko Dep. 151:7-153:23. Instead, it is based solely on his *ipse dixit* or his "Timko Rules." Moreover, as Plaintiffs' concede, compliance with the rule they reference "obviously would not have avoided the derailment." Plts. Mem. p. 32. Accordingly, Timko's opinion on this subject is irrelevant and would violate Rule 403, FRE.[4]

c. Education of First Responders and Local Community

Plaintiffs have not even attempted to address Timko's lack of an objective basis for his opinion that Conrail had a duty to educate first responders, political officials, and local residents concerning the transportation of hazardous cargo in the area. As such, the Court should deem this as an admission that Timko's opinions in this area lack any basis and should be excluded from admission at trial.

---

[4] The same is true for the other "post-derailment" conduct referenced by Plaintiffs in their brief. As there is no argument that any of this post-derailment conduct was causal either with respect to the derailment or any injuries and damages claimed by Plaintiffs, it is irrelevant and should be excluded.

d. List of Qualified Bridge Inspectors

Timko's opinion that Conrail should have maintained a list of employees that were qualified to inspect the movable bridge under NORAC Rule 241(d) is also without a reliable basis. There is nothing in Rule 241(d) that requires Conrail to maintain a list of qualified employees specific to that rule, and Timko does not cite any other objective basis for his opinion that such a list should have been maintained. Moreover, Plaintiffs' argument misses the mark. All engineers and conductors operating on the Penns Grove Secondary must be qualified to work on that line, and Conrail does maintain a list of these employees. Further, Conrail training provides that engineers and conductors are considered "qualified employees" for purposes of Rule 241(d) provided they are willing to accept the responsibility. Havlicek Dep. 211:3-212:9. Thus, Conrail did not need to maintain any separate lists, and Plaintiffs and Timko cite no basis for Conrail to have done anything more.

e. Criticisms of the Dispatcher

Timko also has no support for his opinion that the dispatcher had a duty to inquire about the conductor's qualifications and training. There is nothing in Rule 241(d), the federal regulations, the NORAC operating rules, or industry standards that require a dispatcher to ask a qualified conductor

about his training or qualifications with respect to inspecting movable bridge locks or anything else. This is just another of example Timko basing his opinion on a "Timko Rule."

## III. <u>Plaintiffs fail to demonstrate a sufficient factual basis for Timko's opinions</u>.

It is an abuse of discretion to admit expert opinions which are based on assumptions lacking any factual foundation in the record. *Stecyk v. Bell Helicopter Textron, Inc*., 295 F.3d 408, 414 (3d Cir. 2002). Timko's failure to tie many of his opinions to the facts of these cases renders many of his opinions inadmissible.[5]

### a. <u>Training Regarding 49 C.F.R. § 217</u>

Timko opines that Conrail failed to train its management staff how to comply with the efficiency check requirements of 49 C.F.R. § 217. However, Timko does not rely on any evidence or testimony regarding the training that the management staff received regarding how to conduct efficiency checks. Rather, Timko relies on an FRA inspection from nearly four years prior to this accident in which the FRA indicated that some

[5] It is also improper for Timko or Plaintiffs, as they have done repeatedly in their briefing, to rely upon the NTSB Board report as the basis for any of the opinions expressed or arguments they make. By federal law, the NTSB board report may not be used for any purpose in connection with a civil case relating to the investigation. 49 U.S.C. § 1154(b). For this reason alone, the Court would be justified in striking Plaintiffs' responses and excluding their experts.

Conrail supervisors were not performing required efficiency checks. Timko Dep. 162:10-165:20. Given that the incident referenced by Timko occurred in 2008, Timko admits that Conrail took proper action in response to the deficiencies noted by the FRA by replacing the involved supervisors, and there is no evidence the issues reoccurred, Timko Dep. 166:3-168:24, there can be no legitimate argument that this incident had any relation to what occurred at Paulsboro.

