UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| IN RE PAULSBORO DERAILMENT CASES | : : : : : | MASTER DOCKET NO.: 1:13-CV-784 (RBK/KMW) |
| RONALD MORRIS, *et al.* Plaintiffs, v. CONSOLIDATED RAIL CORPORATION, *et al.*, Defendants. | : : : : : : : : : : : | CIV NO. 1:13-cv-03244 (RBK/KMW) |

**Plaintiffs' Brief in Support of their
Motion to Exclude the Expert Report and
Opinion of Dale Panzer, M.D. regarding "Secondary Gain"**

# TABLE OF CONTENTS

PAGE

Table of Authorities………………………………………………………….  iii

Rule………………………………………………………………………..  iv

I.    Facts…………………………………………………………………  1

II.   Argument……………………………………………………………..  2

    A.   Dr. Panzer's secondary financial gain opinion will not help the jury……………………………………………………  2

    B.   Dr. Panzer's opinion regarding secondary financial Gain should be excluded because it is not reliable…….  7

III.  Conclusion………………………………………………………....  10

Certificate of Service…………………………………………………..  11

## TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---|
| *Bartak v. Bell-Galyardt & Wells, Inc.*<br>629 F.2d 523 (8th Cir. 1980) | 2 |
| *Daubert v. Merrell Dow Pharmaceuticals*<br>509 U.S. 579 (1993) | 3 |
| *General Elec. Co. v. Joiner*<br>522 U.S. 136 (1997) | 9 |
| *Nimely v. City of New York*<br>414 F.3d 381 (2d Cir. 2005) | 5, 6 |
| *United States v. French*<br>12 F.23d 114 (8th Cir. 1993) | 5 |
| *United States v. Frazier*<br>387 F.3d 1244 (11th Cir. 2004) | 3 |
| *United States v. Ganadonegro*<br>805 F.Supp.2d 1188 (D.N.M. 2011) | 4 |
| *United States v. Hill*<br>749 F.3d 1250 (10th Cir. 2014) | 5 |
| *United States v. Rouco*<br>765 F.2d 983 (11th Cir. 1985) | 3 |
| *United Transp. Union v. Birmingham Southern Ry. Co.*<br>2014 WL 1338155 (N.D.Ala. Mar. 31, 2014) | 3 |

## RULES

Fed.R.Evid. 702                                                                2, 5, 6

I.      **Facts**

Defendants engaged Dale Panzer, M.D., a psychiatrist, to review the records of certain plaintiffs in these cases and to provide expert opinions within his area of expertise. One such plaintiff whose records Dr. Panzer reviewed is Ronald Morris, a Paulsboro resident who had been exposed to vinyl chloride from the Paulsboro train derailment. Dr. Panzer's expert report regarding plaintiff Morris is attached as Exhibit A.

In his report, Dr. Panzer disagrees with the opinion of Plaintiffs' expert, Dr. Raush, who opined, *inter alia*, that Mr. Morris suffers from Unspecified Trauma- and Stressor-related Disorder as a result of the derailment. Dr. Panzer opines that such diagnosis is incorrect. Exhibit A, Panzer report on Ronald Morris, at 10. But Dr. Panzer did not limit himself to expressing opinions within his expertise. He further opined, in pertinent part:

> (4) Mr. Morris' self reports about his worry and other symptoms are inconsistent and/or difficult to reconcile with other information and therefore unreliable:
>
> * * *
>
> (d) Mr. Morris made statements to Dr. Raush indicating that secondary financial gain is a likely motivator for his symptom complaints. As Dr. Raush reported, he clearly denied intent to suicide because, in Mr. Morris' words, "his (life) insurance would not pay" and he "wouldn't do that to his family." Dr. Raush also reported Mr. Morris

1

> worries about his family being without financial support "constantly, all day every day."
>
> * * *
>
> (6)(c) Dr. Raush does not take into account Mr. Morris' incentive to over report symptoms for financial gain despite Mr. Morris' comments about insurance benefits.

Exhibit A, Panzer report at 9-10 (emphasis added).

As demonstrated below, whether a plaintiff is motivated by a secondary financial gain is not a proper subject for expert testimony, and Dr. Panzer's opinion regarding secondary financial gain is not reliable in any event. Accordingly, such opinion should be excluded from evidence.

## II.   Argument

### A.   Dr. Panzer's secondary-financial-gain opinion will not help the jury.

One of Rule 702's fundamental requirements is that, to be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702(a). Thus, expert testimony is appropriate when it relates to an issue that is beyond the ken of people of ordinary intelligence, but "[w]here the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous." *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir.1980). "Expert testimony which does not relate to any issue in

the case is not relevant and, ergo, non-helpful. The consideration has been aptly described ... as one of 'fit.'" *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir.2004) (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985)).

Moreover, "[a]n expert may not ... testify to the legal implications of conduct...." *United Transp. Union v. Birmingham Southern Ry. Co.*, 2014 WL 1338155, *2 (N.D.Ala. Mar. 31, 2014). Indeed, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citation omitted). Therefore, "an expert's testimony is inadmissible if the trier of fact is entirely capable of determining whether or not to draw the expert's conclusions without any technical assistance from the expert." *United Transp. Union*, 2014 WL 1338155 at *2.

Dr. Panzer's secondary-financial-gain opinion should be excluded because his opinion won't help the members of the jury to understand the evidence or to determine a fact in issue. Questioning the motives of a plaintiff in a lawsuit, which is tantamount to opining on the plaintiff's credibility, is not a proper subject for expert testimony. The jury will hardly need Dr. Panzer to convey to them that they

3

ought to carefully consider Mr. Morris's claim since he stands to recover if he proves the claim and since they will be determining important legal rights of the parties on both sides. Any ordinary juror is perfectly capable of exercising common sense and prudent circumspection as to a plaintiff's claim for money damages and such plaintiff's credibility as a witness. Indeed, the jurors themselves will be *far better equipped* than Dr. Panzer to make the appropriate assessment, since they will be able to judge Mr. Morris's credibility when he testifies live in front of them, whereas Dr. Panzer has never even seen or spoken with the man.

In *United States v. Ganadonegro*, 805 F.Supp.2d 1188 (D.N.M. 2011), the court excluded the proposed expert testimony of a forensic psychologist that there are a host of language factors, cultural factors, and personality factors that would have increased the probability of the defendant making false admissions. *Id.* at 1213. The court noted, a defendant should be able to proffer a psychological expert to explain to the jury that some defendants, for whatever reason, give false confessions to a crime, and that the particular defendant has psychological traits that make it possible he would give a false confession. *Id.* at 1212. However, the specific expert testimony proffered -- that there are a host of language factors, cultural factors, and personality factors that would have increased the probability of this particular defendant making false admissions -- does little more than vouch for the credibility of the defendant's statement and thus encroaches on the jury's

exclusive function to make credibility determinations. *Id.* at 1213. Accordingly, the court determined that such evidence lacked relevance and would not assist the trier of fact as required by Rule 702. *Id.* "Jurors are pretty smart, and the Court's experience is that they routinely ignore experts and make their own credibility decisions." *Id.* at 1212. *See also United States v. French*, 12 F.3d 114, 116-117 (8th Cir. 1993) (trial court properly excluded proposed expert testimony of experienced criminal defense lawyer that witnesses who testify after signing plea agreements containing 'substantial-assistance' provisions are more likely to incriminate the defendant falsely in order to receive a sentence reduction; such subject matter was not suitable for expert testimony, as expert testimony would not have been helpful to the jury since it is clearly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant in exchange for a lower sentence; moreover, defense counsel cross examined witnesses on the point and forcefully attacked their credibility). *Cf. United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014) (admission of expert opinion testimony as to defendant's credibility was plain error warranting reversal).

In *Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005), the court reversed the trial court and held inadmissible the expert testimony of a forensic pathologist, that he had considered whether police officers in an excessive force

case had been telling the truth regarding the circumstances of discharging their guns. The court explained:

> His direct testimony stated that he "rejected" the possibility that [the two officers] had lied, and explained various reasons why police officers have no incentive to give false statements in excessive force cases. On cross-examination [he] reiterated his conclusion that the police officers were "telling the truth as they perceived it." Even assuming that [] based upon his experience or expertise, [he] was qualified to render an opinion as to the tendencies of police officers to lie or to tell the truth in investigations of the sort at issue here (an assumption of which we are highly dubious), his statements essentially instructed the jury as to an ultimate determination that was exclusively within its province, namely, the credibility of [the two officers]. Such testimony does not "assist the trier of fact," Fed.R.Evid. 702, but rather "undertakes to tell the jury what result to reach," and "attempts to substitute the expert's judgment for the jury's[.]"

*Nimely*, 414 F.3d at 398 (citation omitted).

Like the proposed expert witness in *Nimely*, Dr. Panzer believes he has the ability to assess a credibility-related characteristic of plaintiffs in lawsuits – here, their purported motivation for secondary-gain. But Dr. Panzer's ability to make such assessment is no better than that possessed by the average juror.

Undoubtedly, for the trial of this case we'll have smart jurors who will be able to assess Mr. Morris's credibility and motivations, and Defendants' skilled advocates will cross examine him and to argue to the jury. Dr. Panzer's opinion on the matter is not just surplusage, it's completely irrelevant and would not help the

6

jury to understand anything they can't already understand. His opinion regarding secondary gain should be excluded.

### B. Dr. Panzer's opinion regarding secondary financial gain should be excluded because it is not reliable.

Highly significant to Dr. Panzer's opinion is that he has never met, spoken with, or examined Mr. Morris. Dr. Panzer's opinion that Morris is simply seeking secondary financial gain is based merely on statements of Morris contained in Dr. Raush's report. And regardless of the expertise Dr. Panzer purports to draw upon to opine that "secondary financial gain is a likely motivator for [Morris's] symptom complaints," there is a total disconnect between Panzer's conclusion and the substance of the factual statements he relies upon. Dr. Panzer baldly asserts, but doesn't explain, how Morris not wanting to commit suicide because he just couldn't do that to his family and because his family would then be uninsured, or his constant worry about providing for his family, imply that litigation-related secondary-financial-gain is a likely motivator for his symptom complaints. These ultra-common concerns are hardly indicative of litigation greed, which is what Panzer essentially accuses Morris of having. At bare minimum, Dr. Panzer's expertise does not extend to the area of the financial motivations of people he hasn't met or examined, and he should not be permitted, based on merely on having read statements of ordinary worries, to opine to the jury with the mantle of

an expert that Morris's complaints of symptoms are motivated by secondary financial gain.[1]

Dr. Panzer made clear that it would be unethical for him to offer a professional psychiatric opinion on psychiatric conditions without directly examining the patient. When asked about the ethics of doing so, Dr. Panzer state resolutely: "[y]ou know, I did not perform a psychiatric evaluation. I mean, should I say it five times or ten more times?" Exhibit B, Panzer dep. at 70:24-71:6.[2] Nevertheless, Dr. Panzer clearly purports to base his expert opinion that secondary financial gain is a likely motivator for Morris's symptom complaints on Panzer's *expertise as a psychiatrist*.

Significantly, Dr. Panzer testified that he does not view every personal injury case as involving secondary gain; nor does he assume that there's been a secondary-gain motivation in every personal injury case where he's been involved.

---

[1] Dr. Panzer defines secondary gain as a "clear motivation typically to report symptoms in a more favorable light to further in this context a positive outcome that is unrelated to actual psychiatric or psychologic symptoms," and he notes that the manifestation of secondary-gain behavior can be either conscious or unconscious and that the two manifestations have different thresholds of evidence. Exhibit B, Panzer dep. at 67:20-68:7. His opinion is devoid of which variety he believes applies in Mr. Morris's case, even further underscoring the total lack of *factual* support for his secondary-financial-gain opinion.

[2] Dr. Panzer conceded that secondary gain is not a diagnosable disorder under the DSM-5, the Diagnostic and Statistical Manual of Mental Disorders, according to which psychiatrists make diagnoses and by which they are ethically bound. Panzer dep. at 38:19-21. "Q. Is secondary gain listed as a DSM-5 disorder? A. No. ... Q. Secondary gain isn't a diagnosis, correct? A. We have established that three times, yes." Exhibit B, Panzer dep. at 38:19-21; 65:18-21.

Exhibit B, Panzer dep. at 67-68. Thus, it is clear Dr. Panzer recognizes there has to be a *factual basis* upon which to opine that a given patient is motivated by secondary financial gain. Yet, Dr. Panzer's opinion lacks such a factual basis. It is based only on statements made by Morris from which it cannot reasonably be inferred that Morris's symptom complaints are motivated by financial gain.

While Dr. Panzer does possess "scientific, technical, or other specialized knowledge," his expertise does not include opining about the financial motivations of a person he's never met or spoken to, based upon nothing but reported statements of that person which logically do not support the opinion Panzer expresses. As the Supreme Court enjoined in *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion offered." Thus, even if Dr. Panzer possessed expertise on the subject of the motivations of people he's never met or spoken to, his opinion on secondary financial gain should be excluded.

## III. Conclusion

For all of the reasons given above, the Expert Report and Opinion of Dale Panzer, M.D. regarding "Secondary Gain" should be excluded.

DATED:   July 8, 2015

Respectfully submitted:

David M. Cedar, Esquire
Cedar Law Firm, LLC
1908 Marlton Pike East
Cherry Hill, NJ 08003
(856) 874-7500
dcedar@cedarlawfirm.com
Attorney for Plaintiffs

10

## CERTIFICATE OF SERVICE

I certify that on today's date a true and correct copy of Plaintiffs' Brief in Support of their Motion to Exclude the Expert Report and Opinion of Dale Panzer, M.D. Regarding "Secondary Gain" was electronically filed with the Court's CM/ECF system, which will accomplish service of same on all counsel of record.

Dated:     July 9, 2015

By: _____
David M. Cedar, Esquire
Cedar Law Firm, LLC
1908 Marlton Pike East
Cherry Hill, NJ 08003
(856) 874-7500
dcedar@cedarlawfirm.com
Attorney for Plaintiffs