**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **IN RE<br>PAULSBORO DERAILMENT CASES** : | **MASTER DOCKET NO.:<br>1:13-CV-784 (RBK/KMW)** |
| **BRYAN EVERINGHAM, RYAN RAGONE, MARLO JOHNSON, AND ROBERT VAN FOSSEN**<br>            Plaintiffs,<br>v.<br>**CONSOLIDATED RAIL CORPORATION**, *et al.*,<br>            Defendants. : | : CIV NO.  1:13-CV-3350<br>              1:13-CV-7410<br>              1:13-CV-4569 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**ARGUMENT**

I.   STANDARD OF REVIEW

A party seeking summary judgment must show that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding whether there is a disputed issue of material fact, the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party." *Van de Zilver v. Rutgers University*, 971 F.Supp. 925, 931 (D.N.J.1997) (citing *Hancock Industries v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987)).

A court must determine whether "any genuine factual issues [exist] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). See *Moore v. Atlantic County*, 2015 WL 1268184, at 6 (D.N.J. Mar. 18,2015): "[I]n deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Credibility determinations are the province of the fact finder, not the district court." (citations omitted).

II.  PLAINTIFFS ARE ENTITLED TO RECOVER FOR THEIR INJURIES

In their briefs, defendants attempt to claim that the plaintiffs' claims for physical injuries should be dismissed because the expert medical reports submitted for each plaintiff by Dr. Laumbach are either inadmissible or not credible. These claims are currently the subject of separate *Daubert* motions. Defendants also attempt to claim that the evidence linking the injuries with the exposure is not credible. However, as the *Van de Zilver* case makes clear, any inferences, doubts, or issues of credibly must be viewed in favor of the non-moving party. *Van de Zilver*, 971 F.Supp at 931. Thus plaintiffs' argue that this court should resolve any doubts

about the admissibility of Dr. Laumbach's report, as well as any doubts about credibility, in favor of the plaintiffs. Clearly, once this is done, defendants' attempts to dismiss these claims fail, as a material issue of fact remains that must be decided by a jury. As such, defendant's motions should be denied.

III. PLAINTIFFS ARE ENTITLED TO RECOVER FOR FEAR OF CANCER

*Devlin v. Johns-Manville Corp.*, 202 N.J.Super. 556 (N.J. Super. L. Div. 1985) considered the ability to recover for emotional damages when the plaintiff had a fear of cancer because of exposure to asbestos. The Court determined that liability can be imposed where the defendant violates a legal duty owed to the plaintiff, which would cause emotional harm that is reasonably foreseeable in a "person normally constituted" who was in the "zone of risk" of people who could be affected by the defendant's acts. Id. at 560. The key to the ability to collect emotional damages is reasonable foreseeability in the context of the defendant's legal duty to the plaintiff, not the severity of the emotional harm suffered by the plaintiff. Id. at 561. The plaintiff must satisfy 4 elements, which are:

1. Plaintiff is currently suffering from serious fear or emotional distress or clinically diagnosed phobia of cancer.
2. The fear was proximately caused by exposure to a toxic chemical.
3. Plaintiff's fear of getting cancer due to their exposure is reasonable.
4. Defendants are legally responsible for plaintiff's exposure.

Id. at 563.

In *Evers v. Dollinger*, 95 N.J. 399 (N.J. 1984), the court determined that the mental distress and emotional anguish the plaintiff suffered was a cognizable injury. Id. at 411. This evidence, the court concluded, should be presented. Whether the victims' fear of developing

2

cancer is reasonable is, at the very least, a question of fact for the jury to decide. "[T]he fear [of cancer] complained of by plaintiffs, in light of all the facts and circumstances, cannot be deemed to be idiosyncratic or unexpected in 'normally constituted people.' *Devlin* at 498. *See also Triche v. Overnite Transp. Co.*, 1996 WL 396041 (ED.La. 1996) (fear of cancer "is compensable even if the possibility of developing cancer is remote.").

In this case, plaintiffs are first responders who as part of their official duties responded to the train derailment in Paulsboro. They were exposed to vinyl chloride, which defendants admit is a known human carcinogen. All plaintiffs have testified in depositions and in their responses to interrogatories that they currently fear the potential of cancer due to their exposure to vinyl chloride. Finally, plaintiffs submitted expert reports from Dr. Laumbach indicating that their risk of cancer is increased following their exposure to vinyl chloride. These facts satisfy the required criteria for an emotional distress claim following exposure to a carcinogen. As such, defendant's motion should be denied and the jury should determine the issue of emotional damages.

IV.   PLAINTIFFS HAVE DEMONSTRATED AN ENTITLEMENT TO MEDICAL MONITORING

Medical surveillance is appropriate where, due to the significance and extent of exposure to toxic chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary. *Ayers* v. *Jackson Township,* 106 NJ 557,606 (1987).

A cause of action for medical monitoring (also called medical surveillance) is available to plaintiffs who have an increased risk of cancer because of exposure to a hazardous substance. *Theer* v. *Philip Carey Co.,* 133 N.J. 610, 627, (1993). A plaintiff must show that he or she has been directly exposed to the hazardous substance and that the exposure caused a distinctive

3

increased risk of future injury and would require a course of medical monitoring independent of any other that the plaintiff would otherwise have to undergo. *Id.*

In *Sarkozy* v. *A.P. Greene Indus., Inc.,* 2009 WL 2356676 (N.J. Super. App. Div. July 31, 2009), the court addressed a medical monitoring claim under the applicable *Ayers* standards:

> The applicable legal standard, governing the recovery of such damages, is as follows:
> [T]he cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary.
> [Id. at 606, 525 A.2d 287.]
>
> Under this standard, "[e]ven if the likelihood that [ ] plaintiffs would contract cancer were only slightly higher than the national average, medical intervention may be completely appropriate in view of the attendant circumstances." Ibid.

Defendants argue that Plaintiffs have not demonstrated a distinctive increased risk of future injury, and that their medical monitoring for possible cancer from vinyl chloride is not anything they would not otherwise have to undergo. On the contrary, however, Plaintiffs *have* suffered a distinctive risk of future injury requiring medical monitoring, and reference to OSHA standards supports this.

OSHA's regulations governing the control of employee exposure to vinyl chloride require that "a program of medical surveillance shall be instituted for each employee exposed, without regard for the use of respirators, to vinyl chloride in excess of the action level" which is defined as 0.5 parts per million average over an eight hour work day. 29 CFR § 191O.1017(b)(l),(k). In addition, "[n]o employee may be exposed to vinyl chloride at concentrations greater than 5 ppm

4

averaged over any period not exceeding 15 minutes." 29 CFR § 191O.1017(c)(2).

Any occurrence which results in a massive release of vinyl chloride constitutes an "emergency." 29 CFR § 191O.1017(b)(5). OSHA requires that each employee exposed to an emergency shall be afforded appropriate medical surveillance, with any exposure above the action level justifying at least annual monitoring. 29 CFR § 191O.1017(k)(2),(3).

Analogizing to the OSHA regulations, Plaintiffs here were exposed to an emergency release of vinyl chloride at levels that clearly would require medical monitoring under the regulations. Particularly in light of Plaintiffs' acute exposure at very high levels, they have suffered a distinctive increased risk or future injury. Their risk of developing a disease is higher than it would be without their having been exposed to vinyl chloride. Case law does not define the term "distinctive," but no case has said that the increased risk must be precisely *measurable* to any given extent, even though plaintiffs have offered several calculations to quantify it. It is reasonable to infer that it means being able to identify the risk with the vinyl chloride exposure, making the increased risk distinctive - i.e., tied to that exposure.[1]

> As this Court has stated regarding damages for medical monitoring:
>
>> [T]he risk of injury need not be quantified to merit medical surveillance damages; however, the plaintiff must establish that the risk of serious disease is "significant." In the case of toxic exposure, "medical-surveillance damages may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury." Such damages are "not available for plaintiffs who have not

---

[1] Defendants also cite to the unpublished Appellate Division opinion in *Buynie v. Airco, Inc.*, *rev'd in part on other grounds*, 2007 N.J. Super. Unpub. LEXIS 2476 where the court took note of other possible contributing causes of liver cancer in addition to on-the-job vinyl chloride exposure, for which plaintiffs were seeking medical monitoring damages. Buynie is not helpful, however, because the reference was made in the context of reviewing a class certification determination. The court was merely opining that denial of certification had been proper because an enhanced risk of liver damage was not confined solely to plaintiffs' occupational exposure but was contributed to by personal habits, such as alcohol use, and personal medical history. Thus, the facts raised individual causation issues, defeating class certification. Id. at *23. This case, of course, is not a class action, and Plaintiffs' claims for medical monitoring damages are based on medical and expert opinions individual to them.

> experienced direct and hence discrete exposure to a toxic substance and who have not suffered an injury or condition resulting from that exposure."

*Player* v. *Motiva Enterprises LLC,* 2006 WL 166452, at *9 (D.N.J. Jan. 20, 2006).

Here, Plaintiffs have experienced direct exposure to a toxic substance at levels sufficient to result in an increased risk of future injury. Combined with the above-cited data, this means that it is neither appropriate nor possible to conclude that their risk of serious disease is not significant. In *Player,* the plaintiffs' expert had not opined that the plaintiffs there needed medical monitoring. Instead, he suggested medical monitoring for a hypothetical target population, without taking into consideration the actual exposure of any plaintiff. Here, Dr. Laumbach has examined each individual specific plaintiff, and reviewed their medical history and the facts surrounding the derailment. Based on these factors he has recommended monitoring.

If a person has one or more conditions that could eventually cause cancer, and that person is then significantly exposed to a chemical that is known to cause cancer, by definition he or she has suffered an increased risk of eventually contracting cancer. The above data demonstrate that Plaintiffs have suffered a serious exposure to vinyl chloride, and that because of that exposure they have a distinctive increased risk of getting cancer. As such defendant's motion should be denied.

V.     CONCLUSION

For the foregoing reasons, defendant's motions should be denied.

*/s/Matthew Weng*
Matthew Weng, Esq.
Attorney for Plaintiffs