Curiously, Plaintiffs also assert that Timko's opinions regarding Conrail's alleged failure to properly train supervisors to conduct efficiency checks is somehow supported by their allegation that the dispatcher did not inquire as to Den Ouden's qualifications. Plts. Mem. pp. 35-36. Aside from the fact that the dispatcher had no such duty to inquire into the training of a qualified conductor, Timko never testified that this was a basis for his opinions regarding 49 C.F.R § 217.

b. Crew Training Regarding Bridge Inspection

In addition to Timko's lack of expertise or an objective methodology, Timko's opinions regarding training of employees to inspect movable bridges are not supported by a factual basis. Plaintiffs have misrepresented Timko's testimony regarding the purported factual basis for his opinions. Contrary to Plaintiffs' argument, Timko did not testify that Mather or Den

Ouden were not qualified because of a lack of "formal training." Rather, Timko testified that the crew did not receive proper training because the Conrail employees that provided the training were not properly qualified to train them. Timko Dep. 172:24-173:13.

Timko admits that both Mather and Den Ouden received specific on-the-job training as to how to inspect the Paulsboro movable bridge. Timko Dep. 169:9-172:2. Timko admitted that on-the-job training is a proper method for training employees. *Id*. at 169:9-172:2. However, Timko questioned whether the persons who trained Den Ouden or Mather were properly qualified. *Id*. at 173:12-14. ("was the trainer qualified is my – my question"). Yet Timko readily admitted that he knew nothing about the qualifications of the employees who trained Den Ouden or Mather. Timko Dep. 174:7-18. Without any such facts, Timko has no basis for an opinion that Den Ouden and Mather were not properly trained or qualified to inspect the locks on the bridge by virtue of the fact that the trainers were not qualified.

c. Criticism of Supervisor of Structures

Timko's opinion that Ryan Hill was not "adequately informed" about the freight being carried over the bridge lacks a sufficient basis because it is

based on a mischaracterization of Hill's testimony.[6] Hill testified at deposition that he knew that Conrail was transporting hazardous materials on trains that traveled over the bridge. Hill Dep. 134:10-136:3. Whether Hill knew the exact contents of these hazardous materials is irrelevant. His duties as supervisor of structures were to ensure proper maintenance of bridges. *Id*. at 12:14-24. Hill's job did not depend on knowing the exact nature of the hazardous materials being transported.

d. Other Opinions Lacking Factual Basis

Plaintiffs have not addressed Defendants' arguments regarding the factual deficiencies in Timko's opinions in the following areas: 1) Conrail's training of first responders and local community members; 2) Conrail's actions in dealing with prior issues with the bridge; 3) Conrail's prior discipline of Den Ouden; and 4) Conrail's risk analysis of the Penns Grove Line. As such, the Court should deem this as an admission that Timko does not have a proper factual foundation for his opinions in these areas and they should be excluded.

[6] Moreover, it is ironic that Plaintiffs and Timko press such an unfounded argument given that one basis for their punitive damages claim is the fact that Hill allegedly failed to act appropriately despite knowledge of the hazardous materials being carried over the Paulsboro Bridge.

## CONCLUSION

The Railroad Defendants respectfully submit that the court should exclude the expert testimony of Stephen Timko.

Respectfully Submitted,

*/s/ Brian D. Pagano*

Brian D. Pagano, Esquire
BURNS WHITE LLC
1800 Chapel Avenue West, Suite 250
Cherry Hill, NJ 08002-4803
(856) 382-6012
Email: bdpagano@burnswhite.com

*Attorney for Defendants,
Consolidated Rail Corporation,
Norfolk Southern Railway Company
and CSX Transportation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2015, a copy of the within Memorandum in Support of Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation Inc.'s Memorandum of Law in Support of Motion in Limine to Exclude the Expert Testimony of Stephen M. Timko, was served on all counsel of record via efile.

*/s/ Brian D. Pagano*

Brian D. Pagano, Esquire
BURNS WHITE LLC
1800 Chapel Avenue West, Suite 250
Cherry Hill, NJ 08002-4803
(856) 382-6012
Email: bdpagano@burnswhite.com

*Attorney for Defendants,*
*Consolidated Rail Corporation,*
*Norfolk Southern Railway Company*
*and CSX Transportation, Inc.*